# Appendix A

No. 526254. New York Supreme Court Appellate Division Third Judicial Dept..
05-16-2019

included in the Petition for Writ of Certiorari submitted by Guy Cozzi

State of New York
Supreme Court, Appellate Division
Third Judicial Department

Decided and Entered:  May 16, 2019          526254

_____

In the Matter of the Claim of
    GUY COZZI,
                    Appellant,

        v                                   MEMORANDUM AND ORDER

AMERICAN STOCK EXCHANGE et al.,
                    Respondents.

WORKERS' COMPENSATION BOARD,
                    Respondent.

_____

Calendar Date:  March 28, 2019

Before:  Garry, P.J., Egan Jr., Lynch, Clark and Aarons, JJ.

                    _____

        Guy Cozzi, Greenwich, Connecticut, appellant pro se.

        Fischer Brothers, New York City (Martin Krutzel of
counsel), for American Stock Exchange and another, respondents.

                    _____

Aarons, J.

        Appeal from a decision of the Workers' Compensation Board,
filed January 19, 2018, which denied claimant's application to
reopen his workers' compensation claim.

        In 2014, claimant registered as a participant in the World
Trade Center rescue, recovery and/or cleanup operations with the
Workers' Compensation Board (see Workers' Compensation Law §
162) and filed a claim for workers' compensation benefits for
injuries suffered at the site.  Following a September 2015

-2-                          526254

hearing, a Workers' Compensation Law Judge determined that
claimant was not a participant in the rescue, recovery or
cleanup operations at the World Trade Center site pursuant to
Workers' Compensation Law § 161 and, because his claim was not
filed by September 11, 2003 — i.e., within two years of
September 11, 2001 — it was barred as untimely.  The Workers'
Compensation Law Judge further found that the exception
contained in Workers' Compensation Law article 8-A to the
general two-year filing requirement was inapplicable.[1]  On
review, the Board affirmed in a February 2016 decision, and
claimant applied for reconsideration and/or full Board review.
The application was denied, and claimant appealed only from that
decision.  This Court affirmed, finding that the denial was not
arbitrary, capricious or constituted an abuse of discretion (148
AD3d 1500 [2017], lv dismissed 30 NY3d 937 [2017]).

     In 2017, claimant applied to the Board for a reopening of
the claim.  In his application, claimaint asserted that, in
addition to the activities related to the cleanup of the site
that he raised in his initial application for benefits, he also
voluntarily provided drinks to workers involved in the cleanup
of the site.  The Board found that "[b]ecause the claim was
disallowed by the [Board] after a trial on the merits, a
decision which . . . claimant did not appeal to the Appellate
Division, and the claim arises out of the events of September
11, 2011 (which occurred more than seven years ago), the Board
. . . is divested of jurisdiction."  Accordingly, the Board
concluded that it did not have the authority to rehear or reopen
the claim.  Claimant appeals.

---

     [1]  "Workers' Compensation Law article 8-A was enacted to
remove statutory obstacles to timely claims filing and notice
for latent conditions resulting from hazardous exposure for
those who worked in rescue, recovery or cleanup operations
following the World Trade Center September 11th, 2001 attack"
(Matter of Williams v. City of New York, 66 AD3d 1203, 1204
[2009] [internal quotation marks and citation omitted]) and
extended the deadlines for claimants to file for coverage so
long as a claimant satisfied certain elements.

-3-                          526254

"Whether to reopen a case is a matter committed to the Board's sound discretion, and its decision will not be disturbed on appeal absent an abuse thereof" (Matter of Pucci v DCH Auto Group, 90 AD3d 1255, 1255-1256 [2011]; see Matter of Thomas v Crucible Materials Corp., 73 AD3d 1323, 1324 [2010]; Matter of Cagle v Judge Motor Corp., 31 AD3d 1016, 1017 [2006], lv dismissed 7 NY3d 922 [2006]). Workers' Compensation Law § 123, however, places limits on that discretion (see Matter of Magidson v Strategic Telemarketing, Inc., 70 AD3d 1217, 1218 [2010], lv dismissed 15 NY3d 867 [2010]). In this regard, Workers' Compensation Law § 123 provides that "no claim for compensation . . . that has been disallowed after a trial on the merits, or that has been otherwise disposed of without an award after the parties in interest have been given due notice of hearing or hearings and opportunity to be heard and for which no determination was made on the merits, shall be reopened after a lapse of seven years from the date of the accident."

We find that the Board did not abuse its discretion in determining that it was without jurisdiction to reopen the claim. The record reflects that claimant's application to reopen his claim was not made within the required time frame as set forth in Workers' Compensation Law § 123. As such, we conclude that the Board's decision was proper (see Matter of Ford v New York City Tr. Auth., 27 AD3d 792, 794 [2006], lv dismissed 7 NY3d 741 [2006]).

Garry, P.J., Egan Jr., Lynch and Clark, JJ., concur.

-4-                          526254

ORDERED that the decision is affirmed, without costs.


ENTER:

*Robert D Mayberger*

Robert D. Mayberger
Clerk of the Court

# Appendix B

No. G110 9023. Workers' Compensation Board. 01-19-2018

included in the Petition for Writ of Certiorari submitted by Guy Cozzi

23050176



**Clarissa M. Rodriguez**
**Chair**

ADMINISTRATIVE REVIEW DIVISION
WORKERS' COMPENSATION BOARD
PO BOX 5205
BINGHAMTON, NY   13902
*www.wcb.ny.gov*

**State of New York - Workers' Compensation Board**

**In regard to Guy Cozzi, WCB Case #G110 9023**

# MEMORANDUM OF BOARD PANEL DECISION

*keep for your records*

Opinion By: Fredrick M. Ausili
Linda Hull
Mark R. Stasko

The claimant filed an application for a rehearing/reopening on his own behalf on November 13, 2017.  The carrier timely filed a rebuttal.

<u>ISSUE</u>

The issue presented for administrative review is whether a rehearing/reopening of the claim is warranted.

<u>FACTS</u>

Claimant filed a WTC-12 (Registration of Participation in World Trade Center Rescue, Recovery and/or Clean-up Operations) on September 8, 2014, alleging that he worked at the American Stock Exchange and describing the work performed as "Employee, Managing Director Equity Sales, etc."  Claimant filed a C-3 (Employee Claim) on September 8, 2014 alleging that claimant was injured/became ill while "At work and going to/from work every day and in the World Trade Center area when looking for other employment.  From 09/2001 - 12/2002."

At a hearing held December 11, 2014, claimant was unrepresented by counsel.  Claimant was

*** Continued on next page ***

| Claimant - | Guy Cozzi | Employer - | American Stock Exchange |
|---|---|---|---|
| Social Security No. - | | Carrier - | Pacific Indemnity Company |
| WCB Case No. - | G110 9023 | Carrier ID No. - | W168009 |
| Date of Accident - | 09/11/2001 | Carrier Case No. - | 040514060129COZZI |
| District Office - | NYC | Date of Filing of this Decision - | 01/19/2018 |

ATENCION:

Puede llamar a la oficina de la Junta de Compensacion Obrera, en su area correspondiente, cuyo numero de telefono aparece al principio de la pagina y pida informacion acerca de su reclamacion(caso).

EBRB-1 (4/99)

A133

Page 1 of 5

23050176

not under oath, however, he stated on the record, "I said I worked down there, but I wasn't involved in the recovery." Claimant was then sworn in and testified that he did not believe he was a rescue, recovery, or clean-up worker. The WCLJ found that Article 8-A did not apply. This finding was memorialized in a December 16, 2014 decision. Claimant, through counsel, then filed an appeal, and the December 16, 2014 decision was subsequently rescinded without prejudice by the Board Panel which noted in its March 10, 2015 decision that the WCLJ relied upon the belief of an unrepresented claimant as to the applicability of a statute. The case was returned to the calendar for additional record development.

Additional hearings were held thereafter, including a September 24, 2015 hearing, at which the claimant provided testimony. After hearing the parties' summations, the WCLJ found that claimant was not a rescue, recovery, or clean-up worker as defined by WCL § 161 and that his claim was disallowed as untimely. A September 29, 2015 Notice of Decision was issued finding that claimant was not a clean-up worker and that the claim was not subject to the provisions of Article 8-A. As the claim arose out of the events of September 11, 2001, and the claim was not filed until September 8, 2014, the claim was deemed time-barred.

The claimant filed an appeal of the September 29, 2015 Notice of Decision to the Board Panel, on his own behalf. As a result, the Panel issued a February 5, 2016 Memorandum of Board Panel Decision affirming the WCLJ's decision, finding that the claimant was not a participant in clean-up operations; that the provisions of Article 8-A did not apply; and that the claim was properly deemed time-barred pursuant to WCL § 28. The Panel also declined to consider documentation submitted for the first time on appeal, but did consider the arguments made in the claimant's letter.

The claimant appealed the decision to the Full Board Panel, which issued a Notice of Decision Regarding Application for Full Board Review on May 12, 2016, finding that the Panel's "unanimous MOD considered the evidence in the record relevant to the dispute . . . [and] does not contain any error of law or fact that requires the decision to be modified or rescinded."

The claimant appealed the Full Board's decision to the Appellate Division, which issued a Memorandum and Order on March 30, 2017, finding that "Inasmuch as claimant has only appealed from the decision denying his application for reconsideration and/or full Board review, the merits of the underlying decision are not properly before us" (citations omitted).

## LEGAL ANALYSIS

The claimant requests that he be granted a rehearing pursuant to 12 NYCRR 300.14. The

*** Continued on next page ***

| Claimant - | Guy Cozzi | Employer - | American Stock Exchange |
|---|---|---|---|
| Social Security No. - | | Carrier - | Pacific Indemnity Company |
| WCB Case No. - | G110 9023 | Carrier ID No. - | W168009 |
| Date of Accident - | 09/11/2001 | Carrier Case No. - | 040514060129COZZI |
| District Office - | NYC | Date of Filing of this Decision - | 01/19/2018 |

ATENCION:

Puede llamar a la oficina de la Junta de Compensacion Obrera, en su area correspondiente, cuyo numero de telefono aparece al principio de la pagina y pida informacion acerca de su reclamacion(caso).

23050176

claimant asserts that a rehearing is required in the interest of justice to allow him to appeal the decision to the higher appellate courts, as the merits of claimant's appeals of the decision disallowing the claim were not heard by higher courts. The claimant submits a signed and notarized statement indicating that he is submitting new and additional evidence to the Board. The new evidence is a statement from the claimant's mother (which is signed but not notarized) who overheard a conversation that the claimant had with an attorney in which the claimant indicated that he sometimes brought drinks to workers at "Ground Zero." Claimant also attaches photographs that he asserts he took of Ground Zero. Claimant states that he did not produce these photographs earlier because he did not think they were important to the claim. The claimant requests that the evidence the Panel previously declined to consider be considered at a rehearing. The claimant argues that his claim meets the requirements of Article 8-A as he was at the covered site and his work had a tangible connection to rescue, recovery, and/or clean-up efforts. The claimant contends that the Workers' Compensation Board is attempting to alter the requirements of Article 8-A by reading a requirement into the law that the subject work occurred at Ground Zero rather than the World Trade Center site as defined by statute. The claimant makes several additional arguments regarding what he deems to be the Board's misinterpretation of statutory and regulatory law and asserts that the Board has a bias against clean-up workers.

In rebuttal the carrier requests that the application be denied. The carrier argues that the Board is divested of jurisdiction to consider the claim pursuant to the restrictions WCL § 123, and that none of the bases for granting a rehearing/reopening are present in the instant claim.

"While the Board retains discretion to reopen its prior determinations, limits are placed on that discretion by Workers' Compensation Law § 123" (*Matter of Magidson v Strategic Telemarketing, Inc.*, 70 AD3d 1217 [2010] [quotation marks and citations omitted]). As an exception to the Board's continuing jurisdiction over workers' compensation claims, Workers' Compensation Law § 123 provides, in relevant part, that "no claim for compensation . . . that has been disallowed after a trial on the merits, or that has been otherwise disposed of without an award after the parties in interest have been given due notice of hearing or hearings and opportunity to be heard and for which no determination was made on the merits, shall be reopened after a lapse of seven years from the date of the accident." "As a factual determination for the Board to make, whether such cases fall within the ambit of this statute depends on whether they were truly closed, that is, if further proceedings, such as the submission of additional medical evidence, were contemplated by the Board" *Matter of Ford v New York City Tr. Auth.*, 27 AD3d 792 [2006], *appeal dismissed* 7 NY3d 741 [2006] [citations omitted]).

A request for reopening of a claim may be made by any party upon an application that indicates that "(1) certain material evidence not available for presentation before the board at the time of

*** Continued on next page ***

| | |
|---|---|
| Claimant - | Guy Cozzi |
| Social Security No. - | |
| WCB Case No. - | G110 9023 |
| Date of Accident - | 09/11/2001 |
| District Office - | NYC |

| | |
|---|---|
| Employer - | American Stock Exchange |
| Carrier - | Pacific Indemnity Company |
| Carrier ID No. - | W168009 |
| Carrier Case No. - | 040514060129COZZI |
| Date of Filing of this Decision - | 01/19/2018 |

ATENCION:

Puede llamar a la oficina de la Junta de Compensacion Obrera, en su area correspondiente, cuyo numero de telefono aparece al principio de la pagina y pida informacion acerca de su reclamacion(caso).

23050176

hearing is now available; or (2) proof of a change in condition material to the issue is involved; or (3) it would be in the interest of justice" (12 NYCRR § 300.14[a]). 12 NYCRR 300.14(b) further requires that "[a]llegations as to newly discovered evidence . . . be substantiated by supporting affidavits."

"Although a request to reopen need not be made in any particular form, it must set forth facts sufficient to establish the [applicant]'s right to reopen . . . The Board's interpretation of a request for reopening, and its decision about whether to reopen a case, are matters within its discretion, and the Board's decision will not be disturbed absent an abuse of discretion (see 12 NYCRR 300.14[c])" (*Matter of Ewing v YMCA*, 57 AD3d 1080 [2008] [additional citations omitted]).

In the present case, the claimant's application for a rehearing/reopening is essentially an indictment of the Board Panel's February 5, 2016 decision and an attempt to relitigate issues which were previously decided.  Because the claim was disallowed by the Panel after a trial on the merits, a decision which the claimant did not appeal to the Appellate Division, and the claim arises out of the events of September 11, 2001 (which occurred more than seven years ago) the Board Panel is divested of jurisdiction under WCL § 123.  The Board Panel does not have the authority to rehear or reopen the claim, and the application for a rehearing/reopening is denied. Even if the Board's jurisdiction was not limited by WCL § 123, however, the Board Panel would not be inclined to grant a rehearing or reopening as the arguments made by the claimant do not warrant a reopening under any of the provisions of 12 NYCRR 300.14.

Therefore the Board Panel finds, upon review of the record and based upon a preponderance of the evidence, that the claimant's application for a rehearing/reopening is denied.

<u>CONCLUSION</u>

ACCORDINGLY, the claimant's application for rehearing/reopening filed November 13, 2017

*** *Continued on next page* ***

| | | | |
|---|---|---|---|
| Claimant - | Guy Cozzi | Employer - | American Stock Exchange |
| Social Security No. - | | Carrier - | Pacific Indemnity Company |
| WCB Case No. - | G110 9023 | Carrier ID No. - | W168009 |
| Date of Accident - | 09/11/2001 | Carrier Case No. - | 040514060129COZZ1 |
| District Office - | NYC | Date of Filing of this Decision - | 01/19/2018 |

ATENCION:

Puede llamar a la oficina de la Junta de Compensacion Obrera, en su area correspondiente, cuyo numero de telefono aparece al principio de la pagina y pida informacion acerca de su reclamacion(caso).

EBRB-1 (4/99)

A136

23050176

is DENIED.

No further action is planned at this time.

All concur.

_____          _____          _____
Fredrick M. Ausili                         Linda Hull                                  Mark R. Stasko


| Claimant - | Guy Cozzi | Employer - | American Stock Exchange |
| Social Security No. - | | Carrier - | Pacific Indemnity Company |
| WCB Case No. - | G110 9023 | Carrier ID No. - | W168009 |
| Date of Accident - | 09/11/2001 | Carrier Case No. - | 040514060129COZZI |
| District Office - | NYC | Date of Filing of this Decision - | 01/19/2018 |

ATENCION:

Puede llamar a la oficina de la Junta de Compensacion Obrera, en su area correspondiente, cuyo numero de telefono aparece al principio de la pagina y pida informacion acerca de su reclamacion(caso).

A137

EBRB-1 (4/99)

(2354)54272847-1

Copies To:                    Case #G110 9023
Claimant:                     Guy Cozzi
Carrier:                      Pacific Indemnity Company
Employer:
Other:                        Braunfotel & Frendel LLC
                              Alan M. Cass & Associates
                              MedRecovery Management

Guy Cozzi
PO Box 4083
Greenwich, CT   06831


Guy Cozzi                 Pacific Indemnity Company        Braunfotel & Frendel LLC
PO Box 4083               Chubb Group of Ins Companies     Attorneys At Law
Greenwich, CT   06831     10 Exchange Place                49 Maple Avenue
                          Jersey City, NJ   07302-3918     New City, NY   10956


Alan M. Cass & Associates     MedRecovery Management
225 Broadway, Rm 1505         HMS Workers Comp
New York, NY   10007          PO Box 167807
                              Irving, TX   75016

(2354)54272847-1

# Appendix C

No. 2019-584. New York Court of Appeals. 09-10-2019

included in the Petition for Writ of Certiorari submitted by Guy Cozzi

# *State of New York*
## *Court of Appeals*

*Decided and Entered on the*
*tenth day of September, 2019*

**Present**, Hon. Janet DiFiore, *Chief Judge, presiding.*

Mo. No. 2019-584
In the Matter of the Claim of Guy Cozzi,
        Appellant,
        v.
American Stock Exchange et al.,
        Respondents.
Workers' Compensation Board,
        Respondent.

Appellant having appealed and moved for leave to appeal to the Court of Appeals

in the above cause;

Upon the papers filed and due deliberation, it is

ORDERED, on the Court's own motion, that the appeal is dismissed, without

costs, upon the ground that the order appealed from does not finally determine the

proceeding within the meaning of the Constitution; and it is further

ORDERED, that the motion for leave to appeal is dismissed upon the ground that

the order sought to be appealed from does not finally determine the proceeding within the

meaning of the Constitution.

John P. Asiello
Clerk of the Court

# Appendix D

No. 2017-783. New York Court of Appeals. 10-19-2017

included in the Petition for Writ of Certiorari submitted by Guy Cozzi

# State of New York
## Court of Appeals

**Decided and Entered on the
nineteenth day of October, 2017**

**Present,** Hon. Janet DiFiore, *Chief Judge, presiding.*

Mo. No. 2017-783
In the Matter of Guy Cozzi,
      Appellant,
    v.
American Stock Exchange et al.,
      Respondents.
Workers' Compensation Board,
      Respondent.

     Appellant having moved for leave to appeal to the Court of Appeals in the above cause;

     Upon the papers filed and due deliberation, it is

     ORDERED, that the motion, insofar as it seeks leave to appeal from the June 2017 Appellate Division order denying reconsideration, is dismissed upon the ground that such order does not finally determine the proceeding within the meaning of the Constitution; and it is further

     ORDERED, that the motion, insofar as it seeks leave to appeal from the March 2017 Appellate Division order, is dismissed as untimely (see CPLR 5513[b]).

                John P. Asiello
               Clerk of the Court

A96



*State of New York*
*Court of Appeals*

*John P. Asiello*
*Chief Clerk and*
*Legal Counsel to the Court*

*Clerk's Office*
*20 Eagle Street*
*Albany, New York 12207-1095*

Decided October 19, 2017

Mo. No. 2017-783
In the Matter of Guy Cozzi,
        Appellant,
        v.
American Stock Exchange et al.,
        Respondents.
Workers' Compensation Board,
        Respondent.

Motion, insofar as it seeks leave to appeal from the June 2017 Appellate Division order denying reconsideration, dismissed upon the ground that such order does not finally determine the proceeding within the meaning of the Constitution; motion, insofar as it seeks leave to appeal from the March 2017 Appellate Division order, dismissed as untimely (see CPLR 5513[b]).

A97

# Appendix E

No. 523341. New York Supreme Court Appellate Division Third Judicial Dept..
06-15-2017

included in the Petition for Writ of Certiorari submitted by Guy Cozzi

*State of New York*
*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered: June 15, 2017                     523341

_____

In the Matter of the Claim of GUY COZZI,

                    Appellant,

        v                                        DECISION AND ORDER
                                                    ON MOTION
AMERICAN STOCK EXCHANGE et al.,
                    Respondents.

WORKERS' COMPENSATION BOARD,
                    Respondent.

_____

        Motion for reconsideration.

        Upon the papers filed in support of the motion and the papers filed in response thereto,
it is

        ORDERED that the motion is denied, without costs.

Garry, J.P., Lynch, Clark, Mulvey and Aarons, JJ., concur.

                        ENTER:

                        Robert D. Mayberger
                        Clerk of the Court

A77

# Appendix F

No. 523341. New York Supreme Court Appellate Division Third Judicial Dept..
03-30-2017

included in the Petition for Writ of Certiorari submitted by Guy Cozzi

State of New York
Supreme Court, Appellate Division
Third Judicial Department

Decided and Entered:  March 30, 2017                 523341
_____

In the Matter of the Claim of
    GUY COZZI,
                    Appellant,

        v                                    MEMORANDUM AND ORDER

AMERICAN STOCK EXCHANGE et al.,
                    Respondents.

WORKERS' COMPENSATION BOARD,
                    Respondent.
_____

Calendar Date:  February 24, 2017

Before:  Garry, J.P., Lynch, Clark, Mulvey and Aarons, JJ.

                    _____

        Guy Cozzi, Greenwich, Connecticut, appellant pro se.

        Fischer Brothers, New York City (Amy Levitt of counsel),
for American Stock Exchange and another, respondents.

                    _____

Lynch, J.

        Appeal from a decision of the Workers' Compensation Board,
filed May 12, 2016, which denied claimant's request for
reconsideration and/or full Board review.

        Claimant alleges that he was injured by inhaling dust and
toxins at the World Trade Center site going back and forth to
work in the days following the 2001 terrorist attack and that he
fell and injured his shoulder.  In 2014, claimant registered as a
participant in the World Trade Center rescue, recovery and/or
cleanup operations with the Workers' Compensation Board (see
Workers' Compensation Law § 162) and thereafter filed a claim for

                                                          A71

-2-                          523341

workers' compensation benefits for injuries suffered in 2001 at the site.  A Workers' Compensation Law Judge (hereinafter WCLJ) found that claimant was not a participant in the cleanup efforts at the World Trade Center site pursuant to Workers' Compensation Law § 161 and, therefore, he was not entitled to the exception contained in Workers' Compensation Law article 8-A to the general two-year filing requirement.  Accordingly, the WCLJ denied the claim as untimely (see Workers' Compensation Law § 28).  The Board upheld the WCLJ's determination in a decision filed on February 5, 2016.  Claimant thereafter applied for reconsideration and/or full Board review.  The Board denied the application in a decision filed on May 12, 2016, from which claimant now appeals.

We affirm.  Inasmuch as claimant has only appealed from the decision denying his application for reconsideration and/or full Board review, the merits of the underlying decision are not properly before us (see Matter of Alamin v Down Town Taxi, Inc., 141 AD3d 975, 976 [2016], appeal dismissed 28 NY3d 1153 [2017]; Matter of Larberg v Suffolk County Police Dept., 128 AD3d 1303, 1303 [2015]).  Rather, our inquiry is limited to whether the Board's denial of claimant's application was arbitrary and capricious or otherwise constituted an abuse of discretion (see Matter of Onuoha v BJs Club 165, 139 AD3d 1274, 1275 [2016]; Matter of Sheng v Time Warner Cable, Inc., 131 AD3d 1283, 1284 [2015], lv dismissed 26 NY3d 1060 [2015]).  Claimant challenges the findings of the WCLJ, contending that he is entitled to the Workers' Compensation Law article 8-A time limit exception, and argues that he was denied a fair hearing.  Claimant's remedy regarding these issues was to appeal the Board's February 2016 decision.  Insofar as the record reflects that the Board considered all of the relevant material in rendering its initial decision and claimant did not present any new evidence that was previously unavailable, we decline to disturb the Board's decision (see Matter of Kalkbrenner v Accord Corp., 123 AD3d 1303, 1304 [2014]; Matter of Mazzaferro v Fast Track Structures, Inc., 106 AD3d 1302, 1302 [2013]).

Garry, J.P., Clark, Mulvey and Aarons, JJ., concur.

A72

-3-                    523341

ORDERED that the decision is affirmed, without costs.


ENTER:

*Robert D Mayberger*

Robert D. Mayberger
Clerk of the Court

A73

# Appendix G 1

No. G110 9023. Workers' Compensation Board. 05-12-2016

included in the Petition for Writ of Certiorari submitted by Guy Cozzi

21687534



**Robert E. Beloten**
**Chair**

GENERAL COUNSEL
WORKERS' COMPENSATION BOARD
328 STATE STREET
SCHENECTADY, NY   12305-2318
*www.wcb.ny.gov*

### State of New York - Workers' Compensation Board

### In regard to Guy Cozzi, WCB Case #G110 9023

## NOTICE OF DECISION
## REGARDING APPLICATION FOR FULL BOARD REVIEW
*keep for your records*

Opinion By: Loren D. Lobban
Linda Hull
Richard A. Bell

The Workers' Compensation Board, pursuant to Workers' Compensation Law Sections 23, 142, and 12 NYCRR 300.16, has considered Guy Cozzi's application for Reconsideration / Full Board Review, received on March 03, 2016, of a Board Panel Memorandum of Decision (MOD) filed February 05, 2016, in the above-cited case.

The Board Panel's unanimous MOD considered the evidence in the record relevant to the dispute, and included a statement of facts which formed the basis for its decision. The MOD does not contain any error of law or fact that requires the decision to be modified or rescinded. Therefore, the application for Reconsideration / Full Board Review is denied.

Loren D. Lobban          Linda Hull          Richard A. Bell

| | |
|---|---|
| Claimant - | Guy Cozzi |
| Social Security No. - | |
| WCB Case No. - | G110 9023 |
| Date of Accident - | 09/11/2001 |
| District Office - | NYC |

| | |
|---|---|
| Employer - | American Stock Exchange |
| Carrier - | Pacific Indemnity Company |
| Carrier ID No. - | W168009 |
| Carrier Case No. - | 040514060129COZZI |
| Date of Filing of this Decision - | 05/12/2016 |

ATENCION:

Puede llamar a la oficina de la Junta de Compensacion Obrera, en su area correspondiente, cuyo numero de telefono aparece al principio de la pagina y pida informacion acerca de su reclamacion(caso).

Page 1 of 1

EBRB-5 (1/2014)                    A67

(1913)50373491-1

Copies To:
Claimant:
Carrier:
Employer:
Other:

Case #G110 9023
Guy Cozzi
Pacific Indemnity Company

Braunfotel & Frendel LLC
Fischer Brothers, Esqs.
Alan M. Cass & Associates
MedRecovery Management

Guy Cozzi
PO Box 4083
Greenwich, CT   06831

Guy Cozzi
PO Box 4083
Greenwich, CT   06831

Pacific Indemnity Company
c/o Chubb Insurance Company
55 Water Street
New York, NY  –10041-2899

Braunfotel & Frendel LLC
Attorneys At Law
49 Maple Avenue
New City, NY   10956

Fischer Brothers, Esqs.
32 Broadway, Ste 1414
New York, NY   10004

Alan M. Cass & Associates
225 Broadway, Rm 1505
New York, NY   10007

MedRecovery Management
2495 Main Street, Suite 235
Buffalo, NY   14214

EBRB-5 (1/2014)

**OVER**

A68

(1913)50373491-1

# Appendix G 2

No. G110 9023. Workers' Compensation Board. 02-05-2016

included in the Petition for Writ of Certiorari submitted by Guy Cozzi

21655565



**Robert E. Beloten**
**Chair**

ADMINISTRATIVE REVIEW DIVISION
WORKERS' COMPENSATION BOARD
PO BOX 5205
BINGHAMTON, NY   13902
*www.wcb.ny.gov*

## State of New York - Workers' Compensation Board

## In regard to Guy Cozzi, WCB Case #G110 9023

# MEMORANDUM OF BOARD PANEL DECISION
*keep for your records*

Opinion By: Loren D. Lobban
Linda Hull
Richard A. Bell

The claimant, on his own behalf, requests review of the Workers' Compensation Law Judge's (WCLJ's) decision filed on September 29, 2015.  The carrier timely filed a rebuttal.

The claimant filed a response to the carrier's rebuttal on December 21, 2015.  Pursuant to 12 NYCRR 300.13(e)(2), the Board Panel exercises its discretion to decline consideration of this supplemental argument beyond the 30 day period provided in 300.13(a).

### ISSUES

The issues presented for administrative review are:

1.   Whether the claimant's application for review should be considered; and

2.   Whether claimant was involved in rescue, recovery, and/or clean-up pursuant to WCL Article 8-A.

### FACTS

Claimant filed a WTC-12 (Registration of Participation in World Trade Center Rescue,

*** Continued on next page ***

| | | | |
|---|---|---|---|
| Claimant - | Guy Cozzi | Employer - | American Stock Exchange |
| Social Security No. - | | Carrier - | Pacific Indemnity Company |
| WCB Case No. - | G110 9023 | Carrier ID No. - | W168009 |
| Date of Accident - | 09/11/2001 | Carrier Case No. - | 040514060129COZZI |
| District Office - | NYC | Date of Filing of this Decision - | 02/05/2016 |

ATENCION:

Puede llamar a la oficina de la Junta de Compensacion Obrera, en su area correspondiente, cuyo numero de telefono aparece al principio de la pagina y pida informacion acerca de su reclamacion(caso).

21655565

Recovery and/or Clean-up Operations) on September 8, 2014 alleging that he worked at the American Stock Exchange and describing the work performed as "Employee, Managing Director Equity Sales, etc." Claimant filed a C-3 (Employee Claim) on September 8, 2014 alleging that claimant was injured/became ill while "At work and going to/from work every day and in the World Trade Center area when looking for other employment. From 09/2001 - 12/2002." On the portion of the form inquiring as to how the injury/illness happened, claimant responded, "Terrorist attack on the World Trade Center . . . The toxic dust and debris was inhaled and I fell and hurt my shoulder. Permanent mental health and behavioral health problems that very negatively affect my life and employment."

At a hearing held December 11, 2014, claimant was unrepresented by counsel. Claimant was not under oath, however, he stated on the record, "I said I worked down there, but I wasn't involved in the recovery." Claimant was then sworn in and testified that he did not believe he was a rescue, recovery, or clean-up worker. The WCLJ found that Article 8-A did not apply. This finding was memorialized in a December 16, 2014 decision. Claimant, through counsel, then filed an appeal and the December 16, 2014 decision was subsequently rescinded without prejudice by the Board Panel which noted in its decision that the WCLJ relied upon the belief of an unrepresented claimant as to the applicability of a statute. The case was returned to the calendar for additional record development.

Additional hearings were held and prima facie medical evidence was found for major depression and generalized anxiety disorder in a September 3, 2015 decision.

At a September 24, 2015 hearing, claimant testified as follows: Claimant was employed by the American Stock Exchange on September 11, 2001 as the Managing Director of Equity Sales. Claimant was at his office at Trinity Place when the attack occurred. Claimant did not rescue any individuals as a result of the attack. One of the windows in claimant's office was broken as a result of the attacks. When claimant returned to work about a week later, there was dust and small debris in his office. Because claimant had sales papers, marketing presentations, and other materials necessary for his job in his office, he cleaned those items and his furniture. The claimant did not vacuum the rug as he left this for the "cleaning ladies" to do when they were allowed back into the building. Claimant testified that he cleaned his desk, furniture, computer keyboard, large chair, file cabinets, papers, and other items because he believed the "cleaning ladies" would throw it away. Claimant was asked if he cleaned any other areas other than his office following September 11, 2001, to which claimant responded "No, not for the debris pile. I didn't work for anyone else, I worked for the Stock Exchange."

After hearing the parties' summations, the WCLJ found that claimant was not a rescue, recovery,

*** Continued on next page ***

| Claimant - | Guy Cozzi | Employer - | American Stock Exchange |
|---|---|---|---|
| Social Security No. - | | Carrier - | Pacific Indemnity Company |
| WCB Case No. - | G110 9023 | Carrier ID No. - | W168009 |
| Date of Accident - | 09/11/2001 | Carrier Case No. - | 040514060129COZZI |
| District Office - | NYC | Date of Filing of this Decision - | 02/05/2016 |

ATENCION:

Puede llamar a la oficina de la Junta de Compensacion Obrera, en su area correspondiente, cuyo numero de telefono aparece al principio de la pagina y pida informacion acerca de su reclamacion(caso).

21655565

or clean-up worker as defined by WCL 161 and that his claim was disallowed as untimely.

A September 29, 2015 Notice of Decision was issued finding that claimant was not a clean-up worker and that the claim was not subject to the provisions of Article 8-A.  As the claim arose out of the events of September 11, 2001, and the claim was not filed until September 8, 2014, the claim was deemed time-barred.

## LEGAL ANALYSIS

Claimant filed an application for review cover sheet along with a letter addressed to the governor.  Claimant also submitted approximately 200 pages of documentation to the Board which is referenced in his letter to the governor.  Claimant's application cover page is signed and notarized indicating that the claimant mailed the application to the Board on October 19, 2015 and that he mailed the application to the parties on October 17, 2015.  In his letter, the claimant asserts that he was involved in clean-up operations following the September 11, 2001 terrorist attacks.  Claimant contends that, while working at the American Stock Exchange, he cleaned his office, the contents of which the claimant listed in his application.  Claimant's very detailed letter goes on to explain his medical treatment, his subsequent employment, the World Trade Center Health Program and the 9/11 Victim Compensation Fund, and his workers' compensation case including prior representation.  Claimant expresses his opinion that the WCLJ erred in interpreting the cases he relied upon to make his decision, and the claimant offers forth additional case law in support of his claim.

In its rebuttal, the carrier asks that the claimant's application not be considered for several reasons including that claimant's application was not properly certified, that the letter sent with the application cover sheet was addressed to the governor and sent merely in contemplation of an appeal, and that the application cover sheet does not specify the issues on appeal but instead refers to the attached letter which does not specify grounds for appeal.  The carrier also asserts that it did not receive the additional 192 pages of documentation that the claimant filed with the Board.  In the event the Board considers claimant's application, carrier's counsel requests that the WCLJ's decision be affirmed as claimant was not involved in rescue, recovery, and/or clean-up operations.

### Claimant's Application

12 NYCRR 300.13(a) provides "An application to the board to review a decision of a Workers' Compensation Law Judge shall be in writing and shall be accompanied by a cover sheet form prescribed by the chair ... Such application shall be filed with the Board within 30 days after

*** Continued on next page ***

| Claimant - | Guy Cozzi | | Employer - | American Stock Exchange |
|---|---|---|---|---|
| Social Security No. - | | | Carrier - | Pacific Indemnity Company |
| WCB Case No. - | G110 9023 | | Carrier ID No. - | W168009 |
| Date of Accident - | 09/11/2001 | | Carrier Case No. - | 040514060129COZZI |
| District Office - | NYC | | Date of Filing of this Decision - | 02/05/2016 |

ATENCION:

Puede llamar a la oficina de la Junta de Compensacion Obrera, en su area correspondiente, cuyo numero de telefono aparece al principio de la pagina y pida informacion acerca de su reclamacion(caso).

EBRB-1 (4/99)

21655565

notice of filing of the decision of the Workers' Compensation Law Judge together with proof of service upon all other parties in interest." An Application for Board Review must be served on all parties to the proceeding, and the Board is bound by the service requirements of 12 NYCRR 300.13(a) (*see Matter of Vukel v New York Water & Sewer Mains*, 94 NY2d 494 [2000]; *Matter of Faello v Federal Express*, 34 AD3d 942 [2006]).

When an Application for Review is incomplete or when the Application lacks proper proof of service but the record contains a Rebuttal, the Board has discretion on whether or not to deny review of that Application (*see Matter of Greenough v Niagara Mohawk Power Corp.*, 45 AD3d 1116 [2007]).

In the present case, the carrier timely filed a rebuttal and, as such, was not prejudiced by any of the claimed irregularities in the claimant's application cover sheet.  As to the carrier's argument that the claimant submitted a letter to the governor which requested assistance in the filing of an appeal, this letter articulates an argument that the claimant was involved in rescue, recovery, and/or clean-up operations following September 11, 2001.  As such, the Board Panel will address this argument.

"If the application for review offers new and additional evidence that was not in the record and was not presented to the [WCLJ], it must state reasons showing that such evidence could not have been presented to the [WCLJ] or could not have been produced as directed by the [WCLJ]. The board panel, in its discretion, may accept such evidence or may deny review and refuse to consider such new or additional evidence if it finds that such evidence could and should have been presented to the [WCLJ]" (12 NYCRR 300.13[g]). Where a party presents "a credible reason" for its failure to submit the evidence before the WCLJ, it is not an abuse of discretion for the Board Panel to consider the evidence when it is submitted with an application for administrative review (*Matter of Bonilla v Country Rotisserie of Riverhead*, 122 AD3d 1035 [2014]).

In the present case, claimant submitted approximately 200 pages of documentation which he referenced in the letter attached to his application for review cover sheet.  Some of the documentation was previously submitted to the Board's file, and some of the information was new.  The claimant did not offer any reason as to why the new evidence could not have been produced previously.  Because of this, the Board Panel will not consider the documentation which was submitted for the first time on appeal.  The Board will, however, consider the arguments made and information provided in the claimant's letter which provides detailed information regarding the additional documentation.  The Board also notes that much of the documentation provided sheds light on claimant's claim process and prior employment history

*** Continued on next page ***

| Claimant - | Guy Cozzi | Employer - | American Stock Exchange |
|---|---|---|---|
| Social Security No. - | | Carrier - | Pacific Indemnity Company |
| WCB Case No. - | G110 9023 | Carrier ID No. - | W168009 |
| Date of Accident - | 09/11/2001 | Carrier Case No. - | 04051406O129COZZI |
| District Office - | NYC | Date of Filing of this Decision - | 02/05/2016 |

ATENCION:

Puede llamar a la oficina de la Junta de Compensacion Obrera, en su area correspondiente, cuyo numero de telefono aparece al principio de la pagina y pida informacion acerca de su reclamacion(caso).

21655565

as a whole, for which the Board cannot provide any relief. Therefore, even if the Board were to consider this information, its ultimate decision would remain unchanged.

*Article 8-A*

Article 8-A was added to the WCL for the purpose of extending the claim filing deadline for workers and volunteers who sustain a qualifying condition as the result of participation in rescue, recovery and clean-up operations following the September 11, 2001, terrorist attacks on the World Trade Center.

In order for a claim to fall within the purview of WCL Article 8-A, the claimant must have participated in (1) rescue, recovery or clean-up operations (2) at the World Trade Center site (or the Fresh Kills landfill or New York City morgue), (3) between September 11, 2001, and September 12, 2002, (4) contracted a qualifying condition as a result of that participation, and (5) filed a written and sworn statement with the Board (WTC-12) detailing the dates, locations and employers for whom claimant worked as part of his or her participation in World Trade Center rescue, recovery or clean-up operations (*see* WCL §§ 161, 162 and 164).

"Workers' Compensation Law § 161 provides that the phrase '"[p]articipant in World Trade Center rescue, recovery, or cleanup operations" means any . . . employee who within the course of employment . . . participated in the rescue, recovery, or cleanup operations at the World Trade Center site between September [11, 2001] and September [12, 2002]' (Workers' Compensation Law § 161 [1] [a] [i])" (*Matter of Regan v City of Hornell Police Dept.*, 124 AD3d 994 [2015]). "Generally, the Board requires that the 'claimant directly participate in or otherwise have some tangible connection to the rescue, recovery or cleanup operations' (*Matter of Williams v City of New York*, 89 AD3d 1182 [2011], *lv denied* 18 NY3d 807 [2012])" (*Regan*, 124 AD3d 994 [2015]).

A World Trade Center site volunteer need not be affiliated with an authorized volunteer entity to meet the definition of volunteer under Article 8-A for purposes of claiming benefits from the WTC Volunteer Fund (*Matter of Hazan v WTC Volunteer Fund*, 120 AD3d 82 [2014]).

In Matter of Dynamex Ins., 2013 NY Wrk Comp G0109840, the Board Panel noted the broad interpretation of rescue, recovery, and/or clean-up operations, however, the Panel found that the claimant in that case did not fall within the provisions of Article 8-A. Claimant, who alleged that he cleaned his desk upon returning to work following the September 11, 2001 terrorist attacks, "performed an office task and did not aid in the clean-up of ground zero" (Matter of Dynamex Ins., 2013 NY Wrk Comp G0109840).

*** Continued on next page ***

| | | | |
|---|---|---|---|
| Claimant - | Guy Cozzi | Employer - | American Stock Exchange |
| Social Security No. - | | Carrier - | Pacific Indemnity Company |
| WCB Case No. - | G110 9023 | Carrier ID No. - | W168009 |
| Date of Accident - | 09/11/2001 | Carrier Case No. - | 040514060129COZZI |
| District Office - | NYC | Date of Filing of this Decision - | 02/05/2016 |

ATENCION:

Puede llamar a la oficina de la Junta de Compensacion Obrera, en su area correspondiente, cuyo numero de telefono aparece al principio de la pagina y pida informacion acerca de su reclamacion(caso).

EBRB-1 (4/99)

A54

21655565

In the present case, it is undisputed that claimant was not involved in rescue or recovery efforts following the September 11, 2001 terrorist attacks. The only argument that claimant falls under the provisions of Article 8-A rests in his allegation that he participated in clean-up efforts when he cleaned his office. Claimant argues that he did not simply clean his desk, but rather cleaned several other items in his office, which makes this case distinguishable from those relied upon by the WCLJ and the carrier. This is, however, a distinction without a difference. Claimant testified, and again stated on appeal, that he cleaned his office because he believed that the cleaning personnel would throw out documents he needed to perform his job duties. Additionally, claimant did not vacuum the rug because it was the cleaning personnel's job to perform this task. This statement indicates that, at some point, the claimant performed an assessment of what portion of the cleaning fell within his job description, even if this assessment was sub-conscious. This is further illustrative of the fact that claimant was involved in an office task and was not involved in clean-up operations. The reliance upon *Matter of Hazan* is misplaced as the claimant was not acting as a volunteer in cleaning the contents of his own office. As such, the present claim does not fall within the provisions of WCL Article 8-A.

Workers' Compensation Law § 28 bars awards of compensation unless a claim was filed within two years after the accident. As the events at issue occurred immediately following the September 11, 2001 terrorist attacks and claimant's workers' compensation claim was filed on September 8, 2014, the claim is time-barred.

Therefore, the Board Panel finds, upon review of the record and based upon a preponderance of the evidence, that the claimant was not involved in rescue, recovery, and/or clean-up operations and the claim does not fall under the provisions of WCL Article 8-A.

CONCLUSION

*** Continued on next page ***

| Claimant - | Guy Cozzi | Employer - | American Stock Exchange |
| Social Security No. - | | Carrier - | Pacific Indemnity Company |
| WCB Case No. - | G110 9023 | Carrier ID No. - | W168009 |
| Date of Accident - | 09/11/2001 | Carrier Case No. - | 040514060129COZZI |
| District Office - | NYC | Date of Filing of this Decision - | 02/05/2016 |

ATENCION:

Puede llamar a la oficina de la Junta de Compensacion Obrera, en su area correspondiente, cuyo numero de telefono aparece al principio de la pagina y pida informacion acerca de su reclamacion(caso).

21655585

ACCORDINGLY, the September 29, 2015 decision is AFFIRMED.

No further action is planned at this time.

All concur.

_____          _____          _____
     Loren D. Lobban                      Linda Hull                       Richard A. Bell

| Claimant - | Guy Cozzi | Employer - | American Stock Exchange |
| Social Security No. - | | Carrier - | Pacific Indemnity Company |
| WCB Case No. - | G110 9023 | Carrier ID No. - | W168009 |
| Date of Accident - | 09/11/2001 | Carrier Case No. - | 040514060129COZZI |
| District Office - | NYC | Date of Filing of this Decision - | 02/05/2016 |

ATENCION:

Puede llamar a la oficina de la Junta de Compensacion Obrera, en su area correspondiente, cuyo numero de telefono aparece al principio de la pagina y pida informacion acerca de su reclamacion(caso).

(1573)49741627-1

|                | Case #G110 9023 |
| -------------- | --------------- |
| Copies To:     |                 |
| Claimant:      | Guy Cozzi       |
| Carrier:       | Pacific Indemnity Company |
| Employer:      |                 |
| Other:         | Braunfotel & Frendel LLC |
|                | Alan M. Cass & Associates |

Guy Cozzi
PO Box 4083
Greenwich, CT   06831


Guy Cozzi
PO Box 4083
Greenwich, CT   06831

Pacific Indemnity Company
c/o Chubb Insurance Company
55 Water Street
New York, NY   10041-2899

Braunfotel & Frendel LLC
Attorneys At Law
49 Maple Avenue
New City, NY   10956


Alan M. Cass & Associates
225 Broadway, Rm 1505
New York, NY   10007


EBRB-1 (4/99)                    **OVER**                    A57

(1573)49741627-1

# Appendix G 3

No. G110 9023. Workers' Compensation Board. 09-29-2015

included in the Petition for Writ of Certiorari submitted by Guy Cozzi

21460871



**Robert E. Beloten
Chair**

STATE OF NEW YORK
WORKERS' COMPENSATION BOARD
PO BOX 5205
BINGHAMTON, NY  13902-5205
*www.wcb.ny.gov*

(877) 632-4996

## State of New York - Workers' Compensation Board

## In regard to Guy Cozzi, WCB Case #G110 9023

### NOTICE OF DECISION

*keep for your records*

At the Workers' Compensation hearing held on 09/24/2015 involving the claim of Guy Cozzi at the Brooklyn
hearing location, Judge Marc Grodsky made the following decision, findings and directions:

DECISION:    Claim is disallowed.  Claimant testified that he did not perform any rescue or recovery work after the
World trade Center attack.  He did testify that he cleaned his office at the American Stock Exchange approximately
5 days after the attack..

"Workers' Compensation Law § 161 provides that the phrase '"[p]articipant in World Trade Center rescue,
recovery, or cleanup operations" means any . . . employee who within the course of employment . . . participated in
the rescue, recovery, or cleanup operations at the World Trade Center site between September [11, 2001] and
September [12, 2002]' (Workers' Compensation Law § 161 [1] [a] [i])" (Matter of Regan v City of Hornell Police
Dept., 124 AD3d 994 [2015]). "Generally, the Board requires that the 'claimant directly participate in or otherwise
have some tangible connection to the rescue, recovery or cleanup operations' (Matter of Williams v City of New
York, 89 AD3d 1182 [2011], lv denied 18 NY3d 807 [2012])" (Regan, 124 AD3d 994 [2015]).

Pursuant to the Board's holding set forth in 2008 NY Wrk. Comp. LEXIS 3532 (2008), the claimant is not a cleanup
worker. In that case, the Board panel held that where a claimant cleaned her desk after the attack, it was not
participation in the rescue, recovery or cleanup. Rather, it was office work. The case is similar to the facts set forth
in this case.

I do not find the claim to be subject ot Article 8-A. As a result, the claim would have to be filed within two years
of the accident or by 9/11/03. The claim was not filed until 9/8/14. As such, the claim is barred under WCL §28.
No further action is planned by the Board at this time.

| | | | |
|---|---|---|---|
| Claimant - | Guy Cozzi | Employer - | American Stock Exchange |
| Social Security No. - | | Carrier - | Pacific Indemnity Company |
| WCB Case No. - | G110 9023 | Carrier ID No. - | W168009 |
| Date of Accident - | 09/11/2001 | Carrier Case No. - | 040514060129COZZI |
| District Office - | NYC | Date of Filing of this Decision - | 09/29/2015 |

### ATENCION:

Puede llamar a la oficina de la Junta de Compensacion Obrera, en su area correspondiente, cuyo numero de telefono aparece al
principio de la pagina y pida informacion acerca de su reclamacion(caso).

(3076)48928651-1

| | |
|---|---|
| Copies To: | Case #G110 9023 |
| Claimant: | Guy Cozzi |
| Carrier: | Pacific Indemnity Company |
| Employer: | |
| Other: | Braunfotel & Frendel LLC |
| | Alan M. Cass & Associates |

Guy Cozzi
15 East Putnam Ave, Ste 151
Greenwich, CT  06830

## NOTICE TO INJURED WORKER

1. *Any compensation due will be sent to you by check by the employer or insurance carrier.*

2. Keep a careful record of the payments received in order that you may have evidence of payment or nonpayment in case of dispute.

3. Do not pay anything to anyone representing you. If you hire a lawyer or licensed representative, the fee will be set by a W.C.Law Judge. The fee will be deducted from your award and paid by separate check directly to the lawyer or licensed representative by the employer or the insurance carrier.

4. Except for Volunteer Firefighters' and Volunteer Ambulance Workers' claims, no lost wage benefits are paid for the first seven days of disability unless the disability extends beyond 14 days.

5. If your case was continued and the Judge directed that your benefits are to continue, the insurance company or self-insured employer must keep paying you until :

   (a) you have another hearing and the Judge stops or changes your benefits

   or

   (b) your employer or insurance company has evidence that you have returned to work at regular pay or a report from your doctor stating you have no disability and submits this evidence to the Workers' Compensation Board.

6. If you wish to apply for administrative review of any part or all of the Judge's decision, your application must be in writing and received by the Board within 30 days of the filing date of this decision. The filing date is on the other side of this form in the lower right-hand corner. You may deliver your application in person to the District office or send it by mail.

7. If you have any further questions, you may contact your district office by mail or by telephone. The address of your district office is:

STATE OF NEW YORK
WORKERS' COMPENSATION BOARD
PO BOX 5205
BINGHAMTON, NY  13902-5205

Phone Number:  (877) 632-4996

EC-23 (4/98)                    **OVER**                    A29

(3076)48928651-1

# Appendix G 4

No. G110 9023. Workers' Compensation Board. 03-10-2015

included in the Petition for Writ of Certiorari submitted by Guy Cozzi

21061272



ADMINISTRATIVE REVIEW DIVISION
WORKERS' COMPENSATION BOARD
PO BOX 5205
BINGHAMTON, NY   13902
*www.wcb.ny.gov*

Robert E. Beloten
Chair

## State of New York - Workers' Compensation Board

## In regard to Guy Cozzi, WCB Case #G110 9023

# MEMORANDUM OF BOARD PANEL DECISION

*keep for your records*

Opinion By: Richard A. Bell
Robert E. Beloten
Mark D. Higgins

The claimant, acting in his own behalf and through his newly retained attorney, requests review of the Workers' Compensation Law Judge (WCLJ) decision filed December 16, 2014.  The carrier filed a rebuttal.

## ISSUE

The issues presented for administrative review is whether the finding that Article 8-A does not apply to this claim is supported by substantial evidence.

## FACTS

This is a controverted case for work related mental and/or physical injuries, which the claimant has alleged resulted from his work related exposure to toxic dust and debris from the terrorist attack on the World Trade Center on and after September 11, 2001 in the course of his employment as the Managing Director of Equity Sales for the employer.  The claimant filed a C-3 (Employee Claim) form on September 8, 2014.

The claimant also filed a WTC-12 (Registration of Participation in World Trade Center Rescue, Recovery and/or Clean-up Operations) form on September 8, 2014, which stated that he

*** Continued on next page ***

| | | |
|---|---|---|
| **Claimant -** | Guy Cozzi | **Employer -** |
| Social Security No. - | | **Carrier -** American Stock Exchange<br>Pacific Indemnity Company |
| WCB Case No. - | G110 9023 | **Carrier ID No. -** W168009 |
| Date of Accident - | 09/11/2001 | **Carrier Case No. -** 040514060129COZZI |
| District Office - | NYC | **Date of Filing of this Decision –** 03/10/2015 |

ATENCION:

Puede llamar a la oficina de la Junta de Compensacion Obrera, en su area correspondiente, cuyo numero de telefono aparece al principio de la pagina y pida informacion acerca de su reclamacion(caso).

A22

Page 1 o

EBRB-1 (4/99)

21061272

participated in the World Trade Center rescue, recovery and/or clean-up operation, as that term is defined in WCL § 161(1), as an employee of the American Stock Exchange between September 2001 and December 2002. The WTC-12 states that his participation occurred at the WTC area and at the American Stock Exchange, which was located at 86 Trinity Place, New York, NY 10006.

The carrier filed a form PH-16.2.0 (Pre-Hearing Conference Statement) on November 20, 2014, and a FROI-04 form on September 25, 2014, in which it raised several issues and defenses to the claim, including issues of no accident arising out of and in the course of employment, no timely claim filing under WCL § 28, no prima facie medical evidence, and that Article 8-A does not apply to this claim, among others.

A pre-hearing conference/hearing was held on December 11, 2014, at which time the claimant was unrepresented and appeared by telephone. During an initial discussion, the WCLJ advised the claimant of his right to counsel, and the claimant elected to proceed. The claimant indicated that he had discussed his claim with the carrier's attorney a few days before. The claimant indicated although he had "worked down there," he was not a rescue or recovery worker. The WCLJ advised the claimant that "in order to be eligible for Article 8-A, you have to be a rescue worker or a clean-up worker. Without taking your testimony or prejudicing you if you don't believe you were a rescue, recovery or clean-up worker, Article 8-A will probably not cover you." In response, the claimant advised the WCLJ, "I definitely wasn't."

After this colloquy, the WCLJ swore the claimant in as a witness, over the phone, and again advised the claimant that if he wanted to get an attorney, he would give him an opportunity to do so. The WCLJ then asked the claimant "before we swore you in, you indicated to me that you do not believe you were a rescue, recovery or clean-up worker; is that correct." The claimant responded, "Yes, that's correct." Based upon this colloquy, the WCLJ found that Article 8-A does not apply to this claim.

The WCLJ thereafter advised the claimant that World Trade Center cases are generally treated as accidents, that he has a statute of limitations problem, and again asked the claimant if he wanted to get an attorney. At this point, the claimant indicated he would like to get an attorney. The WCLJ reiterated his finding that Article 8-A does not apply to this case, and continued the case. The WCLJ's findings are incorporated in the WCLJ decision filed on December 16, 2014.

## LEGAL ANALYSIS

In a certified letter and in an e-mail to the Board's staff, each received on January 6, 2015, the

*** Continued on next page ***

| | | |
|---|---|---|
| | | Employer - American Stock Exchange |
| Claimant - | Guy Cozzi | Carrier - Pacific Indemnity Company |
| Social Security No. - | | Carrier ID No. - W168009 |
| WCB Case No. - | G110 9023 | Carrier Case No. - 040514060129COZZI |
| Date of Accident - | 09/11/2001 | Date of Filing of this Decision - 03/10/2015 |
| District Office - | NYC | |

ATENCION:

Puede llamar a la oficina de la Junta de Compensacion Obrera, en su area correspondiente, cuyo numero de telefono aparece al principio de la pagina y pida informacion acerca de su reclamacion(caso).

Page 2 of 5

A23

claimant indicated he was filing an appeal from the WCLJ's decision. The claimant indicated that he was still attempting to find an attorney to assist him with the appeal. In the e-mail sent to the Board, the claimant indicated that he had been advised by the carrier's attorney a few days prior to the December 11, 2014 hearing that Article 8-A only applies to "rescue, recovery and clean-up at the 9-11 debris site." The claimant indicated that the conversation he had with the carrier's attorney was the reason he advised the WCLJ that he was not a rescue, recovery or clean-up worker, although he has now talked to an attorney who advised him that his actions in cleaning his office at the American Stock Exchange after the World Trade Center attack would constitute participation in clean-up operations sufficient to qualify for coverage under Article 8-A. The Board sent a letter to the carrier on January 15, 2015 along with the claimant's correspondence, and advised the carrier that it must file a rebuttal within 30 days thereafter.

In addition, the claimant's newly retained attorney filed an RB-89 on January 13, 2015, in which he asserted that the claimant had not been questioned regarding the clean-up activities he performed while working for the employer after the September 11, 2001 terrorist attack, argued that the claimant's actions fall within the scope of clean-up work which the Courts and the Board has found to be clean-up activities covered under Article 8-A, and requested that the WCLJ's decision be reversed and the case restored to the trial calendar for the claimant's testimony regarding the clean-up activities he performed while working for the employer after September 11, 2001.

In its rebuttal, the carrier contends that the WCLJ's decision should be affirmed. The carrier argues that the claimant testified he was not a rescue, recovery or clean-up worker, that there is no proof that he was at work on September 11, 2001, that he has never previously asserted that he cleaned dust or debris, even out of his own office, and that his office is not a covered location.

The carrier's contention that the claimant's office location, which he lists as 86 Trinity Place, New York, NY is not a covered location under Article 8-A has no merit. WCL § 161(2) defines the "World Trade Center site" within the meaning of Article 8-A as "anywhere below a line starting from the Hudson River and Canal Street; east on Canal Street to Pike Street; south on Pike Street to the East River; and extending to the lower tip of Manhattan." The claimant indicated in his WTC-12 registration form that he worked for the employer at 86 Trinity Place, New York, NY 10006, which is located in lower Manhattan and is within the World Trade Center site specified in the statute.

The Board Panel finds that the WCLJ's finding that Article 8-A does not apply to this claim is not supported by substantial evidence and is rescinded, without prejudice. The WCLJ's finding that Article 8-A does not apply was based upon the claimant's stated "belief" that he was not a
*** Continued on next page ***

| | | |
|---|---|---|
| | | Employer - American Stock Exchange |
| | | Carrier - Pacific Indemnity Company |
| Claimant - | Guy Cozzi | Carrier ID No. - W168009 |
| Social Security No. - | G110 9023 | Carrier Case No. - 040514060129COZZI |
| WCB Case No. - | 09/11/2001 | Date of Filing of this Decision - 03/10/2015 |
| Date of Accident - | NYC | |
| District Office - | | |

ATENCION:

Puede llamar a la oficina de la Junta de Compensacion Obrera, en su area correspondiente, cuyo numero de telefono aparece principio de la pagina y pida informacion acerca de su reclamacion(caso).

A24    Page 3

EBRB-1 (4/99)

rescue, recovery or clean-up worker. The claimant is not an attorney and was not represented at the time of the December 11, 2014 hearing, and the transcript of that hearing confirms that he had discussed this case with the carrier's attorney prior to that hearing. The question of whether the claimant participated in clean-up operations within the meaning of Article 8-A should be determined, based upon evidence presented through development of the record, and not based on the stated "belief" of the unrepresented claimant as to the applicability of the statute, particularly where the claimant's understanding of the scope of coverage provided by Article 8-A may have been influenced by his pre-hearing conversation with the carrier's attorney.

The Board Panel notes that the only issue or defense raised in the carrier's PH-16.2.0 and FROI-04 was its contention that Article 8-A does not apply to this claim. The case is returned to the WCLJ's hearing calendar, to consider the other issues and defenses raised by the carrier, including whether there is prima facie medical evidence. In the event that the WCLJ finds there is prima facie medical evidence, then the WCLJ should schedule further development of the record on the controverted issues, including but not limited to the testimony of the claimant as to the facts which he contends that he participated in the World Trade Center rescue, recovery and/or clean-up operation as an employee of the American Stock Exchange.

Therefore, the Board Panel finds, upon review of the record and based upon a preponderance of the evidence filed herein to date, that the finding that Article 8-A does not apply to this claim is not supported by substantial evidence.

## CONCLUSION

ACCORDINGLY, the WCLJ decision filed December 16, 2014 is RESCINDED, without prejudice. The case is returned to the WCLJ's hearing calendar, for further consideration of the issues and defenses raised by the carrier, including whether there is prima facie medical evidence.

In the event that the WCLJ finds there is prima facie medical evidence, then the WCLJ should schedule further development of the record on the controverted issues, including but not limited to the testimony of the claimant as to the facts which he contends support his claim that he

*** Continued on next page ***

| | | |
|---|---|---|
| | | Employer - | American Stock Exchange |
| | | Carrier - | Pacific Indemnity Company |
| Claimant - | Guy Cozzi | Carrier ID No. - | W168009 |
| Social Security No. - | | Carrier Case No. - | 040514060129COZZI |
| WCB Case No. - | G110 9023 | Date of Filing of this Decision - | 03/10/2015 |
| Date of Accident - | 09/11/2001 | | |
| District Office - | NYC | | |

ATENCION:

Puede llamar a la oficina de la Junta de Compensacion Obrera, en su area correspondiente, cuyo numero de telefono aparece al principio de la pagina y pida informacion acerca de su reclamacion(caso).

Page 4 o

A25

EBRB-1 (4/99)

participated in the World Trade Center rescue, recovery and/or clean-up operation as an employee of the American Stock Exchange, and is covered by Article 8-A.  The case is continued.

All concur.

Richard A. Bell

Robert E. Beloten
Chair

Mark D. Higgins

| | |
|---|---|
| Claimant - | Guy Cozzi |
| Social Security No. - | |
| WCB Case No. - | G110 9023 |
| Date of Accident - | 09/11/2001 |
| District Office - | NYC |

| | |
|---|---|
| Employer - | American Stock Exchange |
| Carrier - | Pacific Indemnity Company |
| Carrier ID No. - | W168009 |
| Carrier Case No. - | 040514060129COZZI |
| Date of Filing of this Decision - | 03/10/2015 |

ATENCION:

Puede llamar a la oficina de la Junta de Compensacion Obrera, en su area correspondiente, cuyo numero de telefono aparece al principio de la pagina y pida informacion acerca de su reclamacion(caso).

Page 5

A26

EBRB-1 (4/99)

(2117)47705771-1

| Copies To: | Case #G110 9023 |
|---|---|
| Claimant: | Guy Cozzi |
| Carrier: | Pacific Indemnity Company |
| Employer: | |
| Other: | Alan M. Cass & Associates |

Guy Cozzi
15 East Putnam Ave, Ste 151
Greenwich, CT   06830

Guy Cozzi
15 East Putnam Ave, Ste 151
Greenwich, CT   06830

Pacific Indemnity Company
c/o Chubb Insurance Company
55 Water Street
New York, NY   10041-2899

Alan M. Cass & Associates
225 Broadway, Rm 1505
New York, NY   10007

(2117)47705771-1

# Appendix G 5

No. G110 9023. Workers' Compensation Board. 12-16-2014

included in the Petition for Writ of Certiorari submitted by Guy Cozzi

20944219



**Robert E. Beloten
Chair**

STATE OF NEW YORK
WORKERS' COMPENSATION BOARD
PO BOX 5205
BINGHAMTON, NY   13902-5205
*www.wcb.ny.gov*

(877) 632-4996

## State of New York - Workers' Compensation Board

## In regard to Guy Cozzi, WCB Case #G110 9023

### NOTICE OF DECISION

*keep for your records*

At the Workers' Compensation hearing held on 12/11/2014 involving the claim of Guy Cozzi at the Brooklyn hearing location, Judge Marc Grodsky made the following decision, findings and directions:

DECISION:   As per claimant's testimony, I find that claimant is not a rescue, recovery or cleanup worker.  As such, I find that Article 8-A is not applicable.

Claimant seeks the opportunity to seek counsel. The case is continued to address the following issue(s):  Failure To Report Accident Timely, No Causal Relationship (No Injury Per Statutory Definition), No Causal Relationship (No Medical Evidence of Injury), No Compensable Accident/Not in Course and Scope of Employment (Not WCL Definition of Accident). This case is not subject to the expedited hearing process and penalties.

<u>Information about Next Hearing / Meeting</u>
The case is continued to January 22, 2015 at 2:45pm

| | | | |
|---|---|---|---|
| Claimant - | Guy Cozzi | Employer - | American Stock Exchange |
| Social Security No. - | | Carrier - | Pacific Indemnity Company |
| WCB Case No. - | G110 9023 | Carrier ID No. - | W168009 |
| Date of Accident - | 09/11/2001 | Carrier Case No. - | 040514060129COZZI |
| District Office - | NYC | Date of Filing of this Decision – | 12/16/2014 |

ATENCION:

Puede llamar a la oficina de la Junta de Compensacion Obrera, en su area correspondiente, cuyo numero de telefono aparece al principio de la pagina y pida informacion acerca de su reclamacion(caso).

EC-23 (4/98)

A20

Page 1 of 1

(2761)47181647-1

|  | Copies To: | Case #G110 9023 |
|---|---|---|
|  | Claimant: | Guy Cozzi |
|  | Carrier: | Pacific Indemnity Company |
|  | Employer: | American Stock Exchange |
|  | Other: | |

Guy Cozzi
15 East Putnam Ave, Ste 151
Greenwich, CT   06830

## NOTICE TO INJURED WORKER

1.  Any compensation due will be sent to you by check by the employer or insurance carrier.

2.  Keep a careful record of the payments received in order that you may have evidence of payment or nonpayment in case of dispute.

3.  Do not pay anything to anyone representing you. If you hire a lawyer or licensed representative, the fee will be set by a W.C.Law Judge. The fee will be deducted from your award and paid by separate check directly to the lawyer or licensed representative by the employer or the insurance carrier.

4.  Except for Volunteer Firefighters' and Volunteer Ambulance Workers' claims, no lost wage benefits are paid for the first seven days of disability unless the disability extends beyond 14 days.

5.  If your case was continued and the Judge directed that your benefits are to continue, the insurance company or self-insured employer must keep paying you until :

    (a) you have another hearing and the Judge stops or changes your benefits

    or

    (b) your employer or insurance company has evidence that you have returned to work at regular pay or a report from your doctor stating you have no disability and submits this evidence to the Workers' Compensation Board.

6.  If you wish to apply for administrative review of any part or all of the Judge's decision, your application must be in writing and received by the Board within 30 days of the filing date of this decision. The filing date is on the other side of this form in the lower right-hand corner. You may deliver your application in person to the District office or send it by mail.

7.  If you have any further questions, you may contact your district office by mail or by telephone. The address of your district office is:

STATE OF NEW YORK
WORKERS' COMPENSATION BOARD
PO BOX 5205
BINGHAMTON, NY   13902-5205

Phone Number:  (877) 632-4996

EC-23 (4/98)                    **OVER**                    A21

(2761)47181647-1

# Appendix H

My legal brief (without the Appendix) submitted on 08-29-2018 to the NY Supreme
Court Appellate Division Third Judicial Dept.. No. 526254

included in the Petition for Writ of Certiorari submitted by Guy Cozzi

This is my legal brief (without the Appendix) submitted to the New York Supreme Court (NYSC). That
Appendix is **not** included with this filing for the sake of brevity.

*__Important Note for SCOTUS:__* As the Petitioner-Appellant, I am representing myself without an attorney or any other legal assistance. I am not an attorney and I have never taken law classes. As a result, I apologize if the written format of this appeal document does not perfectly conform to the requirements of the court. I also apologize for letting my subjective emotions, stress, and health problems affect me when I wrote some emotional comments in my briefs submitted to the New York courts. I was extremely upset and stressed due to the devastating effects 9-11 has had on my life and health, in addition to the violations of the US Constitution that were never corrected in the prior New York court rulings.

---

### *526254 Docket Number*
To be Submitted Without Oral Argument
**State of New York Supreme Court**
**Appellate Division, Third Judicial Department**

---

**BRIEF for Appellant**

---

In the Matter of the Claim for Compensation under the
Workers' Compensation Law made by

| | |
|---|---|
| Guy Cozzi | Claimant-Appellant |
| American Stock Exchange | Employer-Respondent |
| Pacific Indemnity Company | Carrier-Respondent |
| Workers' Compensation Board | Respondent |

---

Submitted by appellant Guy Cozzi

# *Table of Contents*

526254 Docket Number ........................................................... 1

Table of Contents ................................................................... 2

Questions Presented ............................................................... 3

Statement of Facts .................................................................. 4

    Reference list of abbreviations: ....................................... 5

    List of the prior court decisions for this case: ................. 6

  American Stock Exchange - Employee ............................... 8

  Volunteer, as defined by Article 8-A ................................. 9

  Medical Health Records .................................................... 10

  Workers' Compensation Board (WCB) ............................. 10

Points of Argument ................................................................ 11

  #1 - WCB and OGC Violated My Due Process Rights ...... 11

  #2 - WCL § 123 vs. Article 8-A and NYL Intent ............. 17

  #3 - Rules of Game Changed After Game was Over .......... 21

  #4 - My Article 8-A Case was Not "Truly Closed" ........... 22

  #5 - WCB was "Prejudice to the Claimant" ..................... 23

  #6- WCL § 164: WCB Never Set Date of Disablement ..... 25

  #7 - WCB Never Considered WCL § 165 .......................... 26

  #8 - WCL § 1: WCB Must Favor Injured Claimant ........... 28

  #9 - WCB Violated Stare Decisis ...................................... 28

  #10 - Intelligent & Meaningful Judicial Review ............... 30

  #11 - WCB Violated the US Constitution .......................... 31

  #12 - WCB used "Fruit of the Poisonous Tree" ................. 32

  #13 - WCB RB-89 Denial Decision is Biased .................... 35

  #14 - Why Am I Angry at the WCB and OGC? ................. 39

  Conclusion ......................................................................... 41

## _Questions Presented_

1. Did the Workers' Compensation Board (WCB) Court ignore the clear wording and intent of the Article 8-A law by adding **"Ground Zero"** and **"affiliated with an authorized entity or agency"** requirements to make it very restrictive for some 9-11 rescue/recovery/cleanup workers?  Answer: Yes.

2. Is it a **violation** of the US Constitution, (Separation of Powers), for the WCB to change the Article 8-A law by adding their "Ground Zero" and "affiliated with an authorized entity or agency" requirements? Answer: Yes.

3. Did the WCB **abuse their discretion** and **violate my Equal Protection and Due Process rights** when they prevented me from submitting additional evidence and documentation for my RB-89 request? Answer: Yes.

4. Is the WCB **refusing** to allow me to submit a WTCvol-3 form for my Article 8-A Volunteer work? Answer: Yes.

5. Does the 96 year old WCL § 123 law with its 7 year limit from the "date of accident", **conflict** with the intent of the NY Legislature for the new Article 8-A laws because the date of accident for claimants is 2001-2002, which is **17 years ago**? Answer: Yes.

6. Is the intent of the NY Legislature to allow anyone denied in the past under the old Article 8-A laws, to now be given the opportunity of judicial review under the **new amended law**? Answer: Yes.

7. Since my prior appeals were determined to be filed as "untimely" by the NY Supreme Court and the NY Court of Appeals, then is it true that my Article 8-A claim was never **"truly closed"**? Answer: Yes.

8. Did the WCB violate the NYSC rulings that state the Board is obligated to assess the **"prejudice to the claimant"** which would have **inured** if the case were "closed"? Answer: Yes.

9. Did the WCB decision denying my RB-89 request forget to state any **date of disablement** as required by WCL § 164? Answer: Yes.

10. Did the WCB **violate my Equal Protection and Due Process rights** when they ignored WCL § 165 when ruling to deny my RB-89 request? Answer: Yes.

11. Does Workers' Compensation Law § 1 require that presumptions of laws operate in **favor of the claimant**? Answer: Yes.

12. Did the WCB **violate Stare Decisis** when they ignored violations of the Constitution in their ruling to deny my RB-89 request? Answer: Yes.

13. Did the WCB **violate "Intelligent & Meaningful Judicial Review"** in their ruling to deny my RB-89 request? Answer: Yes.

14. Is the WCB ruling denying my RB-89 rehearing request similar to the legal concept of "**Fruit of Poisonous Tree**"? Answer: Yes.

15. Were the WCB rulings denying my Article 8-A claim and RB-89 rehearing request, **arbitrary, capricious <u>and</u> an abuse of discretion**? Answer: Yes.

---

## *Statement of Facts*

Between September 2001 through September 2002, I participated as a Cleanup Worker while employed and as a Volunteer Rescue/Recovery Worker in the World Trade Center Site area as defined by Workers' Compensation Law Article 8-A. I am also a 9-11 NYC Survivor as defined by the government: http://www.cdc.gov/wtc/eligiblegroups.html#survivor

As the Claimant-Appellant, I am representing myself without an attorney or any other legal assistance. I am not an attorney and I have never taken law classes. I get panic attacks just thinking about this case because I have physical and mental health problems from the devastating effects the aftermath of 9-11 has had on my life. But I'm not insane and I'm not stupid, and I'm fighting to win this case for my survival. So I will use logic, reason and the "common-sense viewpoint of the average [person]" *(Matter of Johannesen v. City of New York DHPD 1994 - WCB Centennial Booklet)*. I delayed researching and writing this brief until July because of the panic attacks I get just by thinking about 9-11 and how it destroyed my life. Moreover, I had no clue where to begin to figure out how to overturn the WCB RB-89 denial decision on appeal. So for me, this is like trying to piece together an extremely complicated jigsaw puzzle without having a photo of what the completed puzzle looks like. Lawyers have the completed photo because they already know the rules of the game and how it all works. I don't. As a result, I apologize if the written format of this appeal document does not perfectly conform to the requirements of the New York Supreme Court, Appellate Division. I have added emphasis using font styles (**bold**, <u>underline</u>, *italics*, all CAPS) to highlight important words in this brief. Also, I use strikethrough fonts and brackets, such as (~~volunteer~~ [**employee**]), to show a comparison between the words in WCB court precedent cases vs. my case.

I submitted a detailed written brief and extensive appendix with my 2016 NYSC appeal docket number 523341 which describes many facts and events leading up to this 2018 NYSC appeal docket number

526254. The WCB has copies of my NYSC docket # 523341, and they mention it in their WCB ruling which I am appealing. Since the NYSC guidelines limit the written briefs to 70 pages max, I am not able to include the facts of my prior NYSC written appeal in this brief. You will read in section *#1 - WCB and OGC Violated My Due Process Rights* of this brief, that **I desperately** wanted to include my 2016 NYSC appeal and motion documents with my RB-89 submitted to the WCB. Why didn't I submit my 2016 NYSC appeal with my RB-89 documents? Section #1 explains in detail how the WCB prevented me from doing that by **violating my Equal Protection and Due Process rights!**

---

## Reference list of abbreviations:

- ❖ **WCL** = Workers' Compensation Law (section §)
- ❖ **WCB** = Workers' Compensation Board
- ❖ **OGC** = WCB Office of General Counsel
- ❖ **WTC HP** = World Trade Center Health Program
- ❖ **VCF** = September 11th Victim Compensation Fund
- ❖ **NYL** = New York Legislature/Legislators (lawmakers)
- ❖ **NYSC** = New York Supreme Court - Third Department
- ❖ **NYSC docket # 523341** = My 2016 appeal to NYSC Third Department
- ❖ **NYCA** = New York Court of Appeals
- ❖ **WTC Site** = Article 8-A "World Trade Center site" is defined as "anywhere below a line starting from the Hudson River and Canal Street; east on Canal Street to Pike Street; south on Pike Street to the East River; and extending to the lower tip of Manhattan."
- ❖ **Ground Zero** = "Ground Zero" is the site of the former WTC Twin Tower buildings which were destroyed in the 9-11 terrorist attacks of 2001. This is located inside, but much smaller than, the WTC Site of Article 8-A.
- ❖ **authorized entity/agency** = NYSC ruling of Hazan v. WTC Volunteer Fund 2014 which overturned the WCB unconstitutional restriction that required injured workers [employees or volunteers] to be **affiliated with an <u>authorized</u> entity or agency** in order to qualify for workers' compensation benefits under Article 8-A. ... "*In the absence of enabling legislation, the Board issued Order of the Chair No. 967 in June 2003, which defined the term 'first response emergency services personnel' as: '[a]ll persons who, serving without compensation or remuneration, and serving under the direction of an authorized rescue entity or volunteer agency,...'*"

---

## <u>List of the prior court decisions for this case:</u>

1. 09-04-2014 I filed a C-3 form with the WCB. [A11-15]

2. 09-04-2014 I filed a WTC-12 form with the WCB. [A16-19]

3. 12-16-2014 the WCLJ, Judge Marc Grodsky, ruled that Article 8-A is not applicable to my claim, and he set the case to be continued after I find an attorney/counsel. At that hearing my Article 8-A claim was denied by the WCLJ because prior to the court date I was deceived by Martin Krutzel, the insurance carrier's attorney, when he told me that my office building was not a covered location for my WCB claim. [A20-21]

4. 03-10-2015 the WCB appeal decision with **Chair Judge Robert Beloten** ruled: "The claimant indicated in his WTC-12 registration form that he worked for the employer at 86 Trinity Place, New York, NY 10006, which is located in lower Manhattan and **is within the World Trade Center site specified in the statute. The Board Panel finds that the WCLJ's finding that Article 8-A does not apply to this claim is not supported by substantial evidence and is rescinded, without prejudice."** WCB Chairman Robert Beloten also wrote in his ruling that I was misled by the carrier's attorney Martin Krutzel. The WCB appeal panel rescinded the prior WCLJ decision. [A22-27]

5. 09-29-2015 the same WCLJ, Judge Marc Grodsky, denied my Article 8-A claim again because he uses the **<u>unconstitutional</u>** "Ground Zero" and "affiliated with an authorized entity/agency" restrictions to deny Article 8-A claims. So even after **WCB Chair Judge Beloten reversed** Judge Grodsky's prior ruling, Judge Grodsky used his unconstitutional restrictions to deny my claim for a second time. On page 3 line 13 of the minutes of that court hearing, it quotes the WCLJ telling me: *"Cleaning your desk doesn't count. I'm not talking about cleaning your office or cleaning your desk. Were you under the direction of any entity in the overall cleanup of the site, any site?"* [A28]

6. 10-12-2015 I sent a detailed letter and evidence documents to Governor Cuomo's office explaining the situation and the problems created by the corrupt lawyers that were supposed to be helping me. I submitted a copy of that letter to the WCB for my appeal. [A30-37]
   a. 11-20-2015 Martin Krutzel, the insurance carrier attorney, submitted his rebuttal to my WCB appeal letter. [A38-44]
   b. 12-16-2015 I submitted my rebuttal letter to the WCB to reply to the carrier's attorney Krutzel. [A45-49]

7. 02-05-2016 The WCB appeal decision denied my claim because the WCB uses their **<u>unconstitutional</u>** "Ground Zero" and "authorized entity/agency" restrictions to deny Article 8-A claims. [A50-57]

    a. In their decision, the WCB ignored the fact that my cleanup work took about 8 hours over several days. Moreover, the judges (not Chair Beloten) completely ignored all the Constitutional violations in the WCB decision that I wrote about in my appeal submissions. [A30-37] [A45-49]

8. 03-03-2016 I submitted my brief to the WCB requesting a Full Board Review of the prior denial decision for my Article 8-A claim. [A58-66]

9. 05-12-2016 the WCB ruled to deny my request for a Full Board Review. [A67-68]

10. 06-02-2016 I filed a notice of appeal to the NYSC docket number 523341. Unfortunately, I was given inaccurate information by the WCB for the proper steps to appeal and try to get the WCB decision denying my Article 8-A claim reversed. As a result, I appealed the WCB Full Board Review denial, instead of the prior WCB decision. [A69]

11. 07-28-2016 the NYSC approved my motion to proceed as a poor person. [A70]

12. 03-30-2017 the NYSC ruled "the merits of the underlying decision are not properly before us". As noted above, I was given incorrect information by the WCB about how to properly appeal the WCB Article 8-A denial decision. [A71-73]

13. 04-24-2017 I filed a NYSC Motion for Reconsideration. [A74-76]

14. 06-15-2017 the NYSC denied my Motion for Reconsideration. [A77]

15. 07-10-2017 I filed three motions to the NYCA. Unfortunately, I was given inaccurate information (again) by the NYSC employee for the proper steps to appeal to the NYCA to try to get the NYSC decision reversed. As a result, I filed the motion for extension of time too late.
    a. Motion for extension of time to move for permission to appeal to the NYCA. [A78-83]
    b. Motion to appeal to the NYCA. [A84-89]
    c. Motion to reverse denial decision for Motion for Reconsideration to appeal to the NYCA. [A90-95]

16. 07-10-2017 I submitted my written motion/appeal document to the NYCA.

17. 10-19-2017 the NYCA ruled that my motion was untimely. [A96-97]

18. 11-10-2017 I filed the following three forms with the WCB for my RB-89 request for reopening/rehearing of my Article 8-A claim:
    a. Affidavit-affirmation for new evidence. [A98]
    b. RB-89 application for board review. [A99-100]
    c. My written brief for my RB-89 request. [A101-114]

19. 11-26-2017 Insurance carrier attorney Martin Krutzel submitted his WCB rebuttal to my RB-89 rehearing request. [A126-132]

20. 01-12-2018 I emailed the WCB OGC (Office of General Counsel). I asked the OGC to please give me a few more weeks to prepare my written rebuttal and include more evidence before they make a ruling on the RB-89. [A144]

21. 01-19-2018 the WCB Judges filed their court decision denying my RB-89 request. **Less than one week** after I sent the OGC my January 12 email, they decided to **abuse their discretion and be vindictive and spiteful** to deny me **Equal Protection, Due Process** and the opportunity to submit additional evidence and documentation for my RB-89 request. [A133-138]
    a. *(I wanted to include my NYSC and NYCA written briefs with more RB-89 document submissions but the WCB and OGC prevented me from doing that. For details read section #1 - WCB and OGC Violated My Due Process Rights).*

22. 01-31-2018 I filed my NYSC Notice of Appeal to overturn the 01-19-2018 WCB RB-89 denial decision. [A1]

23. 03-08-2018 the NYSC approved my motion to proceed as a poor person for this appeal docket number 526254. [A10]

24. July 2018, I started researching WCB court precedent cases for this brief. August 2018, I am now submitting my written appeal brief to the NYSC.

---

## American Stock Exchange - Employee

In 2001, I was working as a *Managing Director of Equity Sales*, which was a prestigious and important job at the American Stock Exchange (AMEX). My work office was located less than 100 yards away and in direct line of sight to the World Trade Center (WTC). The address of the American Stock Exchange was 86 Trinity Place, New York, NY 10006. **Our office building was located so close to the WTC Twin Towers that many of our windows were broken from flying debris** and the office rooms got covered with the toxic dust and debris when the Twin Towers collapsed on 9-11. I did not know the dust and debris was toxic and I spent about **6-8 hours cleaning during my first few days back at work.** [A30]

I cleaned the toxic 9-11 dust and debris because I had to comply with the **Securities and Exchange Commission (SEC) and financial industry laws** for handling the confidential work documents. I cleaned up to prevent anyone else, like cleaning crews, from getting access to the confidential documents I was legally responsible for. In addition, there was the concern that any cleaning people might throw all the office work papers in the garbage, or remove them from my office. Documents were

blown all over the rooms and floors due to the broken windows after the WTC Twin Towers collapsed. I knew the cleaning crews would not pick up and clean the dust off each of the documents and save them. Those work documents were **critical** for doing my job as Managing Director of Equity Sales, so I was very concerned about them. Due to the importance of those work related documents, I brushed the dust off of hundreds of them! [A30]

In addition, every weekday **for many months I was exposed to the toxic dust and debris and the horrible sight and smell of the WTC debris pile** because it was located less than 100 yards from our building and in direct view from my office windows. Every weekday I went to/from work, or to lunch, or out of the office, I had to walk right next to the WTC debris site. [A30]  After the 9-11 terrorist attacks, the US economy went into a severe economic recession. As a result, many people lost their jobs and the American Stock Exchange *went over a cliff* in a downward spiral. There were seven people in my sales department at the AMEX, and at the end of 2001 five out of seven of us got laid off from work. I was one of the five employees who lost their job directly as a result of the devastating effect 9-11 had on the economy. The American Stock Exchange went out of business a few years later. Today, that office building still sits vacant. [A30]

---

## *Volunteer, as defined by Article 8-A*

**In addition, I also was a Volunteer rescue or recovery worker as defined by Article 8-A.** The details are mentioned in my RB-89 hearing request documents because that was part of the **new** evidence that has **never** received judicial review. I included that as part of the new evidence to reopen my claim for a rehearing. [A103-104] [A115-124] [A125]  I sometimes brought water, coffee, soda drinks, and occasionally snacks, to random workers at "Ground Zero" when I would go to/from my office for client meetings, work errands, lunch, etc.. For me, the cleanup I did of toxic dust and debris, qualifies me for workers' comp based upon my office building location within the World Trade Center Site as defined by Article 8-A law. But if the WCB uses their "Ground Zero" criteria (that does not exist in the Article 8-A law), then yes, my feet were standing on Ground Zero when I helped random workers by bringing them drinks. I brought them drinks as a gesture of kindness to help the people working on the WTC debris pile, which was located very close to my work office. I had a comfortable office job with a high income and benefits, so I felt I needed to do something to help people doing the manual labor every day on the WTC debris pile. [A103-104] [A115-124] [A125]

**I enjoy doing charity.** Today I do internet research and website volunteer charity projects, but I earn no income from it.

---

## _Medical Health Records_

**Over a hundred pages of my medical health records related to 9-11 illnesses** were submitted as evidence during the WCB Court process. These medical records prove the very serious medical health problems I have related to 9-11:

| _9-11 Physical Health Diseases:_ | _9-11 Mental Health Diseases:_ |
|---|---|
| ✓ Abnormal Lung Scans | ✓ PTSD (Post Traumatic Stress Disorder) |
| ✓ Heart Attack (nearly fatal) | ✓ Panic Attacks |
| ✓ Heart Disease | ✓ Anxiety |
| ✓ Complex Multi-Vessel Coronary Artery Disease | ✓ Hypertension |
| ✓ High Blood Pressure | ✓ Depression |
| ✓ High Cholesterol | |
| ✓ Migraine Headaches | |
| ✓ GERD, Esophageal Reflux | |
| ✓ Shoulder Tendonitis | |

## _Workers' Compensation Board (WCB)_

Between the years 2002-2017, I sent out over ten thousand resumes and made many hundreds of phone calls trying to find employment. However, I only very rarely got a phone interview after applying to online job ads, and even then I was still unable to get hired. During all these years I continued to have endless problems trying to recover and restart my life and employment career. This was directly due to the serious medical problems caused by the effects the 9-11 terrorist attacks had on my health and life. [A31-37]

From September 2001 through October 2013, I was unaware that there were any assistance or insurance programs related to 9-11 for someone in my position. Until September 2014, I was not aware that I was eligible for Workers' Compensation coverage. There are valid reasons why until recently I was unaware of any 9-11 related assistance programs or insurance coverage for me:  [A32-33]

   ✓ I was not a fireman, police officer, EMS, or first responder employee of the Federal/State/New York City government in 2001. I had only heard about government assistance and programs for people in those categories. As a result, I had no idea I would be eligible.

   ✓ I was living in Italy looking for employment from 2003-2010 and was not aware of any assistance programs in the USA related to 9-11.

   ✓ **On 9/3/2014 a WTC Health Program social worker called me and was the first person to tell me to apply for Workers' Compensation!**

✓ I knew **nothing** about Worker's Compensation insurance. When the insurance investigator, Vince Klebaur, interviewed me for several hours on 9/24/2014, I asked him to tell me what type of coverage is Worker's Compensation because I knew **nothing** about it. [A33]

I filed my Workers' Compensation Claim on 09-04-2014 by submitting the completed and signed WCB forms C3 and WTC-12. [A11-15] [A16-19]  My claim was denied by the insurance carrier and the WCB court. All the court decisions leading up to this NYSC appeal are mentioned in my itemized list above in the section titled: *"List of the prior court decisions for this case"*.

---

## Points of Argument

## #1 - WCB and OGC Violated My Due Process Rights

On 11-10-2017 at **11:23 AM** I mailed by USPS Priority Mail my RB-89 forms and evidence to the WCB to request a reopening/rehearing of my Article 8-A claim. [A149]  Coincidentally, on that **same day** at 12:58 PM (only 90 minutes later) the OGC (WCB Office of General Counsel) replied to my prior email from October with answers to my questions about the maximum number page limit and affidavit requirements of my RB-89 request. It was only then that I learned by email that the 8-15 page limit is **not** applicable for RB-89 Pro-Se claimants like me. [A140-141]

- "12 NYCRR 300.13(b) sets forth guidelines for the format applications for review and full Board review, including a limitation on page length. However, those format requirements, including the limitation on page length, do not apply to a claimant who is unrepresented. **If you are proceeding without representation, those page length requirement would be inapplicable.**"

On same day at 1:12 PM (15 minutes later) I replied to the OGC email. [A141-142]

- "Thank you for replying to my email. **I wish I had gotten this email a few hours earlier. I just mailed out the RB-89 and the documents to the WCB at 11:23 AM this morning** by Priority Mail. Here is the USPS tracking number: 9505513222767314137225."
- "I didn't know if there is a 30 day deadline following the October 19, 2017 motion denial decision for this case at the NY Court of Appeals. So to be safe, since I've already missed the 30 day deadlines for the NY Supreme Court and NYCA appeals for this case, I just mailed out my RB-89 request for a rehearing. I wasn't sure if I would hear back from you prior to any November 19 deadline."
- "Can I ask you for a favor? Since I now know that there is no page limit because I am proceeding Pro-Se without an attorney, **can I resubmit a longer legal brief I sent with the RB-89 and new evidence this morning?** The one I sent this morning is only 14 pages long because the RB-89 instructions say: 'A brief longer than fifteen (15) pages will not be considered under any circumstances.'"

- **"Basically what I would like to also include are the WCB the legal arguments I included in the 60+ page briefs I submitted to the New York Supreme Court for the appeal and motion. You were sent copies of them for my NYSC appeal/motion.** As you know, they ruled that my case was "untimely" and was "not properly in front of the NYSC". I'm not trying to be difficult or make you do extra work. I just want **ONE** opportunity to present the Constitutional issues in front of the WCB and then the NYSC. Since I now know I have no page limit for my RB-89 rehearing request, then that gives me the opportunity to first present the issues to the WCB, and if they deny my claim again, then I'm hoping that allows me to appeal to the NYSC. If the NYSC rules against my claim, then I will know that it's not WCB bias that is denying my claim, but instead there must be aspects of the law that I do not know because I have no legal training. I just want to get a court decision that I know is unbiased, impartial, and accurate based upon the Constitution and the law."

- **"Let me know if it's possible for me to resend my RB-89 with a 60+ page legal brief** (actually it might be less than 60 pages because your format criteria allows single spaced lines and not double-spaced lines). **Also, if you notice that anything is not in the correct format, like the affidavit or the form info, then let me know and I can correct that.** You have the Priority Mail tracking number so you will know when it arrives at PO Box 5205, Binghamton, NY."

On 11-22-2017 I emailed the OGC again because they **never replied** to my 11-10-2017 email questions. [A142]

- "I didn't get a reply from my last email. Can you tell me if I can resubmit my RB-89 with a longer written brief as described below?"

On 11-30-2017 the OGC replied to my email and said it "would be inappropriate for the Board to provide" answers to my last email questions. [A142]

On 12-01-2017 I emailed the OGC stating I received the carrier's rebuttal and I asked the OGC basic questions, <u>not</u> legal advice, such as: [A142-143]

- ...if and when I can reply to the carrier's rebuttal...
- ...where to find the rebuttal forms and the WCL § 123 online...
- *And once again I asked because I still got no prior replies:* "Can I submit the extra pages I mention in my prior emails with the extra content/text like I did in the **NY Supreme Court submission,** since I am Pro-Se and you told me the WCB 15 page limit does not apply to me?"

On 12-08-2017 I emailed the OGC because again I received **no reply** to my prior email questions. [A143]

- "I am following up on my prior emails since I have not received a reply from you yet. Please let me know my options and any **deadlines for me to file a rebuttal to the RB-89 submission** as I mention in my prior email below. **I don't want to miss any deadlines and I need to prepare a rebuttal to the insurance company lawyer's submission.** If you cannot answer any of the questions in my prior email below, then please answer the ones you can give me answers to."

On 12-15-2017 the OGC replied to my email and again said it "would be inappropriate for the Board to provide" answers to my last email questions. [A143-144]

**On 01-12-2018 I emailed the OGC and I asked them to please give me a few more weeks to prepare my written rebuttal and include more evidence before they make a ruling on my RB-89 request.** [A144]

- "In the next few weeks I will be sending you additional paperwork to reply to Attorney Krutzel's rebuttal to my RB-89 request for a rehearing submission for my WCB claim # G1109023. I am now doing the research at the local law library to prepare the documents. Please give me time to prepare those documents and submit them before you make a ruling on the RB-89. **I should be able to finish and mail in the rebuttal reply and new form submissions by the end of this month, January.**"

- "On January 10, 2018 while I was doing research at the law library for my RB-89 rebuttal, I found a WCB case that stated in September 2016 Governor Cuomo and the Legislature extended the Article 8-A deadline to September 11, 2018. **I was unaware of that change in the law. When I read that, I realized I could submit a new WTC-12, C-3 and WTCvol-3 form for my WCB claim because the facts of me being an Article 8-A Volunteer and Recovery Worker were never included in my original WTC-12 and C-3 of September 2014. Moreover, those facts did not receive judicial review during my case hearings, for the reasons I mentioned in my RB-89 documents.**"


**Less than one week later on 01-19-2018, and BEFORE I could submit the additional evidence, documents, research, and WTCvol-3, the WCB Judges filed their court decision denying my RB-89 request!!** [A133-138]  From November 2017 to January 2018 I spoke with **three different** WCB employees who said it takes **nine months** to receive an RB-89 decision. **Yet, less than one week after I sent the OGC my 01-12-2018 email, the WCB and OGC decided to abuse their discretion by denying me Equal Protection, Due Process and the opportunity to submit additional evidence and documentation for my 11-10-2017 RB-89 request!!** As I said earlier, I'm not a lawyer and I have no legal training, and I know my head is screwed up because of the devastating effects of 9-11 on my life. But I'm not insane and I'm not stupid, and I'm fighting for my survival to win this case. So I will use logic, reason and the "common-sense viewpoint of the average [person]" *(Matter of Johannesen v. NYC DHPD 1994 - WCB Centennial Booklet)*. It seems crystal-clear to me that the evidence and facts I presented are **undeniable and irrefutable evidence** that what the WCB and OGC did was **arbitrary, capricious and an abuse of discretion!!!**

On 01-30-2018 I emailed the OGC to find out how to appeal their 01-19-2018 RB-89 denial, and I wrote that they violated my Due Process rights. [A144-145]

- "Based upon my prior email from January 12, 2018 (listed above), you know that I requested only a few weeks to submit more new evidence and legal research as a reply to Krutzel's rebuttal for my RB-89 submission. Since November 2017 when I filed my RB-89, I called and spoke with 3 different WCB employees

who told me those **RB-89 decisions take 9 months to receive a decision. Yet, less than one week after I sent your office my January 12 email, you decided to be vindictive and spiteful and deny me Due Process and the opportunity to submit additional evidence and documentation for my RB-89 request. It is undeniable that the WCB was vindictive and spiteful when they had the WCB Judges immediately rule on my RB-89 request and send out a denial, right after they got my email, instead of going through the normal process and timeframe to make a ruling.** With the fact that you denied me my Due Process rights, my question for you now is:

2) Can I resubmit a new RB-89 to add more evidence?

**(And please don't be vindictive and spiteful again... I know how much you hate to be honest or to allow injured workers to get due process in the WCB courts... but just for once, try to have a slight amount of integrity and respect the US Constitution!!!)"**

I sent my 01-30-2018 email at 3:32 PM to the OGC. The **next morning** at 11:19 AM the OGC sent me a reply. Now suddenly they replied **very quickly** and gave me a **very detailed and complete answer** to my questions. [A145-146]  Moreover, now they also attached two PDF files for reference to assist me with answers to my questions. **But prior to this they either ignored my emails or delayed and gave vague answers.** It's amazing how fast they *changed their tune* after I confronted them with the fact that they violated my Due Process rights! I found this legal reference online which explains the following:

- *Legal Info Institute at Cornell Law School:*
  *Due Process:* The clause also promises that before depriving a citizen of life, liberty or property, government must follow fair procedures. Thus, it is not always enough for the government just to act in accordance with whatever law there may happen to be. **Citizens may also be entitled to have the government observe or offer fair procedures, <u>whether or not</u> those procedures have been provided for in the law on the basis of which it is acting. Action denying the process that is "due" would be unconstitutional.** [A151]

- *Equal Protection:* The Equal Protection Clause of the Fourteenth Amendment of the U.S. Constitution prohibits states from denying any person within its territory the **equal protection of the laws. This means that a state must treat an individual in the same manner as others in similar conditions and circumstances.** [A157]

To add insult to injury, in the July 2018 emails you can read how the WCB and OGC are also **<u>REFUSING to even allow me</u>** to submit a WTCvol-3 form for my WCB claim!! [A147-148]  Yet, the facts of me being an Article 8-A Volunteer rescue/recovery worker were **never** included in my original C-3 and WTC-12 forms of September 2014. [A11-19]  Moreover, those volunteer facts did **not receive judicial review** during my case hearings, for the reasons I mentioned in my RB-89 documents. [A101-104]  My 07-18-2018 email explains:

- "I never filed as a **<u>VOLUNTEER</u>** rescue/recovery worker with form **WTCVOL-3** - that is the NEW claim aspect! The ONLY claim that the WCB ruled on was the EMPLOYEE cleanup worker claim. I filed on 2014-09-04 the **WTC-12 and C3 forms.** There was never any Volunteer Article 8-A forms filed nor ruled on by the WCB. That is what I sent the WCB in January 2018 and what these most recent emails are about. You're basically confirming that the WCB and

OGC never bothered to even read the new claim I sent in and the attached PDF files. Now I know your reply. **The WCB is intentionally ignoring my valid Volunteer WTCVOL-3 form I sent in on January 29, 2018. So the WCB refuses to give me a fair hearing on this even though I have never submitted any volunteer claim nor a WTCVOL-3 form before January 29, 2018.**" [A148]

So after all that, the most obvious question to ask is ...

<u>Question:</u> **Why would the WCB and OGC be vindictive, spiteful, and intentionally violate the Constitution?**
<u>Answer:</u> **The New York Court of Appeals explained it well in** *Matter of Johannesen v. City of New York Dept. of HPD, 84 N.Y.2d 129 (1994), (also cited in the WCB Centennial Booklet)*:

- Finally, in a policy-based argument, ~~appellant~~ **[respondent]** suggests that recovery here will open floodgates and make every allergic reaction, common cold or ordinary ailment compensable. **This argument is often advanced when precedent and analysis are unpersuasive.**

The WCB thinks that by approving Article 8-A claims of workers who are **NOT** affiliated with an authorized agency/entity *"suggests that recovery here will open floodgates and make every allergic reaction, common cold or ordinary ailment compensable"*. But as the New York Court of Appeals ruled, *"This argument is often advanced when precedent and analysis are unpersuasive"*. On page 3 line 13 of the transcribed minutes of the 09-24-2015 WCB hearing, the WCLJ told me:

- *"Cleaning your desk doesn't count. I'm not talking about cleaning your office or cleaning your desk. Were you under the direction of any entity in the overall cleanup of the site, any site?"*

The WCB is worried that this case is similar to *Matter of Hazan v. WTC Volunteer Fund - 2014*. It could set a precedent that enables other cleanup workers to reopen claims because the WCB used the **unconstitutional** "Ground Zero" and "authorized entity/agency" restrictions to deny valid Article 8-A worker claims. God only knows how many injured workers have been cheated over the past 17 years, either by being denied in WCB hearings or by not filing claims at all, due to the WCB's unconstitutional restrictions added to their Article 8-A decisions. *(I discussed these issues in my 03-03-2016 brief requesting a WCB Full Board Review. [A58-66] Also see DiGiacomo news article cited in that brief [A174-176])*

This case has been going on since September 2014. If I had been **affiliated with an authorized entity or agency** in 2001 for the WTC rescue, recovery or cleanup work I did, then my claim would have been approved at the first WCB hearing with no problems. Instead, I got cheated just because I worked for a private-sector company located next to the former Twin Towers and the Ground Zero debris pile. The WCB and the insurance carrier lawyers decided to *circle the wagons* and fight to the end. Four years of all of this fighting just because I didn't work for an *authorized entity or agency* for the WTC rescue, recovery or cleanup work I did. This also explains why the WCB and OGC are **refusing to allow me** to submit a WTCvol-3 form for my WCB claim. They don't want to lose, like they did when the NYSC

had to "remind" them about the Constitution and Separation of Powers in the *Matter of Hazan v. WTC Volunteer Fund - 2014.*

In addition, the WCB and OGC didn't like what I wrote in my NYSC, NYCA, and RB-89 briefs about the WCB bias against cleanup workers with their "Ground Zero" and "authorized entity/agency" restrictions to deny Article 8-A claims. After all, in the minds of the WCB, OGC, and insurance carrier lawyers:

1. I'm just some illiterate, insignificant, low-life, injured worker who is a **pawn in their game of chess.** So I'm easily expendable and they look at me with contempt.
2. How <u>dare</u> I challenge the *great* WCB and OGC. Who am I to think I deserve equal protection under the law when I challenge the **unconstitutional** "Ground Zero" and "authorized entity/agency" restrictions the WCB uses?
3. How <u>dare</u> the NY State Legislature pass Article 8-A laws with wording that the *great* WCB and OGC don't like and don't want to adhere to.
4. How <u>dare</u> the NY Supreme Court overturn Article 8-A rulings, like *Matter of Hazan v. WTC Volunteer Fund - 2014,* and then expect the *great* WCB and OGC to apply that ruling to similar cases, such as mine:
- *(Note: Strikethrough font styles & brackets, such as (~~volunteer~~ [employee]), show comparisons between WCB court precedent cases vs. my case.)*

*Matter of Hazan v. WTC Volunteer Fund, 120 A.D.3d 82, NYSC 2014:*
- "Finally, to the extent that the Board has consistently relied upon the subject orders in denying benefits to volunteers **[or cleanup workers]** who were not affiliated with an authorized rescue entity or volunteer **[or cleanup]** association **[or at Ground Zero]**, we need note only that while Workers' Compensation Law § 141 vests the Board's chair with certain powers to administer the provisions of the Workers' Compensation Law, it does not vest him or her with the authority to supplement or amend duly enacted legislation. Accordingly, whatever the net effect of such orders may be, they "cannot overrule the statute itself" *(Matter of Russomanno v. Leon Decorating Co., 306 NY 521, 525 [1954]).* In sum, as neither the statutory language nor the legislative history supports the Board's requirement that an individual be affiliated with an authorized rescue entity or volunteer **[or cleanup]** agency **[or at Ground Zero]** in order to qualify as a volunteer **[or cleanup worker]** and, hence, be eligible for the coverage afforded under the statute, **the Board's decision denying claimant's application for benefits upon this particular ground cannot stand.**[2]
- Footnote 2: To the extent that it may be argued that the imposition of such a requirement is necessary in order to guard against frivolous claims, the **remedy lies with the Legislature in the form of a statutory amendment.**"

I am wondering if the offices at the WCB and OGC have wall plaques that read:
*"In ~~God~~ Us We Trust"*

## *#2 - WCL § 123 vs. Article 8-A and NYL Intent*

WCL § 123 was passed almost 100 years ago and was only amended in 1940 and 1946, so it's a *very* old law *(L.1922, c. 615. Amended L.1940, c. 686, § 4; L.1946, c. 113, § 52.).* The seven year limit of WCL § 123 conflicts with the Article 8-A law and the WTC-12 form. When there is a conflict between laws, then the new laws must supersede old laws. It is very significant to note what the WTC-12 (9-16) form instruction page states, as follows: [A162-163]

- 1) ... to permit the Board to reopen such claims previously denied as **untimely**.
- 1) Article 8-A was recently amended to **change** the definition of "qualifying condition" and to **extend** the registration deadline.
- 4e) New onset of diseases resulting from exposure as such diseases occur in the **future** including...
- 5) In order for the **claim of a participant** in World Trade Center rescue, recovery or cleanup operations to come within the application of **Article 8-A** of the Workers' Compensation Law, <u>the participant is required to **register**</u> with the Workers' Compensation Board ("Board").
- A) ... if you were exposed to hazardous conditions which cause you to suffer, or **may** cause you to suffer in the **future,** from a "qualifying condition" for which you **will** or **may** file or have filed a claim for workers' compensation benefits.
- B Item 7) This item states your understanding that filing the Sworn Statement, and thereby **registering as a "participant,"**...

The NY Legislators (NYL) wrote and amended the Article 8-A laws **multiple times** and it was passed with 138 "*Yea*" votes and zero "*Nay*" votes. Every time they amended that law, they made it broader with a more liberal interpretation than before. So the <u>NYL intent</u> is clear based upon those facts and what the WTC-12 form itself states. **All claimants are <u>automatically entitled</u> to take advantage of the provisions of Article 8-A in prosecuting their claim** (aka "Article 8-A provisions protection") **just by** *registering* **as a "participant" with the WTC-12 form** (read #5 & #B-7 on the form)! This does not require the WCB to rule in favor of all claims by registered participants. Rather, the NYL want to make sure that all WTC-12 forms submitted by claimants who believe they are "participants", in the past, present, and future, will get fair judicial review and Article 8-A provisions protection. It is *very* significant that NYL want people to file claims if they think they <u>**MAY**</u> have qualifying conditions in the **<u>FUTURE</u>**. Why? Because the NYL know that often Article 8-A health conditions are not found/identified until **many years later** by the "participants" and/or the WTC Health Program. So even if someone believes they **may** be a "participant" in Article 8-A, and if they **may** have qualifying conditions in the **future**, then they are given the Article 8-A provisions protection (read #A on the form). The NYL intent and WTC-12 words do **not** say *only* claimants that the **<u>WCB decides</u> are** "**participants**". The clear distinction here is that the NYL want the **<u>claimant</u>** (not the WCB) to decide if they are, or will be, *registering* as a "participant", now or in the future!! Therefore, Article 8-A provisions protection is **not** based on whether the WCB *thinks* that you are a "participant". Why else would the words on the WTC-12 *encourage* people to file a claim even if they have **NO** qualifying conditions now?

If the WCB makes a ruling against someone who has **no** qualifying conditions **now**, then that claimant is screwed if they get qualifying conditions in the **future,** because the WCB has already **denied** their claim as not Article 8-A "qualified". The injured workers will be blocked in the future because of the prior denial ruling and the 7 year limit of WCL § 123. That is clearly **opposite** of the **intent of the NYL** which is to make sure no claimant is denied justice under Article 8-A. Those claimants should not be blocked by the 7 year limit of WCL § 123:

- ...no claim for compensation or for death benefits that has been disallowed after a trial on the merits, or that has been otherwise disposed of without an award after the parties in interest have been given due notice of hearing or hearings and opportunity to be heard and for which no determination was made on the merits, shall be reopened after a lapse of **seven years from the date of the accident or death.**


WCB rulings for surviving spouses also prove that all claimants are *automatically* given Article 8-A provisions protection just by *registering* as a "participant" with the WTC-12 form. For example, in all those cases, the WCB rulings denied surviving spouses the opportunity to claim Article 8-A benefits because the "participant" was deceased, and the **"participant" did <u>NOT</u> sign the WTC-12 form.** The WCB knows that those deceased workers were "participants" under Article 8-A. However, **the WCB denied those claims because the law requires the "participant" worker (*not* the surviving spouse) to sign the WTC-12 form in order to get Article 8-A provisions protection!** Therefore, based upon these facts and many WCB court precedent decisions, there is only one possible conclusion: **The WCB <u>cannot</u> have it <u>both</u> ways,** by denying me Article 8-A provisions protection when I **did sign** my WTC-12 form; but then the WCB denies surviving spouses Article 8-A protections because the deceased "participants" did **not** sign the WTC-12 forms! Those are **diametrically opposite** decisions by the WCB under the *same* Article 8-A law. **That <u>violates</u> the Equal Protection and Due Process clauses of the Constitution!!** Either everyone gets Article 8-A provisions protection just by *signing* the WTC-12 as "participants", and therefore provisions protection is <u>automatic</u> whenever claimants *register* as "participants", and thus Article 8-A provisions protection is **<u>NOT</u>** decided by the WCB; or else no one gets those protections! The WCB cannot have it both ways. As I stated above, it is very significant to note what the WTC-12 (9-16) form instruction page states, and how the WCB rules against surviving spouses of deceased "participants".

*Matter of Employer: EH&S Pro Staffing, G120 4942, 2016 WL 2607570 NY WCB:*

- "For all Article 8-A claims (i.e. for an employee or for a volunteer), WCL § 162 requires the filing of a **registration** statement by the **participant** in the World Trade Center rescue, recovery and clean-up operation, which was **not** done by the **decedent** in this case. Furthermore, the Board has held that a **surviving spouse of a deceased employee is not a party who may file a WTC-12 form under WCL § 162, as there is no provision in WCL § 162 or elsewhere in Article 8-A for the filing of a registration statement by anyone other than the participant. As such, there is no basis on which this claim could be considered under Article 8-A, as**

there has been no WTC-12 form filed by the decedent *(see Matter of New York State Police, 2015 NY Wrk Comp G0999174).*

- The filing of a WTC-12 form does not constitute the filing of a Workers' Compensation claim and there is no requirement that a **participant** in World Trade Center rescue, recovery and clean-up operations **register** as such with the Board in order to file a claim for his or her compensable injuries. **However, the consequence of failing to register is that the participant will not be entitled to take advantage of the provisions of Article 8-A in prosecuting his or her claim** *(see Matter of Verizon, 2009 NY Wrk Comp 00712822).*"

*Matter of Employer: WTC Volunteer, AA05 0013, 2016 WL 5866243 NY WCB:*
- "The Board has promulgated the WTC-12 form, which is to be **signed** by the **participant** in World Trade Center rescue, recovery and clean-up operations, and filed with the Board, in order to **register** his or her **participation** …"

*Matter of Employer: NY State Police, G099 9174, 2015 WL 4549347:*
- "The November 13, 2013, amendment of Article 8-A **did not modify** the procedure for filing a WTC-12 form **to include the filing of a registration form by someone other than the workers and volunteers who actually participated** in World Trade Center rescue, recovery and clean-up operations. WCL § 162 contains specific statutory requirements for the filing of a registration form with the Board, in order for a **claimant to take advantage of the provisions of Article 8-A, …**"

Why am I explaining this? Because **the WCB denied me Article 8-A provisions protection rights.** My RB-89 rehearing request was denied based upon the seven year limit in WCL § 123. Moreover, the WCB denial decision **never** mentions WCL § 164 Date of Disablement, nor does it mention WCL § 165, *(I discuss these later).* I am *automatically* given Article 8-A provisions protection just by *registering* as a "participant" with the WTC-12 form. Yet, I was **denied** Article 8-A provisions protection by the WCB, which **violates my Equal Protection and Due Process rights under the Constitution!**

Now back to the conflict between WCL § 123 vs. Article 8-A …
The intent of the NYL for Article 8-A protections is clearly based on what the **injured worker** or **future** injured worker believes, not on what the WCB believes. The seven year limit of WCL § 123 will prevent rehearings of valid *future* qualifying conditions for *previously* denied claimants!! **Therefore, the seven year limit of WCL § 123 conflicts with the Article 8-A law and WTC-12 form.**

Article 8-A claims are uniquely different than all other workers' comp claims. That is why the NYL have expanded the qualifying conditions and extended the filing deadline multiple times since 2001. If you are going to apply a time limit, then it needs to be seven years from the **last filing deadline date** for Article 8-A claims. Why? Because the NYL have continually extended the filing deadline of this law, so that should be the **date used to begin running the 7 year period! The NYL know that Article 8-A**

**claims are unique and require special treatment by courts.** The **96 year old** WCL § 123 law with its seven year limit from the "date of accident", conflicts with the intent of the NYL for the **new** Article 8-A laws because the date of *accident* for claimants is 2001-2002, which is **17 years ago!!**

WCL § 123 was written almost 100 years ago and its purpose is to prevent "stale" claims from being reopened. **The problem is, there are <u>NO STALE</u> Article 8-A claims!!** That is *extremely* significant!! Why? Because the "qualifying conditions" are continually updated and expanded based upon the diseases the WTC Health Program determines are related to 9-11. Those qualifying health conditions take <u>**decades**</u> to be identified and linked to 9-11. As I stated earlier, this is why the NYL want people to file claims if they think they **may** have qualifying conditions in the <u>**future**</u>. The intent of the NYL is to make sure no claimant is denied justice under Article 8-A. The NYL know that it can take *decades* for the WTC Health Program to identify qualifying health conditions that are linked to 9-11.

In *Matter of Schreckinger* the **NY Supreme Court ruled it is a "gross injustice" to <u>NOT</u> reopen cases when it <u>violates the intent</u> of the Legislature!** That NYSC case is definitely relevant to this appeal and all Article 8-A claims:
- *(Note: Strikethrough font styles & brackets, such as (~~volunteer~~ [employee]), show comparisons between WCB court precedent cases vs. my case.)*

*Matter of Schreckinger v. York Distributors, Inc., NYSC 9 A.D.2d 333 [1959]:*
- "It should also be pointed out that if the ~~Special Fund were held to be liable an award~~ **[RB-89 requests for Article 8-A claims]** could not be retroactive for a period of more than ~~two~~ **[seven]** years immediately preceding the application to re-open ~~(Section 25-a, subdiv. 1)~~ **[or after date of accident]**. That would result in a gross injustice in this case for the original injury was sustained October ~~29, 1946~~ **[17 years ago in 2001]**, and the time consumed by litigation **[appeals and WTC Health Program qualifying condition updates]** brought the reopening date to November ~~16, 1955~~ **[2017]**. It is difficult to believe that the legislature contemplated such an injustice."

And if all the reasons above aren't enough... There's the fact that WCL § 123 is the reason why the WCB and Article 8-A claimants have to twist the facts into a *pretzel* to pick a "date of disablement" *solely* to accommodate the 7 year time limit! If you read many court cases where a "date of disablement" is chosen by the WCLJ or WCB, you will see how all parties involved have to twist, turn, stretch, and distort to find a date *solely* to accommodate the seven year limit of WCL § 123.

So in a nutshell...
1. The seven year limit of WCL § 123 is both the *elephant in the room* and the *800 pound gorilla,* combined!
2. **Adjust the 7 year limit in WCL § 123, and you fulfill the <u>intent of the NYL</u> and you solve a ton of problems for <u>all</u> Article 8-A claimants!!**
3. WCL § 123 and Article 8-A are like oil and water - they don't mix.
4. WCL § 123 and Article 8-A are like same charge poles of magnets - they repel each other.

5. When there is a conflict between laws, then the **new** laws must **supersede** the old laws. Article 8-A laws must supersede WCL § 123.

6. In *Matter of Schreckinger* the **NYSC ruled that it is a "gross injustice" to NOT reopen cases when it violates the intent** of the Legislature!

---

## #3 - Rules of Game Changed After Game was Over

The intent of the NYL is to make sure no claimant is left behind under Article 8-A. The NYL changed the "qualifying conditions" and deadlines multiple times when they passed amended and more liberal interpretations of the Article 8-A law. As a result, the **rules of the game changed AFTER the game was over** for many injured workers already denied Article 8-A benefits under the **old rules! Clearly the intent of the NYL is that anyone denied in the past under the old laws, must now be given the opportunity of judicial review under the new law.** That is why the NYL also want *potential future* claimants to file WTC-12 forms. They want to make sure no one is denied justice under the **new rules of the law.** Therefore, cases like mine must be given Article 8-A provisions protection to reopen those claims for rehearings under the *new* rules. **That is required by the *Matter of Schreckinger*, and the Equal Protection and Due Process clauses of the Constitution** (as noted above), and the "common-sense viewpoint of the average [person]" *(Matter of Johannesen v. City of New York DHPD 1994)*. One of many examples of this is *Matter of Safeway Environmental Corp*:

*Matter of Safeway Environmental Corp. - 2015 WL 746211 (NYWCB)*:

- WCB confirms cases should be reopened due to Article 8-A law changes:
  "In addition, the Board Panel finds that the merits of the WCLJ decision filed on August 29, 2012, **should be reconsidered, in view of the amendments to Article 8-A enacted on November 13, 2013, which retroactively modified the definition of the "qualifying conditions" covered by Article 8-A** for participants in the World Trade Center rescue, recovery and/or clean-up operation."

Yet, the WCB wrote the opposite of the following in all of their 2014-2018 decisions to deny my Article 8-A claim. The WCB distorted the law and the Constitution when they wrote that my injuries were not Article 8-A related because it was "office work", "office tasks" and part of my "job description":

*Matter of Safeway Environmental Corp. - 2015 WL 746211 (NYWCB)*:

- "Article 8-A was promulgated in recognition of the fact that the injuries suffered by participants in the World Trade Center rescue, recovery and/or clean-up operation were in the nature of accidental injuries. **The injuries suffered by the participants in the World Trade Center rescue, recovery and/or clean-up operation, in general, did not arise out of the inherent nature of the work or the voluntary activities they performed, but rather were the result of exposure to unusual environmental conditions, toxic substances and/or the extraordinary after effects which resulted from the devastation caused by the terrorist attack.** In Matter of Hornell Police Dept., 2012 NY Wrk Comp 0284479, the Board found that a law enforcement

officer who experienced PTSD as a result of his work activities at ground zero, in which he provided direct support and assistance to first responders engaged in rescue and recovery efforts at ground zero, had sustained an accidental injury covered by Article 8-A, rather than an occupational disease. The Board's decision in that case was recently affirmed by the Appellate Division in Matter of Regan v City of Hornell Police Dept., ___ AD3d ___, 2015 NY Slip Op 407 [2015]." ... "The Board Panel finds that the instant claim is an accidental injury. **This is not an occupational disease claim, because the claimant has submitted no evidence that there was something distinctive about her work as an asbestos handler which caused her PTSD** *(see Matter of Mazzochi Wrecking, 2004 NY Wrk Comp 00409635; Matter of NYC DOT, 2004 NY Wrk Comp 00230242).* **Rather, it was the claimant's exposure to the after effects of the terrorist attack during her work as in the World Trade Center clean-up operation at ground zero which caused her PTSD, such that this is an accidental injury claim."**

- WCB confirms Article 8-A changes apply retroactively:
  "The amendment to the definition a "qualifying condition" in WCL § 161 (3) was set forth in section 10 of this act, and was **clearly intended to apply retroactively to all open and closed claims made under Article 8-A of the statute** *(see Matter of Emanuel Elken Co., 2014 NY Wrk Comp 0442334)."*

*(I discussed these issues in my 03-03-2016 brief requesting a WCB Full Board Review. [A58-66])*

---

### #4 - My Article 8-A Case was Not "Truly Closed"

As noted earlier in section #2 of this brief: item #1 on the WTC-12 form states: *"... to permit the Board to reopen such claims previously denied as untimely."* The 01-19-2018 WCB decision states the WCLJ and Board Panel ruled my claim was "untimely" and "time-barred" pursuant to WCL § 28 [A134], and also *"WCL § 123 ... this statute depends on whether they were truly closed...".* [A135] In addition, my case was also determined to be filed as "untimely" by the NYSC and NYCA. The NYL want a liberal interpretation of Article 8-A. Therefore, the NYL did **not** refer **only** to "untimely" WCB court cases, but instead their Article 8-A intent also applies to NYSC and NYCA cases ruled as "**untimely**". You can apply the following court decision words to all aspects of the WCB rulings that deny my Article 8-A claim and my RB-89 rehearing request:

*Matter of Cline v. Avery Abrasives, NYSC 96 Misc.2d 258 [1978]:*

- "In construing the Workmen's Compensation Law, **the Court of Appeals has stated that all parts of the statute must be considered together in order to ascertain legislative intent and to further the legislative purpose, the object being to avoid injustice and unintended effects** [citations omitted] ... Turning to the relevant statutory provisions of the New York Workmen's Compensation Law, **it is evident that the language is not unclear and not ambiguous and, therefore, leaves little room for interpretation by a court.** ... Given this clear and

unambiguous statutory language, which carefully defines and qualifies the words ~~"employer"~~ [employee] and ~~"insurer"~~ [volunteer], as well as the ~~statutory schemata~~ [WTC Site area] … **The Court of Appeals in interpreting the Workmen's Compensation Law has repeatedly cautioned that courts must interpret the statute as it is written and not extend it to what courts think it should be** [citations omitted] … "Had it been the design of the General Assembly when it enacted the statute to exempt ~~insurance carriers~~ [**cleanup workers of 9-11 dust/debris inside office buildings**] from ~~third party~~ [**the Article 8-A WTC Site**], it should have done so expressly or by unmistakable inference." *(Smith v. Liberty Mut. Ins. Co., 409 F.Supp. 1211, 1219, Supra )*.

*Matter of Rodgers v. NYC Fire Dept., NYSC 80 A.D.3d 1091 [2011]:*
- "Where a statute describes the particular situations in which it is to apply and no qualifying exception is added, **an irrefutable inference must be drawn that what is omitted or not included was intended to be omitted or excluded** *(Matter of Alonzo M. v. NYC Dept. of Probation, 72 NY2d 662, 665 [1988])*"
- And for my office cleanup work, and volunteer work at Ground Zero: "Since work performed at this location could qualify for coverage under the statutory exception, **the matter must be remitted to the Board for further proceedings in regard to this particular issue.** *(Matter of Rodgers v. NYC Fire Dept., 80 A.D.3d 1091 [2011])*"

*Matter of Buffum v. Syracuse Univ., NYSC 12 A.D.3d 887 [2004]:*
- Courts have held that the true status of a case for the purpose of determining the applicability of this provision cannot be ascertained merely by looking at the particular terminology employed by the Board [citations omitted]. … Simply stated, neither the term "closed" nor the phrase "no further action" is necessarily dispositive on the issue of whether a case is **"truly closed"** *(see Matter of Jones v. HSBC, supra at 866, 757 N.Y.S.2d 368)*."

---

## #5 - WCB was "Prejudice to the Claimant"

The WCB was definitely "prejudice to the claimant" in their 01-19-2018 decision denying my RB-89 rehearing request. This is another reason why that ruling should be reversed and my case should be reopened. [A133-138] This is also relevant to my written section above *#4 - My Article 8-A Case was Not "Truly Closed"*.

*Matter of Jansch v. Sagamore Children's Fund, NYSC 302 A.D.2d 851 (2003):*
- "While we ~~agree~~ [**disagree**] with the Board's determination that this case should have been decided under Workers' Compensation Law § ~~15(8)(e)~~ [**123 instead of § 164 & 165**] and that it may exercise its authority to rescind former findings [citations omitted] or " ' * * * modify a decision as to reach a different result upon the same record' " [citations omitted], despite claimant's failure to take an appeal from the final order [**because claimant's NYSC & NYCA**

appeals were untimely] [citations omitted], the pivotal issue is whether Workers' Compensation Law § 25-a [123] is applicable. Typically, "[t]he passage of time [will be] the sole criterion" [citations omitted]. While numerous factual scenarios have prompted a reconsideration of what will constitute a "true closing" to see whether the claim falls outside the limitations of Workers' Compensation Law § 25-a [123] [citations omitted], such determination will typically depend "upon whether further proceedings [were] contemplated at the time of the closing" [citations omitted]. If such closing can be discerned and **there is no prejudice to the claimant**, "there is no need to thwart the obvious intent of the Legislature to transfer liability for stale claims to the Special Fund **[or to reopen claims under the new Article 8-A qualifying conditions]**" [citations omitted]. However, where, as here, **there will be a substantial curtailment of** ~~payment~~ **[Constitutional rights and intelligent and meaningful judicial review]** if the claim is considered under Workers' Compensation Law § 25-a **[123 instead of § 164 & 165]**, it is "incumbent upon the [B]oard to make factual findings as to how much, if anything, claimant might stand to lose, since **prejudice to the claimant is a factor which is to be taken into consideration in determining whether a case was intended to be closed**" [citations omitted]."

- "While we ~~agree~~ **[disagree]** that the language of the ~~June 16, 1989~~ **[02-05-2016 and 01-19-2018]** decision ~~certainly~~ supports the determination that no further proceedings were contemplated and that "the subsequent filing of a stale 'initial' claim [has been considered] the equivalent to a reopening of the case" *(Matter of Loiacono v. Sears Roebuck & Co., 230 A.D.2d 351, 353, 654 N.Y.S.2d 463)*, **when the basis for that prior ~~award~~ [decision] is found to have been erroneous as a matter of law**, the issue of "closing" is more tenuous.[1] ~~With the difference in the recoverable award reaching almost a decade of compensation~~, **the Board, in our view, was obligated to assess the prejudice which would have [i]nured to this claimant if the case were "closed"** for the purpose of shifting liability pursuant to Workers' Compensation Law § **25-a [123 instead of § 164 & 165]. Having failed to make such assessment, the decision must be reversed.**"
  - "Footnote 1: There is authority for a finding that the earlier decision may be considered to have been rescinded so that the parties could be restored to the same position as they were as of the time of the original injury [citations omitted]."

*Matter of Employer: Con Edison, 2013 WL 6218202, NYWCB:*
- "**Prejudice to the claimant is a factor which is to be taken into consideration in determining whether a case was intended to be closed** *(Gantz v Wallace & Tiernan Lucidol Division, 41 AD2d 991 [1973)]. ... Prejudice is found only if the case was closed in error of law or the case should not have been closed, and if a finding that the case was closed would cause prejudice to the claimant, ... (see, Matter of Jansch v Sagamore Children's Fund, 302 AD2d 851 [2003]; Matter of Luoma v Spearin, Preston & Burrows, Inc., 282 AD 612 [1953], affirmed by 307 NY 728 [1954])*."

*Matter of Employer: Woodhull Med. & Ment. Hlth, 2007 WL 711765, NYWCB:*
- "The Board Panel notes that in Jansch v. Sagamore Children's Fund, 302 A.D.2d 851, 756 N.Y.S.2d 326 (3rd Dept. 2003), the Court held that, when evaluating whether Workers'

Compensation Law §25-a(1) applies, the possible prejudice to the claimant must be considered. However, in asserting such, **the Court stated that the possible prejudice to be considered is in regard to whether the case was truly closed. The Court in Jansch found that no true closing of the case occurred because the decision that contained the closing contained a serious error of law that was prejudicial to the claimant. Because a prejudicial error of law was made, the closing of the case was nullified. ...**"

*Matter of Gantz v. Wallace & Tiernan Lucidol Div., NYSC 41 A.D.2d 991, [1973]:*
- "While we will ordinarily approve factual findings which are implicit in the board's decision, **we feel that the record in this case has not been fully developed so as to permit intelligent review of the question of whether such factual findings would have the support of substantial evidence.** ... it would be incumbent upon the board to make factual findings as to how much, if anything, **claimant might stand to lose, since prejudice to the claimant is a factor which is to be taken into consideration in determining whether a case was intended to be closed** *(see Matter of Berlinski v. Congregation Emmanuel of City of New York, Supra, 29 A.D.2d at 1037, 289 N.Y.S.2d at 505).*"

WCB decision in my case was arbitrary, capricious <u>and</u> an abuse of discretion!!

---

## #6- WCL § 164: WCB Never Set Date of Disablement

The 01-19-2018 WCB decision denying my RB-89 rehearing request does **not** state any date of disablement as **required** by WCL § 164. The WCB denied me Article 8-A provisions protection rights. The decision should be reversed. [A133]

*Matter of Leary v. NYC Board of Ed., NYSC 42 A.D.3d 712, [2007]:*
- "Upon review, the Board determined that Workers' Compensation Law § 123 prohibited reopening the claim based on its determination that the case had been closed without a finding on the merits and without an award, and more than seven years had elapsed since the accident. Claimant appeals. ... **Here, the Board never made a determination regarding a date of disablement in its decision. It merely held that more than seven years had lapsed, but failed to set forth the date from which it was running the seven-year period.** ... As we have previously indicated, review under such circumstances would be based upon speculation rather than whether the Board's determination was supported by substantial evidence...**The Board's decision must thus be reversed and the claim remitted for further proceedings.**"

*Matter of Pal Environmental - 2014 WL 2965086 (N.Y.Work.Comp.Bd.):*
- "The Appellate Division has held, in an occupational disease claim, under which the date of disablement is treated as the happening of an accident *(see WCL § 38),* **that the disallowance of a claim under WCL § 123 was not appropriate where the Board had not determined the**

claimant's date of disablement *(see Matter of Leary v NYC Bd. of Educ., 42 AD3d 712 [2007])*. Since the "procedure and practice" in an Article 8-A case generally is to be governed by the date of disablement, and there is no specific statutory provision to the contrary, the applicability of WCL § 123 in an Article 8-A claim is to be measured from the date of disablement. **The Board Panel finds that, until a date of disablement is set in this case, there can be no finding that the case is barred by WCL § 123."**

*Matter of Pal Environmental - 2014 WL 1698176 (N.Y.Work.Comp.Bd.)*:
- "The Board Panel finds that the WCLJ could not properly find that this case is barred by WCL § 123 in this case, because this case is governed by the provisions of Article 8-A of the Workers' Compensation Law, and **no date of disablement has been set, as is required by WCL § 164.** ... Regarding Article 8-A claims, the Board Panel finds that the date of disablement, rather than the date of accident, should be utilized in assessing the time requirements for Workers' Compensation Law 123 applicability. ... **The Board Panel finds that, until a date of disablement is set in this case, there can be no finding that the case is barred by WCL § 123."**

*Matter of Pinnacle Environmental - 2017 WL 5634094 (N.Y.Work.Comp.Bd.)*:
- "An Article 8-A claim is an accidental injury claim, with a **statutory requirement in WCL § 164 that the Board determine the date of disablement** from a qualifying condition, which is to be treated as the happening of an accident for all purposes, except where otherwise specifically provided" *(Matter of Telesector Resources Group Inc., 2014 NY Wrk Comp G0511888)*. WCL § 164 states that "[t]he board shall determine the date of disablement that is most beneficial to the claimant. ... **The Panel also notes that the subject decision itself did not set a date of disablement at all and, even apart from the underlying Article 8-A issues, the disallowance of the claims pursuant to WCL § 28 was premature in the absence of any date of disablement."**

WCB decision in my case was arbitrary, capricious <u>and</u> an abuse of discretion!!

---

## #7 - WCB Never Considered WCL § 165

As I wrote above in section #4) My Article 8-A Case was Not "Truly Closed":
- 'As noted earlier in section #2 of this brief: #1 on the WTC-12 form states: *"... to permit the Board to reopen such claims previously denied as untimely."* The 01-19-2018 WCB decision states the WCLJ and Board Panel ruled my claim was "untimely" and "time-barred" pursuant to WCL § 28 [A134], and also *"WCL § 123 ... this statute depends on whether they were truly closed..."*. [A135] My case was also determined to be filed as "untimely" by the NYSC and NYCA. The NYL want a liberal interpretation of Article 8-A. Therefore, the NYL did **not** refer

*only* to "untimely" WCB court cases, but instead their Article 8-A intent also applies to NYSC and NYCA cases ruled as "**untimely**".'

The 01-19-2018 WCB decision does **not** mention WCL § 165. [A133-138]  The WCB denied me Article 8-A provisions protection rights, and my Equal Protection and Due Process rights, because they ignored WCL § 165 when making their ruling to deny my RB-89 rehearing request. I searched and found *many* cases where an Article 8-A claim had been denied by the WCB, and then the claimant filed an RB-89 request for a rehearing. In *every* case, the WCB mentions and uses WCL § 165 in their written decisions to approve/deny the RB-89 request. **Yet, in my RB-89 decision, the WCB never even considered WCL § 165 nor mentioned it!** Here are a few of many rulings where the WCB cites WCL § 165:

1. Employer: Pinnacle Environmental Corp, Case No. 0063 5919, 2014 Wl 1698136
2. Employer: NYC Dept Of Correction, Case No. 0025 7274, 2014 Wl 628663
3. Employer: Abm, Case No. G165 2846, 2016 Wl 7177297
4. Employer: Metro One Loss Prevention, Case No. G038 3221, 2014 Wl 200032
5. Employer: NYC Dept Of Transportation, Case No. G047 7239, 2013 Wl 6833873
6. Employer: NYS Dept Of Taxation & Finance, Case No. 0015 0550, 2016 Wl 5866423
7. Employer: Tully Contstruction, Case No. G122 0518, 2016 Wl 1070144
8. Employer: Safeway Environmental Corp, Case No. G034 0904, 2015 Wl 746211
9. Employer: NYC Transit Authority, Case No. G012 5611, 2014 Wl 289691
10. Employer: Longo Coffee & Tea, Inc, Case No. G110 9212, 2017 Wl 4587341
11. Employer: Emanuel Elken Co Pc, Case No. G044 2334, 2014 Wl 200210
12. Employer: WTC Volunteer, Case No. Aa05 0013, 2016 Wl 5866243
13. Employer: WTC Volunteer, Case No. 0040 5862, 2017 Wl 4271543
14. Employer: WTC Volunteer, Case Nos. G072 0619, G0702069, 2013 Wl 6833668
15. Employer: WTC Volunteer, Case No. 0040 5862, 2015 Wl 6407713
16. Employer: WTC Volunteer, Case No. Aa05 0013, 2016 Wl 5866243

WCB decision in my case was **arbitrary, capricious and an abuse of discretion!!**

### *#8 - WCL § 1: WCB Must Favor Injured Claimant*

The WCL requires that presumptions of laws operate in favor of the **claimant**! **When there is doubt, there is _no_ doubt** - because the WCB must rule in favor of the claimant. It is clear that **all** the presumptions of law that the WCB made in **all** the rulings related to my Article 8-A claim, did **not** favor me in *any* decisions! Moreover, those WCB decisions violated the Constitution. *(I discussed these issues in my 03-03-2016 brief requesting a WCB Full Board Review. [A58-66]).*

*Matter of Cline v. Avery Abrasives, NYSC 96 Misc.2d 258 [1978]:*
- West Headnote #2: "Workmen's Compensation Law's primary purpose is to compensate an employee and his family for loss of wages and disability resulting from accidental injuries or death arising out of his employment regardless of fault and such law is **liberally construed to effectuate such purpose; generally, a presumption operates in favor of claimant**. *(WCL § 1 et seq.)* ... **The statute is liberally construed to effectuate this purpose** *(65 N.Y.Jur., Workmen's Compensation, s 55, at pp. 398-400, and cases cited therein)*, and, generally, **a presumption operates in favor of the claimant** *(Matter of Wilson v. General Motors Corp., 298 N.Y. 468, 84 N.E.2d 781).*"

*Matter of Illaqua v. Barr-Llewellyn Buick, NYSC 81 A.D.2d 708 [1981]:*
- "Contrary to the carrier's argument as to where its greater duty lay, **the fundamental principle of the compensation law is to protect the worker, not the employer** [citations omitted], **and the law should be construed liberally in favor of the employee** *(Matter of Wolfe v. Sibley, Lindsay & Curr Co., 36 N.Y.2d 505,508, 369 N.Y.S.2d 637, 330 N.E.2d 603).*"

---

### *#9 - WCB Violated Stare Decisis*

If you apply a **Stare Decisis** analysis to every section of this brief and my RB-89 brief, you will see that it is clear the WCB decision should be overturned. [A101-114] The WCB uses **unconstitutional** "Ground Zero" and "affiliated with an authorized entity/agency" restrictions to deny valid Article 8-A claims, like my claim. Stare Decisis importance is noted in the **New York Court of Appeals** ruling in *Matter of Field Delivery Service v. Lillian Roberts, Dept of Labor, 12-19-1985, NYCA 66 N.Y.2d 516:*
- "**A decision of an administrative agency which neither adheres to its own prior precedent nor indicates its reason for reaching a different result on essentially the same facts is arbitrary and capricious.**
- **Stare decisis is no more an inexorable command for administrative agencies than it is for courts** *(see, Wachtler, Stare Decisis and a Changing New York Court of Appeals, 59 St. John's L.Rev. 445, 452).*
- The dissenters, finding that the facts of the case were "indistinguishable, in any significant respect" from two earlier Board decisions which had been confirmed by both the Appellate

Division and the Court of Appeals [citations omitted] and concluding that "**it is incumbent on the Board to decide like cases the same way or explain the departure** [citations omitted]", voted to reverse. *(112 A.D.2d, at p. 507, 491 N.Y.S.2d 601.)* **We agree that, absent an explanation by the agency, an administrative agency decision which, on essentially the same facts as underlaid a prior agency determination, reaches a conclusion contrary to the prior determination is arbitrary and capricious. ... We, therefore, reverse and remit to the Board for further proceedings.**

- The policy reasons for consistent results, given essentially similar facts, are, however, largely **the same whether the proceeding be administrative or judicial** - to provide guidance for those governed by the determination made *(Matter of Howard Johnson Co. v. State Tax Commn., 65 N.Y.2d 726, 727, 492 N.Y.S.2d 11, 481 N.E.2d 551)*; **to deal impartially with litigants; promote stability in the law; allow for efficient use of the adjudicatory process; and to maintain the appearance of justice** *(Davis, Doctrine of Precedent as Applied to Administrative Decisions, 59 W.Va.L.Rev. 111, 128–136).* **The underlying precept is that in administrative, as in judicial, proceedings "justice demands that cases with like antecedents should breed like consequences"** *(id., at 117; accord, Koslow, Standardless Administrative Adjudication, 22 Admin.L.Rev. 407, 424; Kramer, Place and Function of Judicial Review in the Administrative Process, 28 Fordham L.Rev. 1, 8).*

- From the policy considerations embodied in administrative law, it follows that when an agency determines to alter its prior stated course it must set forth its reasons for doing so. **Unless such an explanation is furnished, a reviewing court will be unable to determine whether the agency has changed its prior interpretation of the law for valid reasons, or has simply overlooked or ignored its prior decision** (Kramer, op. cit., at 68–70). **Absent such an explanation, failure to conform to agency precedent will, therefore, require reversal on the law as arbitrary,** even though there is in the record substantial evidence to support the determination made [citations omitted].

- Comparison of the facts on the basis of which ~~Di Martino and Wells~~ [other WCB rulings cited in this brief, as opposed to WCB rulings in my case] were decided with the facts of the instant case recited above makes evident, if not the impossibility of distinguishing this case from ~~Di Martino and Wells~~ [other WCB cases], at least the existence of sufficient factual similarity between those cases and this to require explanation by the Board of why it reached a different result in this case."

## #10 - Intelligent & Meaningful Judicial Review

If you apply an **Intelligent & Meaningful Judicial Review** analysis to every section of this brief and my RB-89 brief, you will see that it is clear the WCB decision should be overturned. [A101-114] The WCB uses **unconstitutional** "Ground Zero" and "affiliated with an authorized entity/agency" restrictions to deny valid Article 8-A claims, like my claim. *(I discussed these issues in my 03-03-2016 brief requesting a WCB Full Board Review. [A58-66])* Here are examples of NYSC rulings related to Intelligent & Meaningful Judicial Review:

- *(Note: Strikethrough font styles & brackets, such as (volunteer [employee]), show comparisons between WCB court precedent cases vs. my case.)*

*Matter of Caldas v. 86 Alda Restaurant and WCB, NYSC 167 A.D.2d 594 [1990]:*
- "Here, without explanation, the Board made a factual determination that ~~Kilra was the employer...~~ [*note: here you can insert each argument of my written brief, and the Ground Zero and authorized entity/agency restrictions the WCB used*]... In the absence of a discernible relationship between the Board's findings of fact and the conclusion reached by it, **the decision is insufficient to permit intelligent review** [citations omitted]. Further, it appears that the Board previously reached a contrary determination in ~~Matter of D'Esposito v. Luftek, Inc. (WCB No. 0812-0771)~~ [**other WCB rulings cited in this brief, as opposed to WCB rulings in my case**], a case with facts indistinguishable from those present here. It is fundamental that "absent an explanation by the agency, an administrative agency decision which, on essentially the same facts as underlaid a prior agency determination, **reaches a conclusion contrary to the prior determination is arbitrary and capricious**" [citations omitted].

*Matter of Dinelle v. Workshop Inc and WCB, NYSC 181 A.D.2d 969 [1992]:*
- "**Because the Board's decision is patently inadequate**, ... there is nothing in either the Board's decision or the record to explain the basis or the authority for that ~~award~~ [**Ground Zero or authorized entity/agency requirement**]. ... The inadequacy in the Board's decision lies in its failure to discuss the applicability of Workers' Compensation Law § ~~15...~~ [**WCL § 165**], and to articulate a rational basis for making ~~a nonschedule award~~ [**its decision to ignore WCL § 165**] ... The appropriate remedy for the inadequacy in the Board's decision is to **reverse the decision and remit the matter to the Board for the purpose of rendering a decision that will be adequate to permit intelligent judicial review** (see, id.)."

*Matter of Cucci v. Rexers Tang Soo Do Karate Aca., NYSC 34 A.D.3d 887 [2006]:*
- "However, the Board panel's decision contains neither a finding that claimant's ~~present or future earning capacity has been or may be impaired as a result of his disfigurement~~ [**work location is not covered by Article 8-A**] nor any facts from which such conclusion reasonably could be inferred. Under such circumstances, **intelligent appellate review** of the Board panel's decision to ~~award~~ [**deny**] claimant compensation ~~under~~ [**of a rehearing without considering**] Workers' Compensation Law § ~~15(3)(t)(2)~~ [**WCL § 165**] is not possible and, accordingly, we reverse and remit this matter to the Board for the purpose of rendering a **decision that will permit**

meaningful judicial review *(see Matter of Dinelle v. Workshop, Inc., 181 A.D.2d 969, 971, 581 N.Y.S.2d 475 [1992])."*

*Matter of Williams v. City of New York, NYSC 66 A.D.3d 1203 [2009]:*

- "While the ~~three~~ [two] terms (~~rescue, recovery, cleanup~~) [employee, volunteer] will often overlap in the context of post-attack activity at the World Trade Center site, nevertheless, in a situation where a participant's activity falls within only one of the terms, he or she would still be covered by the statute. ... This is not to suggest that the Board must always address each activity (rescue, recovery, cleanup) [or employee, volunteer] separately or that it cannot group the terms in its decision. However, repeatedly referring to and ostensibly premising a decision on an activity that is not germane, with no analysis of the pertinent activity [as volunteer worker], **does not permit meaningful judicial review** [citations omitted]. Under the circumstances, we reverse and remit to the Board so that the relevant issue can be addressed *(see Matter of Cucci v. Rexer's Tang Soo Do Karate Academy, 34 A.D.3d at 889, 823 N.Y.S.2d 292).* ...

  o Footnote 1: There is ~~some~~ [no] confusion in the record as to where ~~on Centre Street~~ [inside the WTC site] the building was located, but it is undisputed that the building was within the area defined as the "World Trade Center site" by Workers' Compensation Law § 161(2). Claimant also worked briefly ~~at a temporary site on ...~~ [as a volunteer inside] the statutorily defined "World Trade Center site.

  o Footnote 6: We further note that the Board's original decision incorrectly stated a material fact by concluding that claimant's duties before ~~her special assignment~~ [his office cleanup work of 9-11 dust] "were the very same duties ~~she~~ [he] performed subsequent to the terrorist attack." While this finding was ~~omitted from~~ [included in] the amended decision, no pertinent analysis of claimant's actual duties was substituted [when the WCB denial rulings for his Article 8-A claim stated his cleanup work was "office work", "office tasks", and part of his "job description"]."

---

## #11 - WCB Violated the US Constitution

If you apply a **Constitutional** analysis to every section of this brief and my RB-89 brief, you will see that it is clear the WCB decision should be overturned. [A101-114] The WCB uses **unconstitutional** "Ground Zero" and "affiliated with an authorized entity/agency" restrictions to deny valid Article 8-A claims, like my claim. You can read in section *#1 - WCB and OGC Violated My Due Process Rights* of this brief, that I **desperately** wanted to include my 2016 NYSC appeal and motion documents with my RB-89 submitted to the WCB. Why didn't I submit my 2016 NYSC appeal with my RB-89 documents? Section #1 explains in detail how the WCB prevented me from doing that by <u>**violating**</u> my **Equal Protection and Due Process rights!** As a result, I was only able to include very abbreviated arguments in my RB-89 brief because I thought there was a 15 page limit. My 2016 NYSC appeal and motion documents go into expanded details about the Constitutional violations of the WCB decisions from

2014-2016. Those issues are all **very relevant to this WCB RB-89 decision** that I am appealing now because **those prior decisions are the basis the WCB used to deny my RB-89 request for a rehearing!** [A133-138] and [A101-114] *(I discussed these issues in my 03-03-2016 brief requesting a WCB Full Board Review. [A58-66])*

---

## #12 - WCB used "Fruit of the Poisonous Tree"

The WCB used their 2014-2016 rulings as the **foundation** to deny my RB-89 request. **The problem is, those rulings are all based on unconstitutional decisions** that have **not** been given "intelligent and meaningful judicial review" because the NYSC and NYCA appeals were "untimely". If you apply the legal concept of *Fruit of the Poisonous Tree*, then you realize the following facts:

1. If the **roots** of the tree *[2014-2016 WCB decisions]* are **poisonous** *[violate the Constitution]*, then all the tree **branches and fruit** *[WCB RB-89 denial decision which was <u>based on all</u> those prior WCB decisions]* are **poisonous** *[violate the Constitution]*.

2. Every court decision by the WCB in my Article 8-A claim, including the 01-19-2018 RB-89 denial decision, has been built on an **unconstitutional** foundation. It's a *house of cards* with no legitimate foundation holding it up!

In my written submissions to the WCB, the NYSC and NYCA, for my Article 8-A claim, I cited many examples of other WCB court cases. Those cases prove the WCB made **diametrically opposite** ruling decisions under the *same* Article 8-A law. Why? Because the WCB judges changed the Article 8-A law by adding their "Ground Zero" and "affiliated with an authorized entity/agency" restrictions to deny valid Article 8-A claims, like my claim. That <u>violates</u> the Separation of Powers, Equal Protection and Due Process clauses of the Constitution!! **You <u>cannot</u> have "intelligent and meaningful judicial review" when the WCB uses unconstitutional restrictions to deny valid Article 8-A claims, and then they use those _same_ unconstitutional decisions to deny RB-89 rehearing requests!** To uphold the WCB 01-19-2018 RB-89 denial decision, you would need to *ignore* all the <u>violations</u> of the **Constitution** by the WCB in their rulings which are the basis of their RB-89 denial decision. [A133-138]

The following is another WCB ruling that proves my point: The WCB ruled in favor of a claimant that worked in offices located inside the WTC Site area **near** Ground Zero. She was exposed to 9-11 dust when handling the office document files and boxes, and when she walked to/from her work office. Unlike me, she did **not** do cleanup work of the toxic dust/debris. She only touched the dusty boxes and document files related to 9-11. Yet her claim was approved and mine was denied by the WCB. Why? Because she was **affiliated with an authorized entity or agency,** and I was not. If I worked for an authorized entity/agency in 2001, then my claim would have been approved at the first WCB hearing with no problems.

*Matter of Employer: American Red Cross, G129 2207, 2016 WL 1070153 NYWCB:*

- "The doctor's report indicated that **claimant's exposure to dust and fumes in an area two blocks away from the World Trade Center** is "consistent with the definition of World Trade Center exposure." The doctor's report went on to state, **"Although [claimant] only was employed as an office worker in an indoor environment, she participates in walking through that area."**"

My exposure was directly next to the Ground Zero debris pile and I walked next to the toxic, dusty, smoking debris pile many times every day for months.

*Matter of Employer: American Red Cross, G129 2207, 2016 WL 1070153 NYWCB:*

- "Claimant worked at two locations: 100 Varick Street and 7 Hanover Street. **Claimant's job was working in the file room handling fraud files and files of deceased individuals. ... Claimant described the boxes as dusty inside and out** and she described the room as containing mildew and mold. Claimant indicated that the documents and files were used during the initial stages following the World Trade Center attacks at Ground Zero and were then placed in boxes and given to the claimant. ... **Claimant's job did not require her to be outside. She traveled outside getting to and from work and during breaks.**"

I cleaned hundreds of pages of documents and I cleaned toxic dust and debris for a few days. I also walked outside by the debris pile many times every day for work.

*Matter of Employer: American Red Cross, G129 2207, 2016 WL 1070153 NYWCB:*

- "**After hearing summations, the WCLJ found the claim to fall under the provisions of WCL Article 8-A as the WCLJ believed the claimant worked for a recovery program and that claimant worked with boxes that contained dust and other particles on a regular basis.**"

The WCB judges ruled the exact **opposite** for my case! Literally, they wrote **diametrically opposite** rulings for my case!! For my rulings the WCB judges wrote that my cleanup work was **not** Article 8-A qualified because it was an "office task", "office work", and part of my "job description". [A28] [A50-57] They **ignored** the 03-10-2015 WCB ruling for my case when **WCB Chairman Judge Robert Beloten** ruled the following:

- "The carrier's contention that the claimant's office location, which he lists as 86 Trinity Place, New York, NY **is not a covered location under Article 8-A has no merit.** WCL 161(2) defines the 'World Trade Center site' within the meaning of Article 8-A as ..." "The claimant indicated in his WTC-12 registration form that he worked for the employer at 86 Trinity Place, New York, NY 10006, which is located in lower Manhattan and **is within the World Trade Center site specified in the statute. The Board Panel finds that the WCLJ's finding that Article 8-A does not apply to this claim is not supported by substantial evidence and is rescinded, without prejudice.**" [A24]

After that Beloten decision, the WCB rulings added "authorized entity/agency" and "Ground Zero" restrictions in their decisions to deny my cleanup worker case.

*Matter of Employer: American Red Cross, G129 2207, 2016 WL 1070153 NYWCB:*

- "The carrier argues that Dr. Friedman opined the claimant was a participant when she walked outside to and from work and that, therefore, claimant's conditions did not arise out of or in the course and scope of her employment as the Husted exception is not satisfied. … In general, 'accidents that occur in public areas away from the place of employment and during non-work hours do not arise out of and in the course of employment *(Matter of Cushion v Brooklyn Botanic Garden, 46 AD3d 1095 [[2007], lv denied 10 NY3d 704 [2008]).* **Where, as here, the accident occurred near claimant's place of employment, 'there develops "a gray area" where the risks of street travel merge with the risks attendant with employment and where the mere fact that the accident took place on a public road or sidewalk may not ipso facto negate the right to compensation'** *(Matter of Husted v Seneca Steel Serv., 41 NY2d at 144, quoting Matter of Patti v Republic Aviator Corp., 20 A.D2d 939 [1964], lv denied 14 NY2d 488 [1964]).* **Such an accident is a compensable incident and risk of employment if there is a demonstration of '(1) "a special hazard at the particular off-premises point" and (2) a "close association of the access route with the premises, so far as going and coming are concerned"'** [citations omitted]." "When an accident occurred on a public street in "close proximity to the employer's premises [but] no evidence was provided to show that the street was closed to the public or otherwise controlled by the employer, that workers were encouraged to use it or that it existed solely to provide access to [those premises, and when] no evidence was presented to suggest that the accident in question was related to a special hazard connected to claimant's employment as opposed to a risk shared by the general public [the] evidence supports [a] conclusion that claimant did not sustain an accidental injury arising out and in the course of her employment" (Littles, 61 AD3d 1266 [2009] [internal citations omitted])." … "Carrier argues instead that its consultant found **claimant's causally related hazardous exposure to have occurred when she was walking to and from work and the carrier contends that this was outside the scope of claimant's employment.** The Board Panel credits the doctor's opinion on causal relationship as the doctor has acknowledged that the **claimant worked in a location that was two blocks away from the World Trade Center** and the doctor conceded that this was a World Trade Center exposure. The portion of the doctor's opinion stating that claimant '"participate[d]" when she walked through the World Trade Center area is more of a legal conclusion than a medical conclusion which the doctor is not qualified to make. Additionally, even if the doctor's report is to be interpreted as carrier suggests, **any precise opinion as to when claimant's hazardous exposure occurred (whether it was indoors or when she was walking outside) is speculative.** Based upon the arguments set forth on appeal by the carrier, the Board Panel finds no reason to disturb the WCLJ's decision."

Both criteria above are applicable to my claim. My work office was located next to Ground Zero. For one month after 9-11 there were police barricades **preventing** public access to this area. **Only** workers/residents that worked/lived **inside** the barricaded zone were allowed access. Moreover, in the first weeks after 9-11 a police escort was required to walk you to your work office building inside that barricaded protection zone. My Article 8-A exposure to toxic 9-11 dust/debris was not only inside my

office building, but also with the access route to the building "where the risks of street travel merge with the risks attendant with employment".

Here is another case that proves my point that the WCB judges wrote **diametrically opposite** rulings for my case, as compared to similar cases. The Centennial Booklet of the NY State WCB contains the *"Top 10 Decisions by Appellate Courts in the Past 100 Years"*. That WCB Centennial Booklet cites a number of historical 9-11 rulings that support my claim: [A164-167]
*Matter of Tompkins v. Morgan Stanley Dean Witter, NYSC 1 AD3d 695 (2003)*:

- "Claimant ... emerged two blocks from Two WTC, where he worked... but certain risks arise that constitute a nexus between the street risks and the employment. **The Board found there was a special hazard in a zone of danger at Ground Zero, and that there was a close association between the entrance route claimant took and the location of the work premises.**"

In addition to cleaning toxic 9-11 dust/debris at work, every weekday for many months I was exposed to the toxic dust, debris and the horrible sight and smell of the WTC debris pile because it was located less than 100 yards from my work building and in direct view from my office windows. Every weekday I went to/from work, or to lunch, or out of the office, I had to walk right next to the WTC debris site. The WCB ruling in *Matter of Tompkins* confirms there was clearly a "special hazard zone of danger near Ground Zero" that was a close association with the "location of my work premises" and my cleanup work. *(I discussed these issues in my 03-03-2016 brief requesting a WCB Full Board Review. [A58-66])*

WCB decision in my case was **arbitrary, capricious _and_ an abuse of discretion!!**

---

## #13 - WCB RB-89 Denial Decision is Biased

The 01-19-2018 WCB decision denying my RB-89 rehearing request has inaccurate and very biased conclusions. So the decision should be reversed and my case should be reopened. [A133-138]  As I stated in my RB-89 written brief submitted to the WCB:
I qualify under all three criteria of WCL § 300.14 Application for rehearing:

- Application may be made by any party in interest for rehearing or reopening of a claim. Such application must indicate that:
  - certain material evidence not available for presentation before the board at the time of hearing is now available; or
  - proof of a change in condition material to the issue is involved; or
  - it would be in the interest of justice. [A101]

- "The WCB *cherry picks* cases cited to rule against my claim, yet ignores the many cases I cited that support my claim. It's very easy to comprehend that based upon "the plain meaning of the words" of the decisions." [A101]

- **"The WCB judges did NOT address the Constitutional issues I raised when they wrote their court decisions denying my Article 8-A claim.** The following pages have a long list of facts and court precedent rulings that I presented to the WCB. The WCB ruled against me because I didn't work at "Ground Zero". But in my rebuttals I stated the obvious: "Ground Zero" is not written in the Article 8-A law. You know that the words "Ground Zero" do not exist in the Article 8-A law. You know about the "liberal intent", and "the plain meaning of the words of the statute", and Separation of Powers/Equal Protection/Due Process of the Constitution. Yet, you avoided all that and ignored it by using patronizing excuses like "office task", "office work" and "job description" in your decision denying my WCB claim. You're trying to bend, distort and manipulate the Article 8-A law to fit what you **want** it to be, and **not** what it actually is. Sorry, but you're not allowed to do that, and the **NYSC has told you that many times when they reversed your decisions.** You're the Judicial branch, not the Legislative branch." [A102]

There are misleading and inaccurate statements in the 01-19-2018 WCB decision:
- "As a result, the Panel issued a February 5, 2016 Memorandum of Board Panel Decision affirming the WCLJ's decision, finding that the claimant was not a participant in clean-up operations; that the provisions of Article 8-A did not apply; and that the claim was properly deemed time-barred pursuant to WCL § 28." [A134]

My reply to that part of the written WCB decision: 1) It does not mention all the violations of the Constitution I raised in my written submissions to the WCB courts. 2) It does not mention that I never received judicial review for my Volunteer worker evidence I submitted with my RB-89. 3) It does not mention the 03-10-2015 WCB appeal decision that **Chair Judge Robert Beloten** ruled my office **is a covered location under Article 8-A.** 4) It does not mention any of the "time-barred" and "untimely" facts that I list as points of argument in this brief.

- "The new evidence is a statement from the claimant's mother (which is signed by not notarized) ..." [A135]

The WCB decision does not mention the emails between myself and the OGC that describe the notarized evidence. [A140-141] In section *#1 - WCB and OGC Violated My Due Process Rights* of this brief it explains the emails. I sent the OGC an email asking about this but got no timely reply. I mailed in a sworn and notarized affidavit with my RB-89 request and what I wrote in that affidavit is crystal-clear. [A98] [A125] The OGC wrote in their late reply email which was sent **after** I mailed in my RB-89 documents: [A141]

   a. "An affidavit is written statement of facts, the truth of which is sworn to. Executing the affidavit on the back of the form RB-89 would not be sufficient for the purposes you describe. You would need to execute a separate "sworn affidavit, setting forth the

evidence, and explaining why it could not have been presented before the Workers' Compensation Law judge." The exact form of the oath by which the person executing and signing the affidavit swears to the truth of the facts set forth in the affidavit varies, but typically includes a provision acknowledging that the affidavit is made under penalty of perjury."

When I received that OGC email, I sent a reply email only 15 minutes later asking about the correct affidavit format, but I never got a reply from them: [A141-142]
- "Also, if you notice that anything is not in the correct format, like the **affidavit** or the form info, then let me know and I can correct that."

The WCB decision on page 3 also says:
- "Claimant also attaches photographs that he asserts he took of Ground Zero. Claimant states that he did not produce these photographs earlier because he did not think they were important to the claim." [A135]

The WCB decision does not mention the facts I stated about the photo evidence in my RB-89 written brief. [A103-105] [A115-124] I don't just "assert" that I took those photos, **it's an absolute and undeniable fact that I did and the dates that I took them!!** I also explained very clearly in my RB-89 brief why I did not submit those photos to the WCB sooner - because I was <u>deceived</u> by the insurance carrier's lawyer that these photos would not be relevant to my WCB cleanup work claim!! I also explained, and I have **undeniable and irrefutable evidence,** that I did submit those photos to the 9-11 Victim Compensation Fund and WTC Health Program in 2013, and to Governor Cuomo's office in 2015.
The WCB decision mentions WCL § 123 with it's seven year limit to reopen cases. It also says that statute depends on if a case was "truly closed". Both of these issues I discuss in sections #2 and #4 of this brief. The WCB decision also says:
- "A request for reopening of a claim may be made by any party upon an application that indicates that '(1) certain material evidence not available for presentation **before the board at the time of hearing is now available**; or (2) proof of a change in condition material to the issue is involved; or (3) **it would be in the interest of justice**' (12 NYCRR 300.14[a]). 12 NYCRR 300.14(b) further requires that '[a]llegations as to newly discovered evidence ... be substantiated by supporting affidavits." [A135-136]

Based upon all the Constitutional violations I mention in all my court submissions, appeals and motions, and the points of arguments in this brief, **it very obviously "<u>would be in the INTEREST of JUSTICE</u>"** to reopen my claim for rehearing!!
- "Although a request to reopen need not be made in any particular form, it **must set forth facts sufficient to establish the [applicant]'s right to reopen** ... The Board's interpretation of a request for reopening, and its decision about whether to reopen a case, are matters within its discretion, and the Board's decision will not be disturbed absent an **abuse of discretion** *(see 12*

NYCRR 300.14[c]) (*Matter of Ewing v YMCA, 57 AD3d 1080 [2008]* [additional citations omitted])." [A136]

It's very obvious that I presented the WCB with many "facts sufficient to establish the applicant's right to reopen"!! Yet, the WCB **ignored** all the Constitutional violations and points I raised. Then we get to "**abuse of discretion**"... I've already written 60+ pages in this brief, add to that: + hundreds of pages from my other appeals + motions + evidence + court briefs for my Article 8-A claim + WTC HP + VCF = a mountain of evidence of <u>ABUSE of DISCRETION</u> by the WCB!!!
**It is crystal-clear that the WCB and OGC <u>abused their discretion</u>! The evidence is undeniable and irrefutable.** Just by reading section #1 of this brief proves that, let alone all the other points I raised.

- "the claim was disallowed by the Panel after a trial on the merits, a decision which the claimant did not appeal to the Appellate Division..." [A136]

The WCB "forgot" to mention the reason *why* I "did not appeal" their decision to the NYSC Appellate Division. The WCB knows from my court briefs and appeals that I was given wrong information from the WCB on the proper steps to file a timely appeal to the NYSC to get the Article 8-A denial decision reversed.

- "... and the claim arises out of events of September 11, 2001 (which occurred more than seven years ago) the Board Panel is divested of jurisdiction under WCL § 123." [A136]

Those issues are discussed in detail in this brief in many sections #2 thru #8.

And last but not least...

- "Even if the Board's jurisdiction was not limited by WCL § 123, however, the Board Panel would not be inclined to grant a rehearing or reopening as **the arguments made by the claimant do not warrant a reopening under any of the provisions of 12 NYCRR 300.14.**" [A136]

Excuse me??? Wait a second... Did I read that correctly??? Did they write:

- *"the arguments made by the claimant do not warrant a reopening under any of the provisions of 12 NYCRR 300.14"*

Yes, they did write that. After reading that I realize I'm not the only person in this story that has mental health issues. Based on all the facts I presented in this brief, I have to wonder... Was it a *kangaroo court* decision??? Did the WCB judges read my RB-89 brief with a *predetermined* conclusion??? I believe the answer is "Yes". Maybe the WCB and OGC are too focused on reading their office wall plaques: "*In ~~God~~ Us We Trust*"

## #14 - Why Am I Angry at the WCB and OGC?

If anyone is wondering why I am so angry at the WCB and OGC, then they should read this brief, especially section *#1 - WCB and OGC Violated My Due Process Rights*. I don't like being treated like dirt, and then discarded like an unwanted piece of trash - which is what the WCB and OGC did!! As I said earlier, in the minds of the WCB, OGC, and insurance carrier lawyers: I'm just some illiterate, insignificant, low-life, injured worker who is a **pawn in their game of chess.** So I'm easily expendable and they look at me with contempt. **They chose to be vindictive, spiteful, and *intentionally* violate the Constitution!** So I have every right to defend myself and be angry about all this. As I said, God only knows how many injured workers have been cheated over the past 17 years, either by being denied in WCB hearings or by not filing claims at all, due to the WCB's unconstitutional restrictions added to their Article 8-A decisions.

As I stated in my prior appeal briefs... **I have suffered every day for 17 years due to 9-11, and I will continue to suffer every day until I die because of 9-11!!** I don't want to be another example of an injured worker who gets cheated by the WCB court system, as noted in these news articles and letters from Congress that I cited in my my prior appeals: [A168-170] [A171-173]

- *U.S. Lawmakers Call for More Oversight of Workers' Compensation* [A168-170]
  "In response to a ProPublica and NPR investigation, members of Congress are urging the labor secretary to come up with a plan to protect injured workers and taxpayers. **Ten prominent Democratic lawmakers, including presidential candidate Sen. Bernie Sanders, are urging the U.S. secretary of labor to come up with a plan to ensure that state workers' compensation programs are properly caring for injured workers.** The lawmakers' letter, sent Tuesday, was prompted by an investigation by ProPublica and NPR, which found that more than 30 states **have cut benefits to injured workers, created daunting hurdles to getting medical care or made it more difficult for workers with certain injuries and illnesses to qualify.**"
  - www.propublica.org/article/lawmakers-call-for-more-oversight-of-workers-comp

- *Letter from Federal Lawmakers to Labor Department on Workers' Compensation - October 20, 2015* [A171-173]
  "Over the past decade since DOL reporting ended, **the erosion of workers' protections has snowballed as states reduced workers' compensation. ...** Today, only 7 states follow at least 15 of the Commission's 19 recommendations and 4 states comply with less than half of them. ... The **race to the bottom now appears to be nearly bottomless,...** State workers' compensation laws are no longer providing adequate levels of support and compensation for workers injured on the job; instead, costs are increasingly being shifted to the American taxpayers to foot the bill. ... **The changes to workers' compensation over the last decade have been pushed by big businesses and insurance companies ... As a result of these "reforms," many of those employees most in need of assistance have had their benefits reduced to a small fraction of their pre-injury income and far too frequently are forced out of the middle class and into poverty. ...** The magnitude of the cost shift to taxpayers from employers coupled with a **race to**

**the bottom in substandard benefits should not be ignored any longer;** ... We believe the Department of Labor should take a renewed interest strengthening oversight of state workers' compensation programs by using the agency's expertise and authorities."

    o   www.propublica.org/documents/item/2465674-letter-from-federal-lawmakers-to-labor-on .html

- ***The Demolition of Workers' Compensation***
  Over the past decade, states have slashed workers' compensation benefits, denying injured workers help when they need it most and shifting the costs of workplace accidents to taxpayers.
      o   www.propublica.org/article/the-demolition-of-workers-compensation

9-11 has devastated my health, my career, and my entire life. The problems caused by 9-11 compound over time so it's a downward spiral that never ends. Having PTSD is devastating and makes it hard to function in life. **I can't go 5 minutes without having horrible, negative PTSD flashbacks going through my mind!!** Just imagine if every 5 minutes you had flashbacks from horrible memories running through your mind - every day of your life and there was no way to stop it. I would give anything, literally anything, to be able to go through even just one day without having PTSD flashbacks running through my mind all day long. That's not just some tagline or random comment - I sincerely mean every one of those words. And PTSD is only <u>one</u> of the many health problems I have due to 9-11.

To give you an idea of how difficult it is to live with PTSD, take the fact that **every day** twenty-two USA Military veterans with PTSD commit suicide! Over **10 times** the number of veterans are killed by suicide, as opposed to combat operations in the same time period! Military veterans had the best training in the world to become the strongest and most physically fit soldiers in the world. **Yet, even with their training they still can't handle the pain and suffering of PTSD because it's like being <u>trapped in a torture chamber</u> - and you have no way out.** [A177-182]

- ***22 Veterans Commit Suicide Daily due to PTSD*** [A177-178]
      o   www.tbbf.org/22-veterans-commit-suicide-daily/08-2014
- ***The Relationship Between PTSD and Suicide - National Center for PTSD*** [A179-182]
      o   www.ptsd.va.gov/professional/co-occurring/ptsd-suicide.asp
      o   www.ptsd.va.gov/index.asp

In 2001, my total employment compensation package as Managing Director of Equity Sales, including salary, commissions, benefits, and bonuses was between $250,000 - $300,000 per year. Unfortunately, the effects of 9-11 prevented the closing of the deals I was working on for the American Stock Exchange. As a result, due to the 9-11 terrorist attacks, I lost out on all that income, and then I lost the very prestigious and important job I had at the American Stock Exchange. I have been almost completely unemployed since 2002, and I have had almost no income due to my 9-11 related health problems!!

I submitted my *Notice of Motion for Permission to Proceed as Poor Person on Appeal*. [A3-10]  I don't have assets, money, a job, nor own a car, and I have to live with my mother because I cannot afford to pay rent for an apartment.

Today, I do internet research and website volunteer charity projects, but it's for charity and I do not earn money from that. Much of my research focuses on finding ways to use natural and holistic medicine to improve my health and recover from the devastation of 9-11 on my life. I post my research online to help other people in need. Examples of my charity work are www.nde.life and www.nemmar.org

---

## *Conclusion*

I could continue writing and presenting many more facts and court precedent cases to further prove my case. However, there is a 70 page maximum limit for NYSC appeal briefs. It is clear from the facts and evidence, that what the WCB and OGC did was **arbitrary, capricious and an abuse of discretion.** The 01-19-2018 WCB decision denying my RB-89 request for a rehearing should be reversed.

This case isn't about *me*. It's about all the injured workers that were cheated over the past 17 years, and those that will be cheated in the future, due to the WCB unconstitutional "Ground Zero" and "authorized entity or agency" restrictions, and the conflicts between Article 8-A and WCL § 123.
This case is a battle between *David vs. Goliath;* and *Justice vs. Injustice.*

The following is indirectly related to this case: **All Article 8-A injured workers** and WTC Health Program patients require a lot of medical care, and many have cancer. In 2015 I started doing research on my own to find ways to cure 9-11 related health issues. I would like to ask you to please read the article with my research *"The Truth About Conventional Medicine"* at **www.nde.life** because I guarantee you will find it *extremely* **important!** This request is not for *my* benefit, it's for *your* benefit and the benefit of WTC Health Program patients. That research document contains the most accurate and extensive scientific and medical evidence and facts from the **top experts in the world** for health, nutrition, holistic medicine and spiritual topics. I did years of research on my own to compile a list of the best experts and content. That information will greatly improve the healthcare and lives of **billions of people** worldwide if government decision makers and legislators help raise awareness. **It will also reduce** the overall healthcare costs by 75% for every person, insurance carrier, and government that pays medical bills!! Yes, the facts are accurate and backed up by *centuries* of scientific evidence and medical research from the top experts. Please read it and decide for yourselves.
*(I had to switch to single space lines to finish - I apologize but it's a 70 page limit).* I promise you, this is much more important than your decision in this appeal. My goal is to inform people of the **truth about conventional medicine** with the content I compiled from those top experts. Eventually, in about 20

years from now, most people will learn the facts about Big Pharma and the medical industry. But the NYSC judges can greatly accelerate that learning process so the truth becomes widely known much sooner, and **saves countless lives before it's too late.** How? Your contacts in government can raise awareness and pass laws to inform people and expose the truth about Big Pharma and the medical industry. That will lead to reforms of the entire healthcare system that benefit everyone. The NYSC judges have powerful influence and prestige. Very few people have that prestige - but you do. *Please* read that document and then decide. Doing charity work to help others does not earn you money on Earth, but it does earn you eternal bliss in Heaven.

I want to thank the NY Supreme Court judges for taking the time to read my brief.

Dated: 08/29/2018    Respectfully submitted by: Guy Cozzi, Claimant-Appellant

# Appendix I

My legal brief (without the Appendix) submitted on 06-07-2019 to the NY Court of Appeals. No. 2019-584

included in the Petition for Writ of Certiorari submitted by Guy Cozzi

This is my legal brief (without the Appendix) submitted to the New York Court of Appeals (NYCA). That Appendix is **not** included with this filing for the sake of brevity.

***Important Note for SCOTUS:*** *As the Petitioner-Appellant, I am representing myself without an attorney or any other legal assistance. I am not an attorney and I have never taken law classes. As a result, I apologize if the written format of this appeal document does not perfectly conform to the requirements of the court. I also apologize for letting my subjective emotions, stress, and health problems affect me when I wrote some emotional comments in my briefs submitted to the New York courts. I was extremely upset and stressed due to the devastating effects 9-11 has had on my life and health, in addition to the violations of the US Constitution that were never corrected in the prior New York court rulings.*

---

## Motion to Appeal to the NY Court of Appeals

Additional details for the appeal form submitted:
***Questions Presented.***
***Why The Court Of Appeals Should Grant The Motion.***

---

This is submitted to State of New York Court of Appeals
with my motion to appeal the following decision:

**State of New York Supreme Court Appellate Division**
**526254 docket number decision entered on May 16, 2019**

Submitted by appellant Guy Cozzi

## *Table of Contents*

**Motion to Appeal to the NY Court of Appeals**     1

**Table of Contents**     2

**Questions Presented**     3
       Reference list of abbreviations:     4

**Summary of the Argument**     5

**New Interpretations of Laws & Constitutional Issues raised in the lower courts for this case**     5
       #1 - WCB and OGC Violated My Due Process Rights     5
       #2 - WCL § 123 vs. Article 8-A and NYL Intent     6
       #3 - Rules of Game Changed After Game was Over     7
       #4 - My Article 8-A Case was Not "Truly Closed"     8
       #5 - WCB was "Prejudice to the Claimant"     8
       #6- WCL § 164: WCB Never Set Date of Disablement     8
       #7 - WCB Never Considered WCL § 165     8
       #8 - WCL § 1: WCB Must Favor Injured Claimant     9
       #9 - WCB Violated Stare Decisis     9
       #10 - Intelligent & Meaningful Judicial Review     9
       #11 - WCB Violated the US Constitution     9
       #12 - WCB used "Fruit of the Poisonous Tree"     10
       #13 - WCB RB-89 Denial Decision is Biased     10

**NY Court of Appeals Civil Jurisdiction and Practice Outline for this case**     11
       I - Appeal As Of Right     11
       II - Motions For Leave To Appeal     11
       III - Guidelines For A Motion For Leave To Appeal     12
       V - Appealability and Reviewability     12
       VII - The "Necessarily Affects" Requirement     13

**9-11 World Trade Center Health Program**     14

**"Qualifying Conditions"**     14
       Introduction to www.nde.life     15

**Conclusion**     17

**Epilogue**     17

## *Questions Presented*

1. Did the Workers' Compensation Board (WCB) **abuse their discretion** and **violate my Equal Protection and Due Process rights** when they prevented me from submitting additional evidence and documentation for my RB-89 request? Answer: Yes.

2. Did the WCB violate my **Equal Protection and Due Process rights** by **refusing** to allow me to submit a WTCvol-3 form for my Article 8-A Volunteer work? Answer: Yes.

3. Is the intent of the NY Legislature to allow anyone denied in the past under the old Article 8-A laws, to now be given the opportunity of judicial review under the **new amended law**? Answer: Yes.

4. Does the 96 year old WCL § 123 law with its 7 year limit from the "date of accident", **conflict** with the intent of the NY Legislature for the new Article 8-A laws because the date of accident for claimants is 2001-2002, which is **17 years ago**? Does this **violate Equal Protection and Due Process rights of all Article 8-A claimants** because it prevents RB-89 rehearing approvals even **before** Article 8-A claims are filed? Answer: Yes.

5. Did the WCB **violate my Equal Protection and Due Process rights** when they ignored WCL § 165 when ruling to deny my RB-89 request? Answer: Yes.

6. Did the WCB **violate Stare Decisis** when they ignored violations of the Constitution in their ruling to deny my RB-89 request? Answer: Yes.

7. Did the WCB **violate "Intelligent & Meaningful Judicial Review"** in their ruling to deny my RB-89 request? Answer: Yes.

8. Did the WCB ruling denying my RB-89 rehearing request ignore violations of the Constitution in their prior rulings? Is this similar to the legal concept of using **"Fruit of the Poisonous Tree"**? Answer: Yes.

9. Did the Workers' Compensation Board (WCB) court ignore the clear wording and intent of the Article 8-A law by adding **"Ground Zero"** and **"affiliated with an authorized entity or agency"** requirements to make it very restrictive for some 9-11 rescue/recovery/cleanup workers? Answer: Yes.

10. Is it a **violation** of the US Constitution, (Separation of Powers), for the WCB to change the Article 8-A law by adding their "Ground Zero" and "affiliated with an authorized entity or agency" requirements? Answer: Yes.

11. Did the WCB violate the NY Supreme Court rulings that state the Board is obligated to assess the **"prejudice to the claimant"** which would have **inured** if the case were "closed"? Answer: Yes.

12. Did the WCB decision denying my RB-89 request forget to state any **date of disablement** as required by WCL § 164? Does this **violate my Equal Protection and Due Process rights?** Answer: Yes.

13. Does Workers' Compensation Law § 1 require that presumptions of laws operate in **favor of the claimant** and did the WCB not do this for my claim? Does this **violate my Equal Protection and Due Process rights?** Answer: Yes.

14. Since my prior appeals were determined to be filed as "untimely" by the NY Supreme Court and the NY Court of Appeals, then is it true that my Article 8-A claim was never **"truly closed"**? Answer: Yes.

15. Were the WCB rulings denying my Article 8-A claim and RB-89 rehearing request, **arbitrary, capricious <u>and</u> an abuse of discretion?** Answer: Yes.

---

## Reference list of abbreviations:

- ❖ **WCL** = Workers' Compensation Law (section §)
- ❖ **WCB** = Workers' Compensation Board
- ❖ **OGC** = WCB Office of General Counsel
- ❖ **WTC HP** = World Trade Center Health Program
- ❖ **VCF** = September 11th Victim Compensation Fund
- ❖ **NYL** = New York Legislature/Legislators (lawmakers)
- ❖ **NYSC** = New York Supreme Court - Third Department
- ❖ **NYSC docket # 523341** = My 2016 appeal to NYSC Third Department
- ❖ **NYCA** = New York Court of Appeals
- ❖ **WTC Site** = Article 8-A "World Trade Center site" is defined as "anywhere below a line starting from the Hudson River and Canal Street; east on Canal Street to Pike Street; south on Pike Street to the East River; and extending to the lower tip of Manhattan."
- ❖ **Ground Zero** = "Ground Zero" is the site of the former WTC Twin Tower buildings which were destroyed in the 9-11 terrorist attacks of 2001. This is located inside, but much smaller than, the WTC Site of Article 8-A.
- ❖ **authorized entity/agency** = NYSC ruling of Hazan v. WTC Volunteer Fund 2014 which overturned the WCB unconstitutional restriction that required injured workers [employees or volunteers] to be **affiliated with an <u>authorized</u> entity or agency** in order to qualify for workers' compensation benefits under Article 8-A. … *"In the absence of enabling legislation, the Board issued Order of the Chair No. 967 in June 2003, which defined the term 'first response emergency services personnel' as: '[a]ll persons who, serving without compensation or remuneration, and serving under the direction of an authorized rescue entity or volunteer agency,…"*

---

## Summary of the Argument

Timeliness chain: This is a motion/leave to appeal the State of New York Supreme Court Appellate Division decision entered on May 16, 2019. The NYSC case docket number is 526254. The detailed procedural steps taken for this case and motion can be found in the enclosed copy of the written appeal brief I submitted to the NYSC. Please see the section *"List of the prior court decisions for this case"* on pages 8-11 of that brief.

As the Claimant-Appellant, I am representing myself without an attorney or any other legal assistance. I am not an attorney and I have never taken law classes. As a result, I apologize if the written format of this appeal document does not perfectly conform to the requirements of the New York Court of Appeals.

I wrote a 70 page brief with a 182 page appendix for the NYSC appeal. It is clear from the facts and evidence that the WCB decision was **unconstitutional, arbitrary, capricious _and_ an abuse of discretion.** The January 19, 2018 WCB decision denying my RB-89 request for a rehearing should be reversed.

**This case isn't about _me_.** It's about all the injured workers that were cheated over the past 18 years, and those that will be cheated in the future, due to the WCB <u>unconstitutional</u> "Ground Zero" and "authorized entity or agency" restrictions, and the conflicts between Article 8-A and WCL § 123. God only knows how many injured workers have been cheated over the past 18 years, either by being denied in WCB hearings or by not filing claims at all, due to the WCB's unconstitutional restrictions added to their Article 8-A decisions.

---

## New Interpretations of Laws & Constitutional Issues raised in the lower courts for this case

There are new interpretations of laws and violations of the Constitution that I wrote about in my NYSC appeal brief. You can read a lot more details about each of these items and the constitutional issues raised in that brief which I have enclosed. Listed below are some of the main points of reference for the new interpretations of laws and constitutional issues of this case.

### #1 - WCB and OGC Violated My Due Process Rights

Page 16 of my NYSC appeal brief explains this in detail with appendix references.

- It's an abuse of discretion by the WCB to **prevent claimant's from submitting evidence to defend themselves.** The Workers' Compensation Board (WCB) abused their discretion and violated my Equal Protection and Due Process rights when they prevented me from submitting additional evidence and documentation for my RB-89 request.

- The WCB also violated my Equal Protection and Due Process rights by refusing to allow me to submit a WTCvol-3 form for my Article 8-A Volunteer work. Yet, the facts of me being an Article 8-A Volunteer rescue/recovery worker were **never** included in my original C-3 and WTC-12 forms of September 2014. Moreover, those volunteer facts did **not receive judicial review** during my case hearings, for the reasons I mentioned in my RB-89 documents. The only claim that the WCB ruled on was the employee cleanup worker claim. There was never any Volunteer Article 8-A forms filed nor ruled on by the WCB.
- *Question:* **Why would the WCB and OGC intentionally violate the Constitution?**
- *Answer:* **The New York Court of Appeals explained it well in** *Matter of Johannesen v. City of New York Dept. of HPD, 84 N.Y.2d 129 (1994), (also cited in the WCB Centennial Booklet)*:
  - o Finally, in a policy-based argument, ~~appellant~~ **[respondent]** suggests that recovery here will open floodgates and make every allergic reaction, common cold or ordinary ailment compensable. **This argument is often advanced when precedent and analysis are unpersuasive.**

## **#2 - WCL § 123 vs. Article 8-A and NYL Intent**

Page 27 of my NYSC appeal brief explains this in detail with appendix references.

**WCL § 123 law with its 7 year limit:**
- The 96 year old WCL § 123 law with its 7 year limit from the "date of accident", conflicts with the intent of the NY Legislature for the new Article 8-A laws because the *date of accident* for claimants is 2001-2002, which is **17 years ago!!** This violates Equal Protection and Due Process rights of all Article 8-A claimants because it **prevents RB-89 rehearing approvals even before Article 8-A claims are filed!**
- **The seven-year limit in WCL § 123 must be changed for all Article 8-A claims.** Why? Because there are **no stale** Article 8-A claims, which is the *opposite* of what the 7 year limit of WCL § 123 was enacted for. The government *itself* admits there are no stale Article 8-A claims by continually expanding the "qualifying conditions" and extending the Article 8-A filing deadline. As a result, some claimants may not have had "qualifying conditions" when they first filed their Article 8-A claims, but years later they could develop a 9-11 related health "qualifying condition". If you adjust the 7 year limit in WCL § 123 to begin from the latest Article 8-A filing deadline date, then:
  - a. You eliminate the Due Process and Equal Protection violations of the Constitution.
  - b. You fulfill the intent of the NY Legislature.
  - c. You solve a ton of problems for **all Article 8-A claimants**.
- WCL § 123 was passed almost 100 years ago and was only amended in 1940 and 1946, so it's a *very* old law *(L.1922, c. 615. Amended L.1940, c. 686, § 4; L.1946, c. 113, § 52.)*. The seven year limit of WCL § 123 conflicts with the Article 8-A law and the WTC-12 form. When there is a conflict between laws, then the new laws must supersede old laws.
- Currently, if the WCB makes a ruling against someone who has **no** qualifying conditions **now**, then that claimant is screwed if they get qualifying conditions in the **future**, because the WCB has already **denied** their claim as not Article 8-A "qualified". The injured workers will be

blocked in the future because of the prior denial ruling and the 7 year limit of WCL § 123. That is clearly the **opposite** of the **intent of the NYL** which is to make sure no claimant is denied justice under Article 8-A. Those claimants should not be blocked by the 7 year limit of WCL § 123.

- The seven year limit of WCL § 123 will prevent rehearings of valid **future** qualifying conditions for *previously* denied claimants!! Therefore, the 7 year limit of WCL § 123 <u>conflicts</u> with the Article 8-A law and WTC-12 form.

- In *Matter of Schreckinger* the **NY Supreme Court ruled it is a "gross injustice" to <u>NOT</u> reopen cases when it <u>violates the intent</u> of the Legislature!** The NYSC Schreckinger ruling is definitely relevant to this appeal and to **all** Article 8-A claims.

**WTC-12 form and Article 8-A provisions protection:**
- The NYL intent is clear based upon what the WTC-12 form itself states. All claimants should automatically be entitled to take advantage of the provisions of Article 8-A in prosecuting their claim (aka "Article 8-A provisions protection") **just by registering as a "participant" with the WTC-12 form** (read #5 & #B-7 on the form). This does not require the WCB to rule in favor of all claims by registered participants. Rather, the NYL want to make sure that all WTC-12 forms submitted by claimants who believe they are "participants" in the past, present, and/or future, will get fair judicial review and Article 8-A provisions protection.

- WCB rulings for surviving spouses also prove that all claimants are ***automatically*** given Article 8-A provisions protection just by ***registering*** as a "participant" with the WTC-12 form.

- Yet, I was <u>denied</u> Article 8-A provisions protection by the WCB, which violates my Equal Protection and Due Process rights under the Constitution.

## <u>#3 - Rules of Game Changed After Game was Over</u>

Page 35 of my NYSC appeal brief explains this in detail with appendix references.
- The intent of the NYL is to make sure no claimant is left behind under Article 8-A. The NYL changed the "qualifying conditions" and filing deadlines multiple times when they passed amended and more liberal interpretations of the Article 8-A law. As a result, the **rules of the game changed <u>AFTER</u> the game was <u>over</u>** for many injured workers already denied Article 8-A benefits under the <u>old</u> rules! **Clearly the intent of the NYL is that anyone denied in the past under the old laws, must now be given the opportunity of judicial review under the new law.** That is why the NYL also want *potential future* claimants to file WTC-12 forms. They want to make sure no one is denied justice under the <u>new</u> rules of the law. Therefore, cases like mine must be given Article 8-A provisions protection to reopen those claims for rehearings under the *new* rules. **That is required by the *Matter of Schreckinger*, and the Equal Protection and Due Process clauses of the Constitution**, and the "common-sense viewpoint of the average [person]" *(Matter of Johannesen v. City of New York DHPD 1994)*.

## #4 - My Article 8-A Case was Not "Truly Closed"

Page 38 of my NYSC appeal brief explains this in detail with appendix references.

- The intent of the NYL is to allow anyone denied in the past under the old Article 8-A laws, to now be given the opportunity of judicial review under the new amended law. Since my prior appeals were determined to be filed as "untimely" by the NY Supreme Court and the NY Court of Appeals, then my Article 8-A claim was never "truly closed" based on the intent of the NY Legislature.
- As noted in section #2 of my NYSC appeal brief: item #1 on the WTC-12 form states: *"... to permit the Board to reopen such claims previously denied as **untimely**."* The January 19, 2018 WCB decision states the WCLJ and Board Panel ruled my claim was "untimely" and "time-barred" pursuant to WCL § 28, and also *"WCL § 123 ... this statute depends on whether they were truly closed...".* In addition, my case was also determined to be filed as "untimely" by the NYSC and NYCA. The NYL want a liberal interpretation of Article 8-A. Therefore, the NYL did **not** refer *only* to "untimely" WCB court cases, but instead their Article 8-A intent also applies to NYSC and NYCA cases ruled as "**untimely**" (item #1 on the WTC-12 form).

## #5 - WCB was "Prejudice to the Claimant"

Page 40 of my NYSC appeal brief explains this in detail with appendix references.

- The WCB was definitely "prejudice to the claimant" in their January 19, 2018 decision denying my RB-89 rehearing request. That violates my Equal Protection and Due Process rights. This is another reason why that ruling should be reversed and my Article 8-A case should be reopened. This is also relevant to my written section above *#4 - My Article 8-A Case was Not "Truly Closed"*.

## #6- WCL § 164: WCB Never Set Date of Disablement

Page 42 of my NYSC appeal brief explains this in detail with appendix references.

- The January 19, 2018 WCB decision denying my RB-89 rehearing request does **not** state any date of disablement as **required** by WCL § 164. The WCB denied me Article 8-A provisions protection rights. That violates my Equal Protection and Due Process rights.

## #7 - WCB Never Considered WCL § 165

Page 44 of my NYSC appeal brief explains this in detail with appendix references.

- The January 19, 2018 WCB decision does **not** mention WCL § 165. The WCB denied me Article 8-A provisions protection rights, and my Equal Protection and Due Process rights, because they ignored WCL § 165 when making their ruling to deny my RB-89 rehearing request.

## #8 - WCL § 1: WCB Must Favor Injured Claimant

Page 46 of my NYSC appeal brief explains this in detail with appendix references.

- The WCL § 1 requires that presumptions of laws operate in **favor of the claimant!** When there is doubt, there is <u>no</u> doubt - because the WCB must rule in favor of the claimant. It is clear that <u>**all**</u> the presumptions of law that the WCB made in <u>**all**</u> the rulings related to my Article 8-A claim, did <u>**not**</u> favor me in *any* decisions! Moreover, those WCB decisions violated my Equal Protection and Due Process rights.

## #9 - WCB Violated Stare Decisis

Page 47 of my NYSC appeal brief explains this in detail with appendix references.

- You will fulfill the intent of the NYL by having the WCB apply the Article 8-A law to **all** rescue, recovery and cleanup workers/volunteers in the **area defined as the "World Trade Center site".** Instead the WCB court has applied the Article 8-A law to *only* those workers/volunteers associated with registered entities or agencies and at "Ground Zero".
- If you apply a **Stare Decisis** analysis to every section of my NYSC appeal brief and my RB-89 brief, you will see that it is clear the WCB decision should be overturned. The WCB uses **unconstitutional** "Ground Zero" and "affiliated with an authorized entity/agency" restrictions to deny valid Article 8-A claims, like my claim. Stare Decisis importance is noted in the **New York Court of Appeals** ruling in *Matter of Field Delivery Service v. Lillian Roberts, Dept of Labor, 12-19-1985, NYCA 66 N.Y.2d 516.*

## #10 - Intelligent & Meaningful Judicial Review

Page 49 of my NYSC appeal brief explains this in detail with appendix references.

- If you apply an **Intelligent & Meaningful Judicial Review** analysis to every section of my NYSC appeal brief and my RB-89 brief, you will see that it is clear the WCB decision should be overturned. The WCB uses **unconstitutional** "Ground Zero" and "affiliated with an authorized entity/agency" restrictions to deny valid Article 8-A claims, like my claim.

## #11 - WCB Violated the US Constitution

Page 51 of my NYSC appeal brief explains this in detail with appendix references.

- If you apply a **Constitutional** analysis to every section of my NYSC appeal brief and my RB-89 brief, you will see that it is clear the WCB decision should be overturned. The WCB uses **unconstitutional** "Ground Zero" and "affiliated with an authorized entity/agency" restrictions to deny valid Article 8-A claims, like my claim.

## #12 - WCB used "Fruit of the Poisonous Tree"

Page 52 of my NYSC appeal brief explains this in detail with appendix references.

- The legal doctrine of *"Fruit of the Poisonous Tree"* should be applied to WCB decisions that deny RB-89 requests to reopen claims. Especially when those denials are based upon prior court decisions where the claimant raised **violations of the Constitution and/or the intent of the NYL**. If the WCB is allowed to use prior decisions to deny RB-89 requests, then the claimants' **must** be allowed to use that same evidence from prior decisions to **defend themselves** in appeals courts! Denying claimants' that right would be equivalent to giving the WCB both a **sword** and a **shield** to use against injured workers who have no way to defend themselves!! This is especially important if claimants' have raised constitutional issues in prior hearings. **If you give the government a sword and a shield, then you are** *required* **by the US Constitution to give that** same **sword and shield to the injured workers so they can** **defend themselves** **in court!** As I wrote in my NYSC appeal brief to apply the legal doctrine of *"Fruit of the Poisonous Tree"*:

    a. If the **roots** of the tree *[2014-2016 WCB decisions]* are **poisonous** *[violate the Constitution]*, then all the tree **branches and fruit** *[WCB RB-89 denial decision which was* **based on all** *those prior WCB decisions]* are **poisonous** *[violate the Constitution]*.

- **You** **cannot** **have "intelligent and meaningful judicial review" when the WCB uses** **unconstitutional** **restrictions to deny valid Article 8-A claims, and then they use those** **same** **unconstitutional decisions to deny RB-89 rehearing requests!** To uphold the WCB January 19, 2018 RB-89 denial decision, you would need to *ignore* all the **violations** **of the Constitution** by the WCB in their rulings which are the basis and foundation for their RB-89 denial decision.

## #13 - WCB RB-89 Denial Decision is Biased

Page 58 of my NYSC appeal brief explains this in detail with appendix references.

# NY Court of Appeals Civil Jurisdiction and Practice Outline for this case

## I - Appeal As Of Right

Section 2. Constitutional Question - CPLR 5601(b)(1) - Appeal from Final Appellate Division Order
- *2.a.i. Direct Involvement*
  - o My reply: The constitutional questions (and new interpretations of laws) were properly raised in the courts below. The issue was preserved before the court of original instance and raised again at, and passed upon by, the NYSC Appellate Division on an appeal.
- *2.b. Substantiality*
  - o My reply: There are substantial constitutional questions (and new interpretations of laws) that are presented which the NY Court of Appeals needs to examine:
  - o *The nature of the constitutional interest at stake.*
    - ▪ My reply: The constitutional interest of this case is statewide and very important for all WCB claims and Article 8-A claims.
  - o *The novelty of the constitutional claim.*
    - ▪ My reply: The issues raised in this case have not been raised before (based upon my legal research of Article 8-A rulings). As a result, these issues are 18 years overdue and need to be evaluated by the NY Court of Appeals.
  - o *The arguments raised have merit.*
    - ▪ My reply: The arguments raised (constitutional violations and new interpretations of laws) clearly have merit and substantial importance statewide.
  - o *A basis has been established for distinguishing a state constitutional claim (if asserted) from a federal constitutional claim.*
  - o *A constitutional argument need not prevail on the merits to support an appeal on constitutional grounds.*

## II - Motions For Leave To Appeal

Section C. Statutory Requirements - Jurisdictional Predicates
- *1. Motions for Leave To Appeal from Final Appellate Division Orders*
  - o *CPLR 5602(a)(1)(i) allows a litigant to seek leave to appeal from a final Appellate Division order entered in an action originating in the Supreme Court and/or an administrative agency. An appeal from a final Appellate Division order brings up for review prior nonfinal orders and judgments that necessarily affect the final order.*
  - o My reply: **All the prior rulings** for my Article 8-A claim and this appeal, **directly affect** the final order or judgement decision by the WCB for any RB-89 rehearing request. This is the same situation for all WCB claimants statewide that file RB-89 requests - all their

prior rulings directly affect the final order or judgement decisions. (see section *#12 - WCB used "Fruit of the Poisonous Tree"*).

## III - Guidelines For A Motion For Leave To Appeal

Section A. Certiorari Factors - 22 NYCRR 500.22(b)(4)
- *Question of law should be novel or of public importance.*
  - o My reply: The new interpretations of law are definitely novel **and** of statewide public importance to all WCB claims and Article 8-A claims by injured workers.

Section C. Reasons Why the Court Grants Leave To address important legal issues
All of the following apply to this case:
- *Construe statutes in developing areas of regulation.*
- *Develop emerging areas of common law.*
- *Reevaluate outmoded precedent.*
- *Correct error below - **to cure substantial injustice**.*

## V - Appealability and Reviewability

Section C. Reviewability
- *1. Preservation - Issues Reviewable*
  - o a. My reply: All constitutional issues and new interpretations of laws were raised in the lower court and appeals court.
- *2. CPLR 5501(a) - Review of Prior Nonfinal Orders and Determinations*
  - o a. *CPLR 5501(a) provides that an appeal from a final judgment brings up for review, among other things:*
    - ▪ i. *any nonfinal judgment or order which **necessarily affects the final judgment**, including any which was adverse to the respondent on appeal from the final judgment and which, if **reversed**, would entitle the respondent to prevail in whole or in part on that appeal (CPLR 5501[a][1]);*
    - ▪ ii. *any order denying a new trial or hearing which was **not** previously reviewed by the court to which the appeal was taken (CPLR 5501[a][2]); and*
    - ▪ iii. *any ruling to which the appellant objected or had no opportunity to object*
    - ▪ My reply: **All of those criteria listed in i, ii and iii pertain to my Article 8-A case and the WCB decision denying my RB-89 rehearing request to reopen the claim.** All the prior rulings for this case (as with all WCB claims) **directly affect** the final order or judgement decision by the WCB for RB-89 rehearing requests. None of those prior WCB rulings were reviewed by the NYSC or NYCA on appeal because they were filed untimely. You can read the details in my NYSC appeal brief, especially in sections #4 and #12 titled: *#4 - My Article*

*8-A Case was Not "Truly Closed"* and *#12 - WCB used "Fruit of the Poisonous Tree".*

- *3. Scope of Review*
  - ○ *c. Limited Review*
    - ■ *iii. Provided the lower courts had the power to exercise discretion ... the Court of Appeals will not interfere with the exercise of that discretion absent an abuse .... However, an issue of law will be presented where the Appellate Division in exercising its discretion **fails to take into account all the various factors that are properly entitled to consideration** ...*
    - ■ My reply: There are many examples where the WCB abused their discretion related to this case, both in the RB-89 denial decision and their prior decisions. The WCB clearly **violated** my Due Process and Equal Protection rights by **preventing** me from submitting additional documents, legal research, evidence and the WTC Volunteer recovery worker form for the RB-89 request. Moreover, the WCB is literally **refusing** to allow me to submit a WTCvol-3 form for my Article 8-A Volunteer work.


## VII - The "Necessarily Affects" Requirement

Section A. General Overview

- *... the correctness of a final determination may often **turn on the correctness of such a nonfinal order**, and the appeal from the final determination would then be **pointless if that order could not also be reviewed**. It has accordingly long been the practice in this State to permit review, on an appeal from a final determination, of **any nonfinal determination necessarily affecting the final determination which has not previously been reviewed by the appellate court.***
- *2 - Reviewability*
  - ○ *CPLR 5501(a)(1) provides that an appeal from a final judgment brings up for review any nonfinal judgment or order that "necessarily affects" the final judgment.*
- My reply: All the prior rulings for this case (as with all WCB and Article 8-A claims) **directly affect** the final order or judgement decision by the WCB for RB-89 rehearing requests.

Section B. The "Necessarily Affects" Requirement

- *1. ... According to Karger, a nonfinal order "necessarily affects" a final determination **"if the result of reversing that order would necessarily be to require a reversal or modification of the final determination"** and **"there shall have been no further opportunity during the litigation to raise again the questions decided by the nonfinal order"***...
- My reply: **That exactly explains the situation of my Article 8-A claim and RB-89 denial appeal.** If the prior decisions were <u>reversed</u> because they **violate the Constitution**, then that would **require a reversal of the RB-89 denial decision** (final determination), and there would be <u>**no**</u> **further opportunity to raise again** the (constitutional) questions decided by the nonfinal order (the prior Article 8-A rulings for this case that the WCB used to deny my RB-89 request). As noted above, this affects all WCB RB-89 requests statewide for all claims, and especially for

Article 8-A injured workers/volunteers. For Article 8-A claims, the WCB has/will **violate Separation of Powers** by ignoring the clear wording and intent of the Article 8-A law by adding **"Ground Zero"** and **"affiliated with an authorized entity or agency"** requirements to make it very restrictive for some 9-11 workers/volunteers. As I stated in my NYSC appeal brief:

- o God only knows how many injured workers have been cheated over the past 17 years, either by being denied in WCB hearings or by not filing claims at all, due to the WCB's unconstitutional restrictions added to their Article 8-A decisions.

---

## 9-11 World Trade Center Health Program
## "Qualifying Conditions"

The following is indirectly related to this case: **All Article 8-A injured workers and WTC Health Program patients** require a lot of medical care, and many have cancer. In 2015 I started doing research on my own to find ways to cure 9-11 related health issues. I would like to ask you to please read the article with my research *"The Truth About Conventional Medicine"* at www.nde.life because I guarantee you will find it *extremely* **important!** This request is not for *my* benefit, it's for *your* benefit and the benefit of WTC Health Program patients. That research document contains the most accurate and extensive scientific and medical evidence and facts from the **top experts in the world** for health, nutrition, holistic medicine and spiritual topics. I did years of research on my own to compile a list of the best experts and content. That information will greatly improve the healthcare and lives of **billions of people** worldwide if government decision makers and legislators help raise awareness. **It will also reduce the overall healthcare costs by 75% for every person, insurance carrier, and government that pays medical bills!!** Yes, the facts are accurate and backed up by *centuries* of scientific evidence and medical research from the top experts. Please read it and decide for yourselves.

I promise you, this is much more important than your decision in this appeal. My goal is to inform people of the **truth about conventional medicine** with the content I compiled from those top experts. Eventually, in about 20 years from now, most people will learn the facts about *Big Pharma* and the medical industry. But the NYSC/NYCA judges can greatly accelerate that learning process so the truth becomes widely known much sooner, and **saves countless lives before it's too late.** How? Your contacts in government can raise awareness and pass laws to inform people and expose the truth about Big Pharma and the medical industry. That will lead to reforms of the entire healthcare system that benefits everyone. The NYSC/NYCA judges have powerful influence and prestige. Very few people have that prestige - but you do. *Please* read that document and then decide. (I have included the summary introduction below.) Doing charity work to help others does not earn you money on Earth, but it does earn you eternal bliss in Heaven.

# *Introduction to www.nde.life*

In 2001, I worked in an office building located next to the World Trade Center in New York City. This was a toxic disaster area after the September 11 terrorist attacks. Many thousands of people developed 9/11 related health conditions https://nemmar.page.link/001 due to exposure to the toxic dust and debris in the months after 9/11. They all share a common experience as patients of the World Trade Center Health Program - they lived or worked in the disaster area in 2001-2002 after the terrorist attacks. Some worked or volunteered in the rescue, recovery, and clean-up efforts. Others returned to their homes, businesses, and schools in lower Manhattan. I am one of the many thousands of people who were exposed to the toxic dust and aftermath effects during 2001-2002. I started doing research on my own in 2015 to find ways to cure 9/11 related medical illnesses and diseases. **What I learned from my research was so shocking and eye-opening** that I started writing this book online to help others learn **the truth about conventional medicine** and *Big Pharma*. Nutrition is the most important factor of good health, so I am including my research about the food industry. **People are stunned when they learn the facts about nutrition, the food they eat, and the truth about factory farms** and *Big Ag*.

I wrote this document and added it to my websites www.nde.life and www.nemmar.org to help make the world a better place for people and animals. This is the outline for an online book I am writing to help people learn facts about the most important topics in everyone's lives - their **health**, their **integrity** and their **soul**. Here are summary links of the topics:

## *Health and Nutrition*
- Books and documentary films by Dr. T. Colin Campbell https://nemmar.page.link/002
- Books and videos by Dr. Michael Greger https://nemmar.page.link/003
- The True History of Chemo and Big Pharma Monopoly https://nemmar.page.link/298
- TTAC - The Truth About **Cancer** by Ty Bollinger https://nemmar.page.link/005
  - TTAC 1 - The True History of Chemo and the Pharmaceutical Monopoly https://nemmar.page.link/298
  - TTAC 2 - Cancer Facts and Fictions, Breast Cancer, Hormones, Skin Cancer and Essential Oils https://nemmar.page.link/299
  - TTAC 3 - Cancer-Killing Viruses, Cancer Stem Cells, GMOs, Juicing and Eating the Rainbow https://nemmar.page.link/300
  - TTAC 4 - Excitotoxins that Fuel Cancer, Nature's Pharmacy and Healing Cancer with Sound and Light https://nemmar.page.link/301
  - TTAC 5 - Cancer Causing Blindspots, Toxic Vaccines, Homeopathy and the Power of Emotions https://nemmar.page.link/302
  - TTAC 6 - The NOCEBO Effect, Healing Vaccines, Advanced Detoxing and going inside a German Cancer Clinic https://nemmar.page.link/303
  - TTAC 7 - Heal Cancer with Clean Electricity, Unique Water, Natural Sunlight and Combining Superfoods https://nemmar.page.link/304
  - TTAC 8 - Cannabis, Nature's Epigenetic Switches, Peptides and Healing with Micronutrient Therapy https://nemmar.page.link/305
  - TTAC 9 - Cancer Conquerors and Their Powerful Stories of Victory https://nemmar.page.link/306
  - The Truth About **Detox** https://nemmar.page.link/308
  - The Truth About **Vaccines** https://nemmar.page.link/309
  - The Truth About *Pet* Cancer https://nemmar.page.link/276
- *What The Health* documentary film https://nemmar.page.link/006
- Most people incorrectly think they need protein from animal-based food to be healthy. *The Great Protein Fiasco* articles explain the facts.

## *Food Factory Farms and Animal Agriculture*
- Food Factory Farm undercover videos https://nemmar.page.link/007
  - The Truth About Factory Farms https://nemmar.page.link/317

- o The Truth About Factory Farms 01 https://nemmar.page.link/313
- o The Truth About Factory Farms 02 https://nemmar.page.link/314
- o The Truth About Factory Farms 03 https://nemmar.page.link/315
- o The Truth About Factory Farms 04 https://nemmar.page.link/316
- o The Truth About *Dog Meat* Farms https://nemmar.page.link/318
- Cowspiracy - The Sustainability Secret documentary film https://nemmar.page.link/008
- Dominion documentary film https://nemmar.page.link/009
- Fowl Play documentary film https://nemmar.page.link/010
- Lucent documentary film https://nemmar.page.link/011
- End Driftnets Coalition videos https://nemmar.page.link/012

*Spiritual, NDE and Afterlife*
- Books and podcasts by Betty Jean Eadie https://nemmar.page.link/164
- Books and Seek Reality podcasts by Roberta Grimes https://nemmar.page.link/165
- Video and audio interviews with Neale Donald Walsch https://nemmar.page.link/289
- A Course In Miracles (ACIM) https://nemmar.page.link/180
  - o The Extinction of the Ego https://nemmar.page.link/320
- Gallery of spiritual videos https://nemmar.page.link/319


It's very helpful to have an open mind in life. Ignorance is bliss... until you get hit with the truth and reality, and then... ignorance is *not* bliss... and when it comes to your health… ignorance is **fatal**!! People who are wise have open minds because they are curious, intelligent, and always want to learn more facts and knowledge to gain more wisdom.

On a side note: When you volunteer your time and knowledge to help others, it might not earn you money on Earth, but it does earn you eternal bliss in Heaven. During my life I have often done volunteer charity work to help animals and wildlife. For example, in 2018 I went to Venezuela and did volunteer work to help animal rescue groups due to the severe suffering and enormous problems in that country caused by Socialism. The situation was so horrible that people were killing and eating dogs, cats, and any animals they could find due to starvation from a lack of food!! I believe that the way a person treats animals is a very good indication of how they treat people. Animals cannot speak to defend themselves - compassionate people need to speak for them. Videos showing animals that need help: https://nemmar.page.link/007

**Please leave animals off your plate.** If you feel this content is helpful to you, then please consider eating less animal-based foods for your meals. You don't have to become a vegan or vegetarian, just please consider eating less animal-based foods (meat, dairy and fish). There are so many excellent reasons for this in the content listed on my website - including your medical health (physical and mental), your financial health (medical bills), your spiritual health (compassion and integrity), and your environmental health (sustainability of the planet).

## *Conclusion*

This case is a battle between:

- **David vs. Goliath**
- Justice vs. Injustice
- Liberty vs. Tyranny

Injured workers and volunteers with 9-11 related health conditions have been suffering for 18 years, and they will continue to suffer unless these constitutional issues and new interpretations of laws are fixed by the NYCA or the NYL.

**If not *now*, then when? If not *you*, then who?**

The constitutional issues and the new interpretations of laws that I have written about are very obvious and need to be corrected. It is 18 years overdue. These issues are crystal clear, like night and day. I don't see any "gray areas" of the law or the Constitution for the issues I have raised about the WCB court decisions.

U.S. Supreme Court Justice Robert H. Jackson had a famous quote that is important to keep in mind. I'm sure the NYCA is aware of this quote:

- *"We are not final because we are infallible, but we are infallible only because we are final."*

---

## *Epilogue*

As I stated earlier, I am representing myself without an attorney or any other legal assistance. I am not an attorney and I have never taken law classes. I get panic attacks just thinking about this case because I have physical and mental health problems from the devastating effects the aftermath of 9-11 has had on my life. But I'm not insane and I'm not stupid, and I'm fighting to win this case for my survival. So I use logic, reason and the "common-sense viewpoint of the average [person]" *(Matter of Johannesen v. City of New York DHPD 1994 - WCB Centennial Booklet)*. I delayed researching and writing my NYSC appeal brief for 6 months because of the panic attacks I get just by thinking about 9-11 and how it destroyed my life. Moreover, I had no clue where to begin to figure out how to overturn the WCB RB-89 denial decision on appeal. So for me, this is like trying to piece together an extremely complicated jigsaw puzzle without having a photo of what the completed puzzle looks like. Lawyers have the completed photo because they already know the rules of the game and how it all works. I don't.

This case has been going on since September 2014. If I had been **affiliated with an authorized entity or agency** in 2001 for the WTC rescue, recovery or cleanup work I did, then my claim would have been approved at the first WCB hearing with no problems. Instead, I got cheated just because I worked for a private-sector company located next to the former Twin Towers and the Ground Zero debris pile. The WCB and the insurance carrier lawyers decided to *circle the wagons* and fight to the end. Four years of all of this fighting just because I didn't work for an *authorized entity or agency* for the WTC rescue, recovery or cleanup work I did. This also explains why the WCB and OGC are **refusing to allow me** to submit a WTCvol-3 form for my WCB claim. They don't want to lose, like they did when the NYSC

had to "remind" them about the Constitution and Separation of Powers in the *Matter of Hazan v. WTC Volunteer Fund - 2014.*

In addition, the WCB and OGC didn't like what I wrote in my NYSC, NYCA, and RB-89 briefs in 2016-2017. After all, in the minds of the WCB, OGC, and insurance carrier lawyers:

1. I'm just some illiterate, insignificant, low-life, injured worker who is a **pawn in their game of chess.** So I'm easily expendable and they look at me with contempt.
2. How <u>dare</u> I challenge the *great* WCB and OGC. Who am I to think I deserve equal protection under the law when I challenge the **unconstitutional** "Ground Zero" and "authorized entity/agency" restrictions the WCB uses?
3. How <u>dare</u> the NY State Legislature pass Article 8-A laws with wording that the *great* WCB and OGC don't like and don't want to adhere to.
4. How <u>dare</u> the NY Supreme Court overturn Article 8-A rulings, like *Matter of Hazan v. WTC Volunteer Fund - 2014,* and then expect the *great* WCB and OGC to apply that ruling to similar cases, such as mine:

*Matter of Hazan v. WTC Volunteer Fund, 120 A.D.3d 82, NYSC 2014:*

- "Finally, to the extent that the Board has consistently relied upon the subject orders in denying benefits to volunteers **[or cleanup workers]** who were not affiliated with an authorized rescue entity or volunteer **[or cleanup]** association **[or at Ground Zero]**, we need note only that while Workers' Compensation Law § 141 vests the Board's chair with certain powers to administer the provisions of the Workers' Compensation Law, it does not vest him or her with the authority to supplement or amend duly enacted legislation. Accordingly, whatever the net effect of such orders may be, they "cannot overrule the statute itself" *(Matter of Russomanno v. Leon Decorating Co., 306 NY 521, 525 [1954]).* In sum, as neither the statutory language nor the legislative history supports the Board's requirement that an individual be affiliated with an authorized rescue entity or volunteer **[or cleanup]** agency **[or at Ground Zero]** in order to qualify as a volunteer **[or cleanup worker]** and, hence, be eligible for the coverage afforded under the statute, **the Board's decision denying claimant's application for benefits upon this particular ground cannot stand.**[2]
- Footnote 2: To the extent that it may be argued that the imposition of such a requirement is necessary in order to guard against frivolous claims, the **remedy lies with the Legislature in the form of a statutory amendment."**

Based upon what I have been through over the past 5 years with this legal battle, I am wondering if the offices at the WCB and OGC have wall plaques that read:

*"In ~~God~~ Us We Trust"*
*"We ~~Follow~~ Are The Law"*
*"We Are Legends In Our Own ~~Time~~ Minds"*

---

I want to thank the NY Court of Appeals for taking the time to read this.
Respectfully submitted by: Dated: June 07, 2019          Guy Cozzi, Claimant-Appellant

# Appendix J 1

Workers' Compensation Board form: RB-89 (09-16)

included in the Petition for Writ of Certiorari submitted by Guy Cozzi

# INSTRUCTIONS FOR COMPLETING RB-89

**TO THE APPLICANT**: An Application for Board Review must be filed within 30 calendar days after the filing date of the WCLJ's decision. An Application is deemed filed with the Board on the date of actual receipt of such Application by the Board. In accordance with 12 NYCRR 300.13(b)(3) and the Chair's designation, an Application may only be filed with the Board at the Board's centralized mailing address (P.O. Box 5205, Binghamton, NY 13902-5205), centralized fax number for claims (1-877-533-0337), centralized Email address for claims (**wcbclaimsfiling@wcb.ny.gov**), or via the WCB Web Upload link (**https://wcbdoc.xrxfs.com/login.aspx**). A copy of this Application must be served upon all necessary parties of interest in accordance with 12 NYCRR 300.13(b)(2)(iv). Applications, unless submitted by an unrepresented claimant, must be in the format prescribed by the Chair, all sections of the Application must be completed, and any legal brief attached must comply with 12 NYCRR 300.13(b)(1)(i).  If requesting or participating in voluntary binding review, this form must be filed within 30 calendar days after the filing date of the WCLJ's decision by mailing, faxing, emailing, or web upload as stated above.

**TO ALL OTHER PARTIES**: Any Rebuttal to this Application must be served on the Board within 30 calendar days following the date on which the Application was served on the parties, as specified in the Proof of Service section of the RB-89 form in accordance with 12 NYCRR 300.13(c).

1.  **WCB Case Number(s).** Enter the WCB Case Number(s) of the claim(s) being appealed.

2.  **Carrier Case Number(s).** Enter the Carrier Case Number(s) of the claim(s) being appealed.

3.  **Carrier Code.** Enter the Carrier Code of the insurer for the claim being appealed.

4.  **Carrier's Name.** Enter the name of the Carrier for the claim being appealed.

5.  **Date of Injury/Leave.** Enter the original date that the injury occurred or the date paid family leave began.

6.  **Claimant's Name.** Enter the complete name of the injured employee.

7.  **Claimant's Address.** Enter the street address, city, state and ZIP code of the injured employee, and mailing address if different.

8.  **Party Requesting the Appeal.** Indicate which party is filing this Application for Board Review.

9.  **Type of Application.** Indicate whether the Application is requesting either 1) review of a WCLJ Decision, or 2) rehearing or reopening.

10. **Date of Decision.** Enter the date of the decision that is being appealed.

11. **Specify the Issue(s) for Review.** State the specific issue(s) for review.

12. **Basis of Appeal.** Provide a brief statement of the particular grounds upon which the appeal is based, including the specific findings of fact which are challenged and/or the errors of law which are alleged. General allegations which do not specifically bring to the attention of the Board the issues to be decided are insufficient. As prescribed by 12 NYCRR 300.13(b)(1)(i), an appellant may attach a legal brief of up to eight (8) pages in length, using 12-point font, with one inch margins, on 8.5-inch by 11-inch paper. A brief longer than eight (8) pages will not be considered, unless the appellant specifies in writing, why the basis of the appeal could not have been made within eight (8) pages.  A brief longer than fifteen (15) pages will not be considered under any circumstances.

13. **Hearing Dates, Transcripts, Documents, Exhibits, and Other Evidence.** Indicate the hearing date(s) on which the issue(s) was raised before the WCLJ, as well as any other relevant hearing dates. Identify by date and documents ID number(s) the transcripts, documents, reports, exhibits, and other evidence in the Board's file that are relevant to the issues and grounds being raised for review. If minutes are not transcribed, so indicate.  Do not include with or attach to an Application for Board Review any documents that are present in the Board's file at the time the Application is filed.  The Board may reject an Application for Board Review by an appellant or an appellant's legal representative who attaches documents already in the Board's file at the time of the Application, in accordance with 12 NYCRR 300.13(b)(1)(ii).

14. **New and Additional Evidence.** If an appellant seeks to introduce new or additional evidence with the Application for Board Review that was not presented before the WCLJ, the appellant must, 1) state on the Application whether such evidence is attached to the Application, or is in the Board's file, specifying the applicable document ID number, and 2) submit a sworn affidavit or affirmation setting forth the evidence, and explaining why such evidence could not have been presented before the WCLJ. The Board may or may not exercise its discretion to accept such evidence. If the sworn affidavit or affirmation is not submitted with the Application, such new or additional evidence will not be considered by the Board Panel [see 12 NYCRR 300.13(b)(1)(iii)].

15. **Objection or Exception.** Specify the objection or exception that was interposed to the ruling, and when the objection or exception was interposed as required by 12 NYCRR 300.13(b)(2)(ii).

16. **Indemnity Payments.** Indicate whether indemnity benefits are being paid while the application is pending. If no, indicate the date on which payments were suspended pursuant to WCL § 23. If yes, indicate the rate at which continuing indemnity benefits are being paid. If continuing indemnity benefits are being paid at a rate that is less than the awarded rate, specify the date on which payments were reduced. If payments are stayed, state the issue on appeal that forms the legal basis for staying payments.

17. **Attorney's fees.** Indicate whether an increase in attorney's fees is being requested. If, yes, Form OC-400.1, Application for a Fee by Claimant's Attorney or Representative, must be attached and served on the parties [see 12 NYCRR 300.13(b)(2)(v) and 300.17)]. Failure to request an additional fee in the Application for Board Review, and by filing a Form OC-400.1 with the Application, shall result in the waiver of any additional fee.

18. **Certification.** The preparer must sign and date the form (also providing their name, title, telephone number and address) certifying to the Application's good faith basis in law and fact, that it had been instituted with reasonable grounds, and had been served upon the necessary parties of interest in the proof of service section.

19. **Proof of Service.** The Application must be served on all necessary parties of interest in accordance with 12 NYCRR 300.13(b)(2)(iv). Failure to properly serve a necessary party shall be deemed defective service and the Application may be rejected by the Board. When the Application for Board Review is filed by the carrier, self-insured employer, or other payor or potential payor, service shall be upon the claimant, and claimant's legal representative, and other necessary parties of interest. Service is deemed timely if completed by the appellant within thirty (30) days of the filing of the decision by the Board. Either the Affirmation or Affidavit must be completed and must include the method by which, and the date, the Application was filed with the Board. The appellant shall only use one method to file the Application with the Board. If the appellant files duplicate Applications, such duplicate filings may be deemed to be raising or continuing an issue without reasonable grounds, and may subject the appellant to assessments under WCL § 114-a(3). The Affirmation or Affidavit completed must specify the papers served, the names of the parties of interest served, the date and method of service for each party of interest, and that service was completed within 30 days from the filing of the decision that is the subject of the Application. If a party is served by fax, email or other electronic means, the Affirmation or Affidavit must include a certification that the party so served provided explicit permission to receive service by such means [see 12 NYCRR 300.13(b)(2)(iv)(C)]. The Application does not have to be served on each party in the same manner. The Affirmation must be dated and signed under penalties of perjury. Only an attorney may complete the Affirmation. The Affidavit must be sworn to (signed) before a notary public.



**Workers' Compensation Board**

# APPLICATION FOR BOARD REVIEW

PO Box 5205
Binghamton, NY 13902-5205
www.wcb.ny.gov

| 1. WCB Case Number(s) | 2. Carrier Case Number(s) | 3. Carrier Code | 4. Carrier's Name | 5. Date of Injury/Leave |
|---|---|---|---|---|
| | | | | |

| 6. Claimant's Name | 7. Claimant's Address |
|---|---|
| | |

**8. This application is made on behalf of:**

**9. Type of application** (Check ONLY one): ☐ Review of WCLJ Decision   ☐ Rehearing or Reopening

**10. Date of Decision** (mm/dd/yyyy):

**11. Specify the issue(s) for review:**

**12. Basis of Appeal.** This application for review is based on the following grounds (if you attach a legal brief if may be no more than 8 pages, see instructions for details):

**13. Hearing Dates, Transcripts, Documents, Exhibits, and other Evidence** (see instructions for details):

**14. New and Additional Evidence under 12 NYCRR 300.13(b)(1)(iii)** (see instructions for details):

**15. Objection or Exception.** Specify the objection or exception interposed to the ruling and when it was interposed as required by 12 NYCRR 300.13(b)(2)(ii):

**16. Are indemnity payments being paid while the application is pending?** ☐ Yes   ☐ No

If No, date of suspension (mm/dd/yyyy):          If Yes, at what rate?          If reduced, date of reduction (mm/dd/yyyy):

State the issue on appeal that is the legal basis for staying payments:

**17. Will you be requesting an increase in attorney's fees?:** ☐ Yes   ☐ No   If "Yes", Form OC-400.1 must be attached and served on the parties.

RB-89 (09-16)          THE WORKERS' COMPENSATION BOARD EMPLOYS AND SERVES PEOPLE WITH DISABILITIES WITHOUT DISCRIMINATION

**18. Certification**: By signing this document in the space provided below, I certify that this Application has a good faith basis in law and fact, has been instituted with reasonable grounds, and has been served upon all necessary parties of interest using the method of service, including the actual address, email address or fax number where service was transmitted listed in the Affirmation or Affidavit of service below. I understand that the Workers' Compensation Law provides for substantial penalties for instituting or continuing proceedings without reasonable grounds and/or for the purpose of delay. I understand that if this Application is withdrawn for any reason or if any of the issues raised are resolved by the parties, I must immediately notify the Board and the necessary parties of interest served in writing

Preparer's Signature _____   Date Prepared (mm/dd/yyyy): _____

Print Name: _____   Title: _____   Telephone No.: _____

Address: _____

## PROOF OF SERVICE

### AFFIRMATION

STATE OF NEW YORK, COUNTY OF _____ ss: I, _____, am an attorney duly admitted to practice law in the courts of the State of New York. I hereby affirm under penalty of perjury that I have complied with the filing and service requirements as set forth in 12 NYCRR 300.13(b)(2)(iv) and (3) for this Application for Board Review in the manner set forth below.

A. I filed the Application for Board Review with the Board on (**date - mm/dd/yyyy**) _____ by (**pick one method**):

☐ Mail to P.O. Box 5205, Binghamton, NY 13902
☐ Fax to 1-877-533-0337
☐ Email at wcbclaimsfiling@wcb.ny.gov
☐ WCB Web Upload link (https://wcbdoc.xrxfs.com/login.aspx)

B. I served the Application for Board Review on (**date - mm/dd/yyyy**) _____ upon (attach additional sheets if necessary):

Name: _____ by (method): _____ at (address): _____
Name: _____ by (method): _____ at (address): _____
Name: _____ by (method): _____ at (address): _____
Name: _____ by (method): _____ at (address): _____

I certify that any party served by fax, email or other electronic means provided explicit permission to receive service by such means.

I certify that service of this Application for Board Review, as set forth above, was completed within thirty days from the filing of the decision that is the subject of this application.

Date (mm/dd/yyyy): _____   Signature: _____

Print Name: _____

### AFFIDAVIT

STATE OF NEW YORK, COUNTY OF _____ ss: I, _____, being duly sworn, deposes and says: I am not a party of interest to the claim(s) listed on the Application for Board Review and am over 18 years of age. I hereby certify that I have complied with the filing and service requirements as set forth in 12 NYCRR 300.13(b)(2)(iv) and (3) for this Application for Board Review in the manner set forth below.

A. I filed the Application for Board Review with the Board on (**date - mm/dd/yyyy**) _____ by (**pick one method**):

☐ Mail to P.O. Box 5205, Binghamton, NY 13902
☐ Fax to 1-877-533-0337
☐ Email at wcbclaimsfiling@wcb.ny.gov
☐ WCB Web Upload link (https://wcbdoc.xrxfs.com/login.aspx)

B. I served the Application for Board Review on (**date - mm/dd/yyyy**) _____ upon (attach additional sheets if necessary):

Name: _____ by (method): _____ at (address): _____
Name: _____ by (method): _____ at (address): _____
Name: _____ by (method): _____ at (address): _____
Name: _____ by (method): _____ at (address): _____

I certify that any party served by fax, email or other electronic means provided explicit permission to receive service by such means.

I certify that service of this Application for Board Review, as set forth above, was completed within thirty days from the filing of the decision that is the subject of this application.

Sworn to before me this _____ Day of _____   Signature: _____

Print Name: _____

_____
Notary Public

RB-89 (09-16) Reverse